**E-FILED**
Friday, 08 October, 2004  04:12:47 PM
Clerk, U.S. District Court, ILCD

**IN THE UNTIED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| CENTURY CONSULTANTS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2003-CV-3105 |
| | ) | |
| THE MILLER GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT SPRINGFIELD PUBLIC SCHOOL DISTRICT 186'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, SPRINGFIELD PUBLIC SCHOOL DISTRICT 186 ("District 186") through its counsel, Brown, Hay & Stephens, LLP, hereby moves this Court for Summary Judgment against Plaintiff Century Consultants, Ltd. ("Century") pursuant to Fed.R.Civ.P. 56(b) and Local Rule 7.1(D), and in support thereof states:

### INTRODUCTION

District 186 filed its Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6), together with a memorandum in support thereof, on June 3, 2004. Through that motion, and in response to Century's reliance upon certain contracts in support of its First Amended Complaint, District 186 submitted the contracts to the Court. Pursuant to the holding in Shulman v. CRS Financial Services, Inc., 2003 WL 22400211 (N.D.Ill.), District 186 requested the Court take judicial notice of these contracts, and in support thereof, District 186 submitted the affidavit of District 186's Director of Business Services for the purpose of verifying the authenticity of the contracts. Century tendered its Memorandum of Law in Opposition to Defendant's Motion to Dismiss on July 2, 2004.

On September 17, 2004, the Court entered an Order wherein it ruled that District 186's Motion to Dismiss will be converted to a Motion for Summary Judgment, and granted District 186 leave to submit this memorandum in support thereof. District 186 incorporates its Motion to Dismiss, as well as its prior supporting memorandum, by reference herein.

District 186 requests the Court enter an Order ruling that as a matter of law, Century's claims of contributory and vicarious infringement against District 186 fail pursuant to the Copyright Act, and that Century's state law claims are precluded by the same Act, or otherwise fail. In doing so, District 186 requests that the Court enter summary judgment in its favor.

## MATERIAL FACTS CLAIMED TO BE UNDISPUTED

All facts relied upon by District 186 that bear directly on the legal issue raised through this motion are either pled in Plaintiff's First Amended Complaint or attached as exhibits to District 186's Memorandum of Law in Support of its Motion to Dismiss. The facts set forth below are undisputed for purposes of this motion, but are not admitted by District 186.

Through its First Amended Complaint, Century alleges in pertinent part:

1.     Century developed computer programs known as "S.T.A.R.S." and received copyrights. First Amended Complaint ("FAC"), paragraph 10.

2.     The S.T.A.R.S. programs "were considered trade secrets of Century and were disclosed only to school district customers that executed license agreements." FAC 10.

3.     Century upgraded the S.T.A.R.S. programs in 1990 and renamed them "Star_Base." FAC 11.

4.     The Star_Base screens and source code are copyrighted. FAC 11.

5.     The Star_Base license agreements contain strict confidentiality provisions and prohibit licensees from disclosing the source code of the Star_Base programs to a third party, and that "the License Agreement recites in clear terms that the software package is the trade secret of

2

Century, and prohibits the School District from disclosing the package to any third party." FAC 15.

6.    Star_Base software is used by various school districts as student administration software. FAC 13-14.

7.    Century granted District 186 a license to use Star_Base software and agreed to provide District 186 with support services in exchange for an initial license fee and periodic payments. FAC 15-16.

8.    In or about March 2002, District 186 elected to forego Century's support services and ceased making payments for such services. FAC 15, 17.

9.    The contract between Century and District 186 allowed District 186 to continue to use Star_Base following this action. FAC 17.

10.    The license agreements between Century and its customers prohibit disclosure of the Star_Base source code to any third party. FAC 14.

11.    The license agreement provides that the software package is a trade secret of Century and prohibits customers from disclosing "the package" to any third party. FAC 15.

12.    District 186 entered into two contracts with Defendant Miller and/or Defendant The Miller Group, Inc. (hereinafter collectively "Miller"). FAC 19.

13.    Century alleges the first contract requires Miller "to provide certain software development and/or web site development services" to District 186. FAC 19.

14.    Century alleges the second contract requires Miller to "develop and implement a software system directly based upon, and using crucial components of, the Star_Base programs then in the School District's possession and use." FAC 19.

15.    Century alleges that the "demonstration program" used by Miller on its website and at trade shows "embodies and reflects elements of the Star_Base software which, as alleged throughout this Complaint, was and is an infringement of Century's copyrights." FAC 20.

3

16.    In February, 2003, Don Randle, an employee of District 186, telephoned Century and informed Century that District 186 hired Miller to write "front-end" programs to interface with the Star_Base database, and that Randle "knew for sure" that Miller was using Century's "database structures." Randle claimed to be "fairly certain" that Miller was "using Century's scheduler program (a component of the Star_Base software)." FAC 21.

17.    Thereafter, Dave Williams, a District 186 employee, telephoned Century and advised that Miller "stole" Century's software, despite Miller's knowledge that Century's software was copyrighted. FAC 22.

18.    Williams mailed a list of "table definitions" together with the "program listing" from the "student scheduler" portion of Miller's product to Plaintiff. FAC 23-24.

19.    Century compared these materials to their Star_Base program, and determined that the table definitions in the competing products were virtually identical, and that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables. FAC 23-24.

20.    Century claims upon information and belief that:

> "[i]n the course of copying substantial portions of the copyrighted source code, MGI and Miller have not only gained access to the source code, they have physically removed copies of the programs from the licensee's premises for editing off-site. This is not only a violation of the License Agreement, it creates an imminent danger that the source code, which is a trade secret, will be disclosed to third parties who do not know the trade secret and who might be given a competitive advantage by learning it." FAC 25.

21.    Century claims that the Star_Base software, in general, is a trade secret. FAC 39.

The undisputed facts set forth in District 186's Memorandum in Support of its Motion to Dismiss, incorporated herein by reference, are:

22.    The Affidavit of Agnes Nunn is true and accurate.

23.    The contracts referenced in and attached to the Affidavit of Agnes Nunn are true and correct copies of the contracts referenced in Century's First Amended Complaint.

## APPLICABLE LAW

Pursuant to Fed.R.Civ.P. 56, summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Steinman v. Hicks, 252 F.Supp.2d 746, 754 (C.D.Ill., 2003). In the case at bar, District 186 relies specifically on the pleadings and affidavits submitted thus far in support of its motion.

COPYRIGHT INFRINGEMENT

Century's claims of contributory and vicarious infringement against District 186 are controlled by the Copyright Act, 17 U.S.C.A. §101 *et seq*. ("the Act"), as these claims require Century to first prove underlying, direct infringement on the part of Miller. Seals v. Compendia Media Group, 2003 WL 731369 (N.D.Ill.) at *4. In order to establish a claim of direct copyright infringement, Century must prove:

1)    ownership of a valid copyright; and

2)    copying of constituent elements of the work that are original.

> CRC Press, LLC v. Wolfram Research, Inc., 149 F.Supp.2d 500, 505 (C.D.Ill., 2000).

The first element of an infringement claim can be satisfied through submission of a Certificate of Copyright Registration. Id. Satisfaction of the second element, however, depends on two inquiries; namely:

1)    whether the alleged copier had access to the work that plaintiff alleges was copied; and

2)    whether the alleged copied work is substantially similar to the copyrighted work. Id.

5

Pursuant to the Act:

> "[a] 'computer program' is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." 17 U.S.C.A. §101.

Computer programs are considered "literary works" for purposes of the Act, and are therefore afforded protection therein. Id. at §102(a)(1). Copyright protection of computer software can extend beyond the program's literal code to include its structure, sequence and organization, but only to the extent these elements are original works of the author. qad. inc. v. ALN Associates, Inc., 770 F.Supp. 1261, 1265 (N.D.Ill., 1991).

In order to establish a claim for contributory copyright infringement, Century must plead and prove that District 186 had knowledge of the infringing activity, and that it induced, caused, or materially contributed to the infringing conduct of Miller. Seals at *4.

Century's claim of vicarious infringement by District 186 must be established through proof that District 186 had the right and ability to supervise Miller's infringing conduct and that District 186 had "an obvious and direct financial interest in the exploitation of copyrighted materials." Seals at *6. Century's vicarious infringement claim arises out of two contracts between Miller and District 186. District 186 alleges that these contracts give it neither the right nor ability to supervise Miller's conduct. When a written instrument contradicts the allegations of a complaint to which it is attached, the exhibit prevails. Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 754 (7th Cir. 2002).

Century also claims it is entitled to relief against District 186 pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065, in addition to common law claims against District 186 based on misappropriation of trade secrets, unfair competition and breach of license agreement.

TRADE SECRETS

In order to establish a violation of the ITSA, a plaintiff must plead and prove that it owned a trade secret and that the secret was misappropriated. Master Tech Products, Inc. v. Prism

6

Enterprises, Inc., 2002 WL 475192 (N.D. Ill.).   Specifically, a plaintiff must show that the information at issue is "(i) secret (that is, not generally known in the industry), (ii) misappropriated (that is, stolen from it rather than developed independently or obtained from a third source), and (iii) used in…defendants' business."   Labor Ready, Inc. v. Williams Staffing, LLC, 149 F.Supp.2d 398, 411 (N.D. Ill. 2001).  It is insufficient to simply allege broad areas of technology and assert a misappropriation.   Rather, plaintiff must plead and prove concrete secrets.   Composite Marine Propellers, Inc. v. Van Der Wolde, 962 F.2d 1263, 1266 (7th Cir. 1992).

The ITSA provides that a "trade secret" is information that (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.  765 ILCS 1065/2.

COMMON LAW UNFAIR COMPETITION

District 186 also asserts Century's claim for damages arising out of common law unfair competition is preempted by the Act.  When a plaintiff's unfair competition claim is essentially the same as its copyright infringement claim, the unfair competition claim is preempted by the Act.  Higher Gear Group, Inc. v. Rockenbach Chevrolet, Inc., 223 F.Supp.2d 953 (N.D. Ill. 2002). In order to avoid preemption of a common law unfair competition claim by the Copyright Act, a plaintiff must allege an "extra element" that "changes the nature of the action so that it is qualitatively different from copyright infringement claim."  Goes Lithography Co. v. Banta Corp., 26 F.Supp.2d 1042, 1048 (N.D. Ill. 1998); quoting Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2nd Cir. 1992).

BREACH OF LICENSE AGREEMENT

In order to prove its cause of action for breach of license agreement, Century must prove:

1)      an offer and acceptance;

2)      consideration;

7

3)    definite and certain contractual terms;

4)    plaintiff's performance of its contractual obligations;

5)    defendant's breach of contract; and

6)    damages resulting from the breach.

Ogdon v. Hoyt, 2004 WL 1610973 (N.D.Ill.) at *2.

## ARGUMENT

Each of Century's claims against District 186 fail as a matter of law. Specifically, Century cannot prove the underlying act of infringement necessary to state claims for either vicarious or contributory infringement. Even if Century could prove underlying infringement, the contracts cited by Century in support of these claims are inconsistent with Century's representation of the terms contained therein. In this circumstance, the exhibits, rather than the facts pled by Century, control, and as a result, Century's claims fail as a matter of law. Century cannot identify with particularity a single protectable trade secret, and its remaining state law claims are either preempted by the Copyright Act or wholly lacking of essential elements. Century is entitled to no relief for these claims as a matter of law.

## A.    CENTURY'S CLAIMS OF COPYRIGHT INFRINGEMENT EACH FAIL AS A MATTER OF LAW.

Count II and Count III of Century's First Amended Complaint seek damages against District 186 pursuant to the Copyright Act in connection with the alleged underlying copyright infringement on the part of Miller alleged in Count I.

### 1.    CENTURY CANNOT PROVE DIRECT INFRINGEMENT.

Century's claims fail because even though it alleges ownership of certain copyrights, the allegations of copying pertain to separate, non-copyrighted material. Specifically, in its First Amended Complaint, Century only alleges copyright ownership of:

a)    S.T.A.R.S. programs;

8

b)      Star_Base screens; and

c)      Star_Base source codes.  FAC 10, 11.

Century makes no allegation whatsoever that anyone copied its S.T.A.R.S. programs, Star_Base screens or the Star_Base source code.  Instead, Century consistently sidesteps allegations of direct copyright infringement, and in place of such allegations, asserts claims that are tangential to actual claims of copyright infringement:

a)      *Century claims that the allegedly infringing software is "based upon," and uses "crucial components" of Century's software.*  FAC 19.

Even if proven, software can be based upon or use crucial components of other software without violating the Act.  Instead, such conduct is only actionable under the Act if the so-called "crucial components" are also copyrighted components.  To be sure, there certainly exist a number of components of virtually all software that are crucial, yet not copyrighted.  Moreover, the Act does not prohibit software from being "based upon" other software; instead, the Act prohibits copying of constituent elements of a work that are original.  Feist Publications, Inc. v. Rural Telephone Service Co. Inc., 499 U.S. 340, 361 (1991).

b)      *The demonstration program "embodies" and "reflects elements of" Century's software.  FAC 20.*

Century cannot point to any provision of the Act prohibiting a work from "embodying" or "reflecting elements of" another work.  This is true because the Act does not allow copyright protection to extend to "any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work."  PRG-Schultz International, Inc. v. Kirix Corp., 2003 WL 22232771 (N.D.Ill) at * 4.  Specifically, "an author cannot achieve protection for a process simply by embodying it in a computer program."  Id., citing Atari Games Corp. v. Nintendo of America, Inc., 975 F.2d 832, 839 (Fed.Cir.1992).  In short, copyright law recognizes a difference between "embodiment" and "copying."

9

c)    *Miller's system is the same "type of system" as Century's system. FAC 20.*

The Act does not afford a cause of action to the owner of software who discovers that someone else developed the same "type of system" as the original owner.  Instead, the original owner must show that the offending software was developed through copying of constituent elements of original copyrighted work.  Id.

d)    *Miller Group wrote so-called "front end" programs that are able to interface with Century's system. FAC 21.*

The Copyright Act contains no prohibition on creation of a product that interfaces with a copyrighted work.  Even if the Act did contain such a prohibition, Century neither alleges that its entire system is afforded copyright protection, nor does Century allege that Miller Group's software interfaces with the specific materials over which Century claims ownership to a copyright. Century makes no allegation that its entire system is copyrighted.

e)    *One of District 186's employees claims that Miller Group "used" Century's database structures and its scheduler program. FAC 21.*

Not only is "use" of a database structure or scheduler program much different than "copying" the database structure, Century does not allege copyright ownership of either of them. Instead, Century alleges copyright ownership of S.T.A.R.S. programs, Star_Base screens, and Star_Base source codes.  The Act provides no remedy for mere "use."

f)    *One of District 186's employees claims that Miller Group "stole" Century's software. FAC 22.*

While Century's hearsay allegation that Miller Group "stole" Century's software is certainly inflammatory, such an action does not form the basis for a claim of copyright infringement.  Had Century alleged Miller Group stole Century's software and then copied constituent elements of the original portion of the software, the Act may afford some protection. Century's allegation, however, does not come close to meeting this standard.

g)   The "table definitions" in Century's software are identical to those in Miller Group's software. FAC 23.

Even if true, Century's "table definitions" are not included in its list of materials of which Century claims copyright ownership. Century makes no assertion that its own table definitions are original, much less copyrighted.

h)   The code in Miller Group's software has verbatim references to code in Century's software. FAC 24.

Through this allegation, like the remainder of its allegations, Century stops short of alleging that the "code" it references is the "source code" over which Century alleges copyright ownership. Moreover, mere verbatim references are not actionable under the Act, unless they rise to the level of copying constituent element of an original copyrighted work.

Each of these deficiencies was noted in District 186's Memorandum in Support of its Motion to Dismiss. Through its memorandum, District 186 essentially invited Century to make some showing of how the above-referenced allegations could possibly rise to the level of copyright infringement. In its opposition memorandum, however, Century once again stopped short of clarifying its allegations in a manner so as to solidify its claims.

In fact, in its opposition memorandum, Century points out the propriety of the Court considering facts asserted in Century's response to District 186's Motion to Dismiss, as long as the facts are consistent with those alleged in Century's First Amended Complaint. See, Help at Home, Inc. v. Medical Capital, LLC., 260 F.3d 748, 752-53 (7th Cir., 2001). It follows that in light of Century's Motion to Dismiss, Century would clarify its allegations and allege that Miller copied a constituent element of an original copyrighted work; however, Century persists in its refusal to make such allegations. Instead, on page 5 of its opposition memorandum, Century cites five separate portions of its First Amended Complaint wherein Century claims it properly alleged infringement. The only allegation of copying referenced in these five recitals is found in the fifth bulletpoint, wherein Century claims to have already alleged:

11

1)    that the Star_Base "table definitions" are virtually identical to those in the Miller software; and

2)    that a portion of one of the programs in the Miller software contained identical source code to Century's database tables (not Century's source code).

At this point, the pleadings make it clear that the copying alleged by Century pertains to portions of its software other than those to which it owns copyrights; therefore, its underlying claim of infringement fails.

## B.    CENTURY CANNOT PROVE CONTRIBUTORY INFRINGEMENT.

In reference to its claim of contributory infringement in its opposition memorandum, Century states the following:

> "Here, Century alleges that the School District knowingly and intentionally entered into a contract with the Miller Defendants under which the School District *required* the Miller Defendants to develop a student administration software product which used Century's Star_Base source code.  In fact, that requirement *was written into the contract itself.  See* Affidavit of Agnes Nunn, Exhibit C, at ¶ 2 ('Features of the System shall include use of existing data structures (StarBase)').  Moreover, that same contract provided that the School District would share in the revenues generated by the sale of this new product.  *Id*. at ¶ 8.  Based on these allegations, Century has pled a claim for contributory infringement because it alleges that the School District has knowingly induced, caused or materially contributed to the infringing conduct of the Miller Defendants." (emphasis theirs).[1]

Century misstates the requirements for showing contributory infringement.  Specifically, Century's allegation that Miller "used Century's Star_Base source code" is much different than an allegation that Miller <u>copied</u> the Star_Base source code.  Century's cavalier substitution of "used" for "copied" runs afoul of both the letter and the spirit of the Act.

Century also confuses contract terms with elements required for proving contributory infringement.  The contract term Century alleges triggers its cause of action—"Features of the System shall include use of existing data structures (StarBase)"—does not, in fact, give rise to a

---

[1]    Plaintiff's Memorandum of Law Opposition (*sic*.) to Defendant's Motion to Dismiss, P.6-7.

cause of action for infringement, because Century does not allege that the "existing data structures" are copyrighted. It is improper to impute knowledge of infringing activity based upon contract language requiring use of existing data structures absent some allegation that the "existing data structures" are copyrighted.

Century's creative yet insufficient allegations of copyright infringement are further exposed through its argument of satisfaction of the requisite ownership, registration and infringement elements. Through its opposition memorandum, Century again claims that the contracts between District 186 and Miller required development of software "using crucial code from Star_Base." Opposition Memorandum at p.5. Given the issues raised in the Motion to Dismiss, it seems that Century would have alleged in its opposition memorandum that the contracts required development of software using *copyrighted* code from Star_Base. Century's refusal to make this assertion indicates that Century is well-aware of the difference between a crucial element and a copyrighted element of the software.

In fact, where it appears Century will finally make the allegation necessary to support its infringement claim in its opposition memorandum, Century once again backs away. Specifically, in summarizing the allegations of its First Amended Complaint, Century claims that it alleged "that [Miller's software] is based on the copyrighted Star_Base programs, is identical or substantially similar to the copyrighted programs in their literal source code, and in their structure, sequence and organization *See* First Amended Complaint, paras. 19, 27-30."
Still, there is no allegation that anyone copied Century's source code, which is the only copyrighted material to which Century claims Miller had access. Collateral allegations of wrongdoing do not give rise to a cause of action for contributory infringement under the Act.

## C.    CENTURY CANNOT PROVE VICARIOUS INFRINGEMENT

Even if Century could prove that the Miller Defendants copied constituent elements of an original work, they cannot prove that District 186 had the right or ability to supervise the allegedly

infringing conduct. Century claims that the apparent "right, ability and authority" District 186 possessed to supervise Miller was given to District 186 by virtue of the contracts referenced in its First Amended Complaint. The Affidavit of Agnes Nunn, attached hereto and incorporated herein as Exhibit A, identifies the contracts referenced in the First Amended Complaint, which are attached hereto and incorporated herein as Exhibits B and C. [2]

Century cites no specific language supporting its assertion that these contracts give District 186 the right, ability or authority to control or supervise Miller. Instead, the September 1, 1998 agreement (Exhibit B) is a simple agreement pursuant to which Miller Group Consulting Services agreed to provide "[c]onsultation on web site development and web server software implementation" services to District 186. This agreement does not contain any provision which remotely relates to Century, the Star_Base program, the InfoSystems 3 program, or any allegation contained in or related to the First Amended Complaint.

The December 21, 1998 agreement (Exhibit C) provides that Miller will develop an internet-based information system for District 186 that will include "use of existing data structures (Starbase)." The December 21, 1998 agreement does not contain any which indicates that District 186 possessed the right or ability to supervise Miller's work. Further, the agreement does not contain any provision from which it could be inferred that District 186 possessed the ability to supervise Miller in the development, advertisement, or sale of the alleged infringing product. Instead, the agreement provides that District 186 "will not determine or exercise control as to general procedures or formats necessary to have these services meet [District 186's] satisfaction." In short, the agreements are inconsistent with and contrary to Century's allegations. Since these contracts form the sole basis for Century's claim of vicarious infringement, this claim fails as a matter of law.

---

[2]  The original Affidavit of Agnes Nunn is contained in the Court's file as an attachment to District 186's Memorandum in Support of its Motion to Dismiss.

14

**D.  CENTURY CANNOT PROVE A VIOLATION OF THE ILLINOIS TRADE SECRETS ACT.**

In Count IV, Plaintiff alleges that the Star_Base software as a whole is a trade secret. (FAC 39). Such allegations violate the rule in <u>Composite Marine Propellers, Inc.</u>, which prohibits a plaintiff from identifying broad areas of technology as a trade secret in support of a claim of misappropriation. Rather, Plaintiff is required to allege specific identifiable secrets.

Moreover, the license agreement, which is not attached to Century's pleading, but is attached hereto as Exhibit D, once again contradicts allegations contained in the First Amended Complaint. Specifically, while Plaintiff alleges that "the License Agreement recites in clear terms that the software package is the trade secret of Century," paragraph 8 of the "Terms and Conditions" actually states that "[t]he package and any permitted copies contain valuable trade secrets of CENTURY and shall at all times remain the property of CENTURY." The difference between the pleading and the agreement is important. While the pleading suggests that the software package as a whole is a trade secret, the agreement makes it clear that the actual trade secrets are contained within the software package, i.e., the software package as a whole is not a trade secret. Plaintiff cannot prove a violation of a trade secret if it refuses to identify the trade secret.

**E.  CENTURY'S UNFAIR COMPETITION CLAIM FAILS AS A MATTER OF LAW.**

Plaintiff's allegation of common law unfair competition is preempted by the Act because it is substantially the same claim as the claim for copyright infringement. In <u>Higher Gear Group, Inc. v. Rockenbach Chevrolet, Inc.</u>, 223 F.Supp.2d 953 (N.D. Ill. 2002), the court held that plaintiff software seller's state law claim of common law unfair competition was preempted by federal copyright law because the unfair competition claim was essentially the same as the copyright infringement claim. The court held that "[t]he crux of the claim is that [defendant] made

unauthorized copies of [plaintiff's] software, which is the same conduct necessary to support a copyright infringement claim." Id., at 959.

In order to avoid preemption of a common law unfair competition claim by the Act, a plaintiff must allege an "extra element" that "changes the nature of the action so that it is qualitatively different from copyright infringement claim." Goes Lithography Co. v. Banta Corp., 26 F.Supp.2d 1042, 1048 (N.D. Ill. 1998); quoting Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2nd Cir. 1992). The First Amended Complaint does not contain an "extra element." Rather, the only new allegation is that "[t]he foregoing acts of defendants constitute unfair competition under the common law." (FAC 50). This allegation cannot, under any circumstances, be construed to comply with the requirement of an "extra element" that must be pled in order to state a cause of action for common law unfair competition. Century's claim is preempted by the Act as a matter of law; therefore, it fails.

**F.    CENTURY'S CLAIM OF BREACH OF LICENSE AGREEMENT FAILS AS A MATTER OF LAW.**

In support of its claim that District 186 breached the license agreement, Century relies solely on the allegations in its prior counts, which are limited with respect to any alleged violation of the License Agreement by District 186. Century alleges that Century and District 186 entered into a License Agreement. Further, Century alleges that Miller:

> "not only gained access to the source code, [it has] physically removed copies of the programs from the licensee's premises for editing off-site. This is not only a violation of the License Agreement, it creates an imminent danger that the source code, which is a trade secret, will be disclosed to third parties who do not know the trade secret and who might be given a competitive advantage by learning it." FAC 25.

Century also alleges that Miller knew District 186 owed a contractual duty to Century to maintain the secrecy of its trade secrets or to limit their use (FAC 41), but Century never explicitly alleges a violation on the part of District 186. Century also fails to provide any indication regarding what

specific term or condition of the License Agreement was allegedly violated by District 186, and

instead only references Miller's actions as they relate to the License Agreement. As a result,

Century's claim against District 186 fails.

       **WHEREFORE**, Defendant District 186 respectfully requests the court enter summary

judgment in its favor, and award all other relief the court deems proper.

                                 SPRINGFIELD PUBLIC SCHOOL
                                 DISTRICT 186, Defendant,

                                     s/ Robert M. Shupenus
                    By: _____
                                     One of Its Attorneys

ALMON A. MANSON, JR.
Registration No. 1756761
ROBERT M. SHUPENUS
Registration No. 6238096
Brown, Hay & Stephens LLP
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
Telephone (217) 544-8491

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon:

Lance T. Jones
Law Offices of Lance T. Jones
1100 South Fifth Street
Springfield, IL  62703

Craig Hilliard
Stark & Stark, P.C.
993 Lenox Drive
Lawrenceville, NJ  08648

David A. Herman
Giffin, Winning, Cohen & Bodewes, P.C.
One West Old State Capitol Plaza
Myers Building – Suite 600
P.O. Box 2117
Springfield, IL  62705

via electronic mail on this 8th day of October, 2004.

s/Robert M. Shupenus
_____