E-FILED
Tuesday, 23 November, 2004 03:40:45 PM
Clerk, U.S. District Court, ILCD

**IN THE UNTIED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

CENTURY CONSULTANTS, LTD.,

Plaintiff,

v.

THE MILLER GROUP, INC., et al.,

Defendants.

No. 2003-CV-3105

**DEFENDANT SPRINGFIELD PUBLIC SCHOOL DISTRICT 186'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, SPRINGFIELD PUBLIC SCHOOL DISTRICT 186 ("District 186") through its counsel, Brown, Hay & Stephens, LLP, replies to the Memorandum in Opposition to its Motion for Summary Judgment ("Opposition Memorandum") filed by Plaintiff Century Consultants, Ltd. ("Century") as follows:

## INTRODUCTION

The crux of District 186's Motion for Summary Judgment is that Century's claims are based on alleged copying of elements of its Star_Base product that are neither copyrighted nor protected trade secrets. At this point, Century has given up every chance it has had to affirmatively show that it owns a copyright on any material that it claims was copied. Through its Opposition Memorandum, Century once again chooses to dodge the fatal shortcomings of its claim and instead attempts to focus the Court's attention on several pages of largely immaterial facts having no bearing on whether either defendant copied Century's copyrighted material.

Curiously, in support of its claim that genuine issues of material fact exist that preclude entry of summary judgment, Century points to the history of this case. Specifically, Century

now claims that, because the Court entered a Temporary Restraining Order in Century's favor at the outset of this matter, summary judgment at this point is improper. Even if entry of a Temporary Restraining Order was somehow probative regarding whether summary judgment is proper, Century's argument serves only to perpetuate its shell game defense to District 186's Motion. If anything, the history of this case reveals that Century consistently refuses to identify copyrighted material, as opposed to "crucial" material, that was copied. Particularly troubling is Century's tendency to paraphrase its actual allegations in a manner so as to attempt to dupe the Court into believing that the facts contained in its pleadings are different than what are actually contained therein. For example, in the introduction section of its Opposition Memorandum, Century now claims the following with respect to its First Amended Complaint:

> Century alleges that it owns the copyright in Star_Base, that it registered the copyright with the U.S. Copyright Office, and that the Miller Defendants directly infringed that copyright by unlawfully copying the software. This is all that is required to allege an infringement claim under established 7th Circuit precedent.[1]

Given that the primary contention in District 186's Motion for Summary Judgment is that the portion of Star_Base that Century alleges is copyrighted is different from the portion of Star_Base that Century alleges was copied, it is axiomatic that Century would make some effort to show that its allegations of infringement are somehow related to the copyrighted portion of its software. Instead, Century argues that "it owns the copyright in Star_Base" (not "to" Star_Base, as Star_Base in its entirety is not copyrighted) and that the copyright was infringed because of the Miller Defendants actions in "unlawfully copying the software" (even though Century only alleges that a portion of the software was copied). Century continues its refusal to assert, both in its pleadings and motions, that anyone unlawfully copied Century's copyrighted material.

---

1 Opposition Memorandum, p.3.

Although Century gives great weight to the Court's initial grant of temporary injunctive relief in opposition to District 186's Motion for Summary Judgment, Century fails to reveal that the Court based its decision on material information supplied by Century that Century now knows is false. Specifically, after District 186 filed its underlying Memorandum in Support of its Motion for Summary Judgment on October 8, 2004, Century took the deposition of David Williams, who is the supposed whistleblower employee of District 186 (since retired) who Century believed supplied it with the source code for Miller's competing InfoSystems 3 product.

As set forth below, Williams actually provided Century with District 186's own modified source code of the software District 186 purchased from Century, rather than the source code for the competing product. In fact, the contract upon which Century bases its vicarious infringement claim against District 186 explicitly states that District 186 will continue to use portions of Star_Base as part of its new system. Century's own allegations show that District 186 was perfectly entitled to continue its use of Star_Base following termination of its support contract with Century; therefore, its discovery of Star_Base source code on District 186's computer system should be expected.

Century also seems to have abandoned its prior representation regarding the scope of the copying that allegedly took place. Initially, Century represented to the Court that this case would be different than most copyright infringement cases (and in fact easier for Century to prove) because it would be unnecessary for Century to show either that Miller had access to the Star_Base source code or that the Star_Base source code and the InfoSystems 3 source code were substantially similar. Instead, Century assured the Court that:

> [i]ndeed, this is the rare case where there is direct evidence of copying. As noted above, an employee and a former employee of one of the Defendants—the School District—has provided direct evidence of copying to Century. Coupled with other evidence submitted on this application, Century submits that it is unnecessary for

> the Court to engage in any detailed examination of the 'access' and 'substantial similarity' tests of copying, because of the existence of this direct evidence.[2] (Emphasis theirs.)

One would naturally assume that this alleged smoking gun would find its way either into Century's Opposition Memorandum or into its expert's report, especially considering that Century is asking the Court to once again rely on Century's representations made in support of its claim for injunctive relief. Instead, Century has now discovered that the evidence it has touted in substantially every pleading thus far is flawed and indeed false. As a result, Century finds itself attempting to engage in a detailed, albeit futile, examination of the "access" and "substantial similarity" tests used by courts to determine whether actionable copying took place. Since the foundation for Century's various claims against District 186 has now crumbled, summary judgment in favor of District 186 is proper.

**REPLY TO STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

MATERIAL FACTS NOT DISPUTED BY DISTRICT 186

The facts set forth below that are undisputed by District 186 are undisputed for purposes of District 186's Motion for Summary Judgment and are not otherwise admitted by District 186.

1. Undisputed.

2. Undisputed.

5. District 186 does not dispute that many computer languages exist, that programmers must be trained and experienced in the language being used, that the human-readable form of a program is the program's source code, that a program must be translated into computer-readable form known as object code, and that an assembler or compiler is used to accomplish this task.

---

[2] Plaintiff's Memorandum of Law in Support of Application for Order to Show Cause With Temporary Restraints and Expedited Discovery, p. 9.

7. District 186 does not dispute that it is possible for other software developers to create or design independent programs that would achieve the same result as the Star_Base programs. District 186 does not dispute that Century spent years, thousands of manhours, and hundreds of thousands of dollars developing and refining the Star_Base programs, and that a majority of Century's revenues are based on the Star_Base programs.

8. Undisputed.

9. District 186 does not dispute that it entered into three separate license agreements over the last decade with Century. District 186 does not dispute that the license agreements between Century and District 186 contain confidentiality terms that restrict District 186's right and ability to disclose certain information to unlicensed third parties.

11. Undisputed.

12. Undisputed.

14. Undisputed.

15. Undisputed.

16. District 186 does not dispute that in or around the summer of 1998 the Miller Defendants were introduced to the School District.

17. District 186 does not dispute that the agreement provided that, in exchange for Miller's ownership of the new software package, District 186 would receive 10% of the revenues "generated by Miller for developing similar applications and software solutions and rendering the same or similar services to any third party."

18. Undisputed.

19. Undisputed.

20. District 186 does not dispute that the contract between Miller and District 186 required District 186's new information system to use Star_Base data base structures.

22. District 186 does not dispute that it decided to move Qualls to Miller's offices to assist in development of new software for District 186. District 186 does not dispute that Qualls was a programmer with familiarity with Star_Base.

23. Undisputed.

24. District 186 does not dispute that for a nearly two-year period Qualls worked almost exclusively on-site at Miller's offices as an employee of District 186, coding programs for District 186's new information system.

25. District 186 does not dispute that during the same period of time District 186 established access from Miller's offices to the server at District 186 on which Star_Base programs (including the source code) resided.

MATERIAL FACTS DISPUTED BY DISTRICT 186

4. District 186 disputes that sub-programs that comprise Star_Base are embodied in the copyright registration as alleged by Century.

17. District 186 disputes Century's argument that either Miller or District 186 had "no prior experience" at the time of execution of the December 1998 contract.

26. Disputed.

28. Disputed.

29. Disputed.

30. Disputed.

31. Disputed.

32. Disputed.

33. Disputed.

34. Disputed.

FACTS CLAIMED BY DISTRICT 186 TO BE IMMATERIAL

3. The facts contained in this paragraph are immaterial because there are no allegations that "modules" in Star_Base are either copyrighted or otherwise protected.

4. Facts contained in Paragraph 4 are immaterial because there are no allegations that "modules" in Star_Base are either copyrighted or otherwise protected.

6. The facts contained in Paragraph 6 are immaterial because they refer to elements of Star_Base that are not alleged to be either copyrighted or otherwise protected.

7. The fact that a software developer would save enormous time and expense by copying Century's tables and database programs for the purpose of making derivative works is immaterial as Century does not allege that the tables and database programs are either copyrighted or otherwise protected.

9. Century's written license agreements with other school districts are not at issue; thus, they are immaterial, as are form license agreements other than those relating directly to District 186.

13. The extent of awareness of the information technology staff as a whole regarding Century's license agreement is immaterial.

16. Miller's involvement with other clients prior to entering into a contract with District 186 is immaterial.

17. Draft versions of the contract between District 186 and Miller are immaterial as they do not reflect the agreement between the parties thereto.

27. Employment opportunities presented to School District employees are immaterial.

In addition, Century's "additional material facts claim to defeat the motion" contained several instances of argument that are properly addressed in the argument section of District 186's Memorandum.

## ARGUMENT

### I. CENTURY HAS NEITHER PLED NOR DEMONSTRATED A CLAIM FOR UNDERLYING COPYRIGHT INFRINGEMENT.

All three of Century's infringement counts fail as a matter of law because Century cannot prevail on its underlying infringement claim. Century lists six allegations (referenced below as A-F) that it claims defeat District 186's Motion. Century's assertions in this regard, combined with evidence submitted by Century in support of its assertions, reveal the opposite to be true.

#### A. CENTURY HAS NEITHER PLED NOR PROVEN THAT IT OWNS REGISTERED COPYRIGHTS IN STAR_BASE THAT WERE COPIED.

Although Century alleges that it owns registered copyrights in Star_Base, Century still cannot connect the alleged acts of copying with the copyrighted material it claims to own. Century alleges that it owns copyrights to the Star_Base screens and source code.[3] While on one hand Century points to the fact that portions of Star_Base are entitled to copyright protection, Century's allegations of copying pertain to different portions of the software. Century loosely cites five different cases setting forth the elements of copyright infringement as "ownership, registration and infringement," but ignores the requirement that the ownership and infringement must pertain to the same material.

Century submits the report of its expert, P.G. Lewis, in support of its allegations of infringement.[4] This report, however, sidesteps the only pertinent issue with respect to infringement, namely, whether either the Star_Base screens or source code were copied by either

---

[3] First Amended Complaint ("FAC"), ¶11.
[4] Opposition Memorandum, Exhibit 7.

defendant. Instead, Lewis's report largely focuses on his belief that Miller (but not District 186) committed acts resulting in spoliation of evidence, which is a claim Lewis advances without a hint of support from Century. The fundamental issues before the Court are whether Miller copied Century's copyrighted source code and whether District 186 contributorily or vicariously allowed Miller to accomplish the underlying act of infringement.[5] These issues are all but ignored in Lewis's report.

Lewis' first foray into the issue of whether Miller copied Century's source code begins on the bottom of page 16 of the report, at which point Lewis states his intention to determine whether the "scheduler" portion of InfoSystems 3 uses any of Century's tables or "code" present in Star_Base. Immediately following this stated intention, however, Lewis reveals that he "analyzed the file SkdMassDetail.php taken from the Springfield School System. The code was analyzed to determine if any calls were made to tables that exist within the Century application."[6] (Emphasis ours.) As set forth below, however, District 186's system is not InfoSystems 3. Similarities between District 186's system and Star_Base occur as a result of the fact that District 186 continued to use portions of the Star_Base software it purchased, as explicitly contemplated in the contract between District 186 and Miller. Even so, Lewis merely concludes that Miller copied table and field structures in what he believes is District 186's version of InfoSystems 3.[7] Lewis further concludes that Miller took steps to hide the fact that it used certain tables and field names from InfoSystems 3.

Nearly halfway through his 74 page report, Lewis finally makes the first comparison between the InfoSystems 3 source code and the Star_Base source code, at which time he reveals

---

5 Although Century also alleges that Star_Base screens were copyrighted, neither Century nor its expert advance any claim that either Miller or District 186 copied these screens.

6 Opposition Memorandum, Exhibit 7, p. 16.

7 Exhibit 7, p. 16.

that the codes are not even written in the same language.[8] Moreover, Lewis' side-by-side comparison of the source codes reveals that the alleged copying simply did not happen. Despite Century's representation that it would show direct evidence of copying, made to the Court by Century in its application for injunctive relief, Lewis is reduced to arguing "substantial similarity" between the two source codes. According to Lewis, this "substantial similarity" arises out of the fact that both source codes contain the following terms: "total completes++," "total partials++," and "total irresolvables++."[9]

Lewis dedicates the next 12 pages of his report to differences between two versions of InfoSystems 3 supplied by Miller, without regard to whether either version contains copyrighted Star_Base source code. Thereafter, in the course of comparing both versions of InfoSystems 3 to Star_Base, Lewis merely concludes that Miller's product utilizes the same "logic" as Star_Base, which is a far cry from concluding that Miller copied Century's Star_Base source code.

Even though Lewis purports to have analyzed both the Star_Base source code and the InfoSystems 3 source code, the alleged copying uncovered by him pertains at best to non-copyrighted elements of Star_Base. As a result, Century cannot prove the underlying infringement necessary to sustain a cause of action against District 186 for either contributory or vicarious copyright infringement.

Contrary to Century's assertions in its Opposition Memorandum, there is a difference between source code (to which Century alleges ownership of a copyright) and tables and database structures (which Century and Lewis assert Miller copied). These differences were not lost upon Century at the time it filed its Memorandum of Law in Support of Application for Order to Show Cause With Temporary Restraints and Expedited Discovery on May 7, 2003,

---

[8] Id., p. 20
[9] Id., p. 35

wherein Century openly explained these differences to the Court.[10] Specifically, Century explained that source code is a literal element of the software that is consistently held to be protected.[11] Elements such as structure, sequence, and organization, according to Century, are non-literal elements of computer software.[12] Nonetheless, at some point between May 7, 2003, and the present, Century cast away these differences and now uses these terms interchangeably.

B. CENTURY CLAIMS MILLER HAD ACCESS TO THE STAR_BASE SOURCE CODE BUT CANNOT SUPPORT THIS CLAIM.

Despite Century's contention that this case is one in which copyright infringement would not need to be inferred, but rather would be demonstrated through a showing of direct infringement, Century now asks the Court to infer copyright infringement. Such an inference of copyright infringement can be made if "the defendant had access to the copyrighted work, and the accused work is substantially similar to the copyrighted work." Parkman & Weston Assocs., Ltd. v. Ebenezer African Methodist Episcopal Church, 2003 WL 22287358 (N.D. Ill.), quoting Atari, Inc. v. North American Philips Consumer Elec. Corp., 672 F.2d 607, 614 (7th Cir. 1982).

In support of its contention that Miller had access to the Star_Base source code, Century simply refers to a short excerpt of the deposition of Henry Stuckey, who is a former employee of District 186. Stuckey testified regarding his assumption that Brent Qualls, an employee of District 186, accessed the Star_Base source code.[13] Stuckey offered no testimony about Miller having access to or copying the Star_Base source code aside from the fact that a connection existed between Miller's office and District 186's server.[14] Stuckey testified that the connection was used by District 186 employee Brent Qualls but offered no testimony regarding any Miller

[10] Plaintiff's Memorandum of Law in Support of Application for Order to Show Cause With Temporary Restraints and Expedited Discovery, p. 3.

[11] Id., p. 10, citing NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 234 (7th Cir. 1995).

[12] Id.

[13] Exhibit 10, p.37.

[14] Id., pp. 47-48.

employee who could physically access the Star_Base source code. Century offers nothing else in support of its contention that Miller had access to the Star_Base source code.

Century also attempts to infer access to the Star_Base source code by Miller based on information received from a former District 186 employee David Williams. In its Amended Complaint, Century discloses that following a conversation with Williams, "Mr. Williams mailed to Century a list of the table definitions from MGI's InfoSystems 3 product. Upon comparing these definitions with Star_Base, Century has discovered that virtually all of the definitions were identical."[15] Further, according to Century:

> Mr. Williams also mailed to Century the program listing from a portion of MGI's product—the 'student scheduler.' Once again, in comparing this to Star_Base, Century has discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables.[16]

Thus, claims Century, Miller had access to the Star_Base source code.

Thereafter, in support of its request for injunctive relief, Century represented to the Court that a comparison had been performed between the Star_Base source code and the InfoSystems 3 source code and that this comparison proves that District 186 contributorily and vicariously infringed on Century's copyright. The firestorm unleashed by the accusations of Williams and Century failed to take into account one critical fact: **The source code provided by Williams was not the source code for InfoSystems 3.**[17] Instead, the supposed InfoSystems 3 source code was actually taken District 186's own modified version of the Star_Base software modification of which is entirely permissible for District 186's own purposes.

This error is borne out through Williams' own deposition testimony, wherein he admits that the materials he sent to Century were directly from District 186's own system:

---

[15] FAC 23.
[16] FAC 24.
[17] See Affidavit of Brent Qualls attached as Exhibit A.

Q. [District 186's attorney] Where did you obtain the information that you gave Century?

A. [Williams] Just under describe it, at an oracle prompt in SQL, and described the tables.

Q. You got it from District 186's system, correct?

A. Out of our system, yeah. I logged on to it at an SQL prompt and just described the table. There's a command that you say describe and give the name, and it will show you what's in that table.

Q. But you sent printouts from District 186's system, correct?

A. That's where I got it from.

Q. Is District 186's system the same as Miller's system?

A. I don't know, because I told Bob when I was showing him what we had."[18]

In fact, Williams claims to have no knowledge whether anyone from District 186 disclosed the Star_Base source code to anyone else:

Q. [District 186's attorney] To your knowledge, did anyone from District 186 disclose the Star_Base source code to anyone else?

A. [Williams] I don't know.[19]

With respect to Miller in particular, Williams also claims to have no knowledge:

Q. [District 186's attorney] Do you have any knowledge regarding whether the Miller Group or Miller copyrighted Star_Based [sic] programs?

A. [Williams] I have no idea, because I wasn't at that location. I don't know what they did.

Q. Do you have any knowledge of any facts that District 186 knew that Miller Group or Miller knew of any copyright infringement?

A. I don't know.[20]

---

[18] Williams Deposition, pp. 119-20. Excerpts attached as Exhibit B.
[19] Id. at p. 120.
[20] Id. at p. 133.

Williams' testimony further makes it clear that Williams had no idea that the source code he forwarded to Century was actually District 186's modified version of Star_Base's source code, not InfoSystems 3's source code.

> Q. [District 186's attorney] My question is: Do you believe you could have accessed the Star_Base source code if you had wanted to?
>
> A. [Williams] I'm not for sure, because like I said, I never did try to.[21]

Without question, Century's various claims against District 186 hinge in large part on the testimony of Williams. Since Williams' deposition reveals that what Century believed was InfoSystems 3 source code was in fact a modified version of its own source code, summary judgment should be entered at this stage.

C. CENTURY HAS NO SUPPORT FOR ITS CLAIM THAT MILLER HAD ACCESS TO THE STAR_BASE SOURCE CODE THROUGH MILLER'S RELATIONSHIP WITH DISTRICT 186.

Century offers nothing other than Stuckey's deposition in support of its assertion that Miller's relationship with District 186 allowed Miller to have access to the Star_Base source code. To the contrary, as set forth above, Stuckey offered no testimony regarding actual Miller employees who could physically access the Star_Base source code. Instead, Stuckey only testified regarding Qualls' access to the source code. Qualls is an employee of District 186, not Miller.[22] Century cannot point to any evidence indicating that Miller achieved access to Century's source code through is relationship with District 186.

D. CENTURY'S CLAIM THAT THE CONTRACT BETWEEN DISTRICT 186 AND MILLER REQUIRED MILLER TO USE THE STAR_BASE SOURCE CODE FAILS IN LIGHT OF A PLAIN READING OF THE CONTRACT.

As set forth in District 186's Motion for Summary Judgment, Century's assertion regarding the terms of the contract between District 186 and Miller is false. The only contract

---

[21] Id., p. 137.
[22] See Exhibit A attached hereto.

that relates in any way to the Star_Base product refers to District 186's existing database structures, not source code. Century does not allege that it owns a copyright to the database structures and, as set forth above, acknowledges that database structures are not source code. A plain reading of the contract upon which Century relies as the sole basis for its claim of vicarious infringement, combined with Century's raw contortion of the contract, indicates Century's vicarious infringement claim against District 186 fails as a matter of law.

E. CENTURY CLAIMS MILLER KNOWINGLY AND WILLFULLY COPIED THE COPYRIGHTED STAR_BASE "PROGRAMS" IN CREATING INFOSYSTEMS 3 BUT CANNOT SUPPORT THE UNDERLYING CLAIM OF COPYING.

Again, Century's bare claim that Star_Base "programs" were copied is not, standing alone, indicative of copyright infringement. Century fails to identify a single "program" within Star_Base that is copyrighted; instead, Century only alleges ownership of a copyright with respect to the Star_Base source code.

F. CENTURY CLAIMS MILLER'S INFOSYSTEMS 3 IS "BASED ON" THE COPYRIGHTED STAR_BASE PROGRAMS, IS EITHER IDENTICAL OR SUBSTANTIALLY SIMILAR TO THE COPYRIGHTED PROGRAMS IN THEIR LITERAL SOURCE CODE, SEQUENCE, AND ORGANIZATION.

In its Opposition Memorandum, Century now hints that its initial promise of direct evidence of copying may not come to fruition. Instead, Century's claim seems to have shifted to an assertion that InfoSystems 3 is "based on" the copyrighted Star_Base programs (of which there is no allegation of copyright ownership). Indeed, the substantial similarity uncovered by Century's ill-fated investigation of its infringement claims simply demonstrates that District 186's in-house system may be "based on" uncopyrighted elements of Star_Base that District 186 could use in any event. In fact, even though Century's expert has now been provided with the InfoSystems 3 source code (that Century thought it had when it filed the initial Complaint),

Century's expert makes only the most vague assertions of substantial similarity, unsupported by any side-by-side comparison of the source codes. Still, Century asks the Court to rely on its initial representations to the Court, apparently clinging to its earlier argument that "detailed examination of the 'access' and 'substantial similarity' tests of copying" are unnecessary.

## II. CENTURY HAS NEITHER PLED NOR DEMONSTRATED A CLAIM FOR TRADE SECRET MISAPPROPRIATION.

In opposition to District 186's Motion for Summary Judgment with respect to Century's trade secret claim, Century refuses to articulate the existence of any protectable trade secret and instead simply informs the Court that detail supporting its claim "has been provided to the School District."[23] Thus, according to Century, since District 186 "is hardly in the dark about Century's trade secret claim," District 186's Motion for Summary Judgment should be denied.

Century offers no explanation for its failure to inform the Court of the basis for its claim, and instead asserts that "[a]ny more detail would be inappropriate in pleadings because it would involve public disclosure of the source code."[24] In fact, a motion, not a pleading, is pending before the Court. Century has wholly and without basis failed to respond to District 186's argument regarding Century's trade secret claim and instead seeks a denial of District 186's Motion based on facts allegedly known to the parties but not the Court. Century's trade secret claim fails due to its refusal to articulate it.

## III. CENTURY'S TRADE SECRET AND UNFAIR COMPETITION CLAIMS ARE PREEMPTED.

Even though Century refuses to disclose the basis of its trade secret claim, Century contends that a so-called "extra element" exists that saves Century's trade secret and unfair competition claims from preemption. Similar to Century's discovery of the term "source code"

---

[23] Opposition Memorandum, p. 24.
[24] Opposition Memorandum, p. 24.

in the contract between District 186 and Miller, Century now claims that District 186's Motion for Summary Judgment "fails to cite a *single case* holding that in these circumstances, misappropriation claims are preempted." (Emphasis theirs.) To the contrary, District 186's argument is based on the rules set forth in Composite Marine Propellers, Inc. v. Van Der Wolde, 962 F.2d 1263, 1266 (7th Cir. 1992), wherein the court held that a plaintiff cannot simply identify broad areas of technology as a trade secret in support of a claim for misappropriation. It is axiomatic that the "extra element" is in addition to the underlying elements that Century refuses to disclose. Century now claims that:

> The use of the data contained in the source code to construct a competing product constitutes an action different in kind from that based upon the mere copying of components of a computer program and claims based upon such unauthorized 'use' are not preempted.

Through this assertion, Century once again attempts to confuse the issue, asserting for the first time that data is contained in the source code. Despite the myriad of pleadings and motions filed with respect to this issue, Century does not identify this supposed "data." As a result, Century's claim fails.

## IV. CENTURY'S BREACH OF CONTRACT CLAIM FAILS.

Breach of the license agreement referenced by Century is alleged based on violation of the confidentiality provision contained therein. Specifically, in addition to the arguments set forth in District 186's underlying Motion for Summary Judgment, Century's refusal to identify the substance of its trade secret claim also causes its breach of contract claim to fail. The confidentiality provision contained in the License Agreement plainly recites that it is intended to protect Century's trade secrets. Century's refusal to identify these trade secrets necessarily causes the breach of contract claim to fail.

**CONCLUSION**

Century's various claims against District 186 fail not only because they are inadequately pled, but also because the evidence adduced thus far plainly and unequivocally indicates that Century's claims are based on fundamentally incorrect assumptions. As a result, summary judgment with respect to all counts against District 186 is proper.

**WHEREFORE**, Defendant District 186 respectfully requests the court enter summary judgment in its favor and award all other relief the Court deems proper.

SPRINGFIELD PUBLIC SCHOOL
DISTRICT 186, Defendant

By: s/ Robert M. Shupenus
One of Its Attorneys

ALMON A. MANSON, JR.
Registration No. 1756761
ROBERT M. SHUPENUS
Registration No. 6238096
Brown, Hay & Stephens, LLP
205 South Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
Telephone (217) 544-8491

**PROOF OF SERVICE**

I hereby certify that on November 23, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lance T. Jones
Law Offices of Lance T. Jones
1100 South Fifth Street
Springfield, IL 62703

Craig Hilliard
Stark & Stark, P.C.
993 Lenox Drive
Lawrenceville, NJ 08648

David A. Herman
Giffin, Winning, Cohen & Bodewes, P.C.
One West Old State Capitol Plaza
Myers Building – Suite 600
P.O. Box 2117
Springfield, IL 62705

s/ Robert M. Shupenus
Registration No. 6238096
Brown, Hay & Stephens, LLP
205 South Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
Telephone (217) 544-8491
E-mail: rshupenus@bhslaw.com

11/23/04\dlt\F:\REPLY MEMORANDUM.DOC

**AFFIDAVIT OF BRENT QUALLS**

STATE OF ILLINOIS )
) ss.
COUNTY OF SANGAMON )

I, BRENT QUALLS, being duly sworn, hereby depose and state as follows:

1. I am over age 18, under no legal disability, and if called to do so, could truthfully testify regarding the facts and matters contained herein.

2. I am employed by Springfield Public School District 186 ("District 186") as the Director of Information Systems. I have been employed by District 186 since 1985 in various capacities.

3. In the course of my employment with District 186, I am familiar with and have had access to source codes for Star_Base, InfoSystems 3 and District 186's student records system, which contains components of Star_Base, InfoSystems 3 and other programs developed by District 186 in-house.

4. I have reviewed the documents supplied by David Williams to Century Consultants, Ltd. ("Century") that Williams claimed contained InfoSystems 3 source code. In fact, the source code supplied by Williams to Century was source code from District 186's system and modified from the Star_Base software purchased by District 186.

5. The source code provided by Williams to Century is not InfoSystems 3 source code.

Brent Qualls

BRENT QUALLS

Subscribed and sworn before me this 23rd day of November, 2004.

Joanne E. Kohlbecker
Notary Public

OFFICIAL SEAL
JOANNE E. KOHLBECKER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-2-2006

EXHIBIT A

Q. Okay. In that paragraph, are you properly quoted?
A. Well, I don't re --
MR. HILLIARD: Objection to the form.
MR. SHUPENUS: Go ahead and answer.
A. I don't remember saying this. I mean, that -- because I --
Q. Keep in mind I'm not referring just the recorded conversation, but any of your conversations with Megan. Was that -- were those words ever spoken by you?
MR. HILLIARD: Objection to the form.
MR. SHUPENUS: Go ahead and answer it.
A. I don't remember ever saying anything like that, because I've never talked to the Miller Group anyway. It's only...
Q. You've never talked to any --
A. No, as far as -- well, Brent, but I was over there for a couple meetings, but we never talked about -- I don't remember saying that.
Q. Earlier you testified that you had no motivation in reporting this alleged wrongdoing by District 186 to the people at Century. Do you recall that?



A. Yes.
Q. And in the recorded conversation, on the other hand, you indicated that you wanted something to get done; is that correct?
A. Yeah, now that I see this. Like I said, because I did not remember the recorded conversation.
Q. Towards the end of that conversation, you indicated that Century should have all of its ducks in a row; is that correct?
A. Yes.
MR. HILLIARD: Objection to the form.
Q. What did you mean by that statement?
A. Well, I mean, before you have -- you want to be sure you got all the information you need.
Q. Do you believe that you gave Century all the information they needed?
A. All that I had. I couldn't, you know...
Q. Where did you obtain the information that you gave Century?
A. Just under describe it, at an oracle prompt in SQL, and described the tables.
Q. You got it from District 186's system, correct?
A. Out of our system, yeah. I logged on to



it at an SQL prompt and just described the table. There's a command that you say describe and give the name, and it will show you what's in that table.
Q. But you sent printouts from District 186's system, correct?
A. That's where I got it from.
Q. Is District 186's system the same as Miller's system?
A. I don't know, because I told Bob when I was showing him what we had.
Q. I'd like to refer you back to the first amended complaint exhibit, I believe that's 4.
MR. HILLIARD: Williams 4?
MR. SHUPENUS: Yes.
Q. One moment. I have a few preliminary questions. To your knowledge, did anyone from District 186 disclose the Star_Base source code to anyone else?
A. I don't know.
Q. Well, when you were speaking with Mr. Megan in the conversation that was recorded, what wrongful conduct were you referring to?
A. Well, I mean, we were -- to me, you know, data structures we were pretty much the same, and, I'm



assuming, I'm thinking that we were using -- the one that we were using, the Star_Base scheduler.
Q. Why don't you look at paragraph 17 of Exhibit 4, the amended complaint.
A. What page is it on?
Q. Page 4, and it's paragraph 17, it's at the bottom of the page.
A. Okay.
Q. I'll read the part that I want to talk to you about. It says in the second line: Under the license agreement, if the schools elect to go, quote, off maintenance, unquote, i.e., they elect to stop making periodic payments for support services, closed parentheses, the district can still continue to use the software package, but it is no longer entitled to any updates, nor is it entitled to receive any support. Do you see that?
A. No. That's on page 4?
MR. HILLIARD: I believe the witness is in the wrong document.
MR. MANSON: Page 4.
MR. HILLIARD: Sorry, Mr. Williams. The witness now has Williams 4 in front of him, and he has turned to page 4. Paragraph 17, sir.



EXHIBIT B

A. Okay.
Q. Now, look at the second sentence in paragraph 17 where it begins with the word "under."
A. Okay.
Q. And it says: Under the license agreement, if the schools elect to go, quote, off maintenance, unquote, open parentheses, i.e., they elect to stop making periodic payments for support services, closed parentheses, the district can still continue to use the software package, but it is no longer entitled to any updates, nor is it entitled to receive any support. Do you see that?
A. Yes.
Q. Does that reflect your understanding of the agreement between --
A. I never seen the agreement before.
Q. Does it reflect your understanding of the agreement District 186 and Century?
A. If this is what the license agreement was.
Q. I'm asking you about what your understanding was. I want to know if this provision conflicts with your understanding.
A. Well, I never seen this before, the



agreement, so...
Q. Right. I'm not asking you if you saw the agreement, I'm asking you about your understanding of the agreement.
A. I never knew what it was.
Q. Okay.
A. I mean, I've never seen a licensing agreement that the district had with Century Consultants.
Q. Did you believe that through its conduct, District 186 was somehow violating an agreement with Century?
A. Well, my assume -- I don't know what, but now seeing this, it looks like now maybe they weren't.
Q. But when you made the allegations to Megan, you didn't know that, right?
A. No, I didn't know that at all. I was under the assumption that, you know, when you stopped paying maintenance, you couldn't use the, you know, you were done.
Q. So, if the license agreement says what is alleged in paragraph 17, would you have any problem with what District 186 was doing with the Star_Base program?



MR. HILLIARD: Objection to the form.
MR. SHUPENUS: Go ahead and answer.
A. No, not if this was, you know, this was in force. If that's what the license agreement said, you couldn't, but...
Q. So, do you know of any -- let me back that up. If this quoted language was in the contract between Star_Base and District 186, let's assume that it was, that being said, do you know of any wrongful conduct on the part of District 186 with respect to the Star_Base system?
A. The only thing, I would have to find out what -- if it was legally to -- I've got these tables, if it was legal for me to develop something else from, but I guess you -- when they bought the product, that should give them the right to use the tables. In fact, would that give us the right to redevelop? See, I don't know that.
Q. Any other possible wrongful conduct that you believe District 186 participated in?
A. No.
Q. With respect to the Star-Base system in particular?
A. No.



Q. And I apologize if I've asked this already, but from where did you develop your understanding that District 186 could not use the Star_Base program if it wasn't making maintenance payments?
A. I thought that. Well, I mean, just like if you don't pay your licensing fees, can you really use the product?
Q. Earlier, I believe when Mr. Hilliard was questioning you, you expressed some regret about ever making this phone call to Bob Megan; is that right?
A. Yes, it is.
Q. Why do you regret making that call?
A. Because the mess it's created.
Q. Any other reasons?
A. No.
Q. Okay. On page 4 of Exhibit 5, in the middle, following where Bob Megan says: You're such an honest guy. The following line from you is: They're screwing another company. Do you see that?
A. Well, I got to find it.
MR. HILLIARD: Right there.
A. What page?
MR. HILLIARD: Four.

MR. SHUPENUS: Fourth page right in the middle.
A. Are you sure it's on page 4?
MR. HILLIARD: Here. Let me direct you to it. I'll help you. Right here. (Pointing.) He's asking you --
A. Okay.
Q. Right after Mr. Megan says to you that, quote, you're such an honest guy, unquote, you responded: They're screwing another company. Who are you referring to?
A. What I was referring to there is if, you know, if they're selling this --
Q. Who is "they?"
A. The other group, and if it's the same product, Century's getting screwed over the deal.
Q. If the Miller Group is selling --
A. The same product we got, if it's the same thing.
Q. Same thing as what? I'm not understanding your response.
A. If the product that was developed, you know, same table structures pretty much as Star_Base, that's not right for them to profit.



Q. Who?
A. Miller.
Q. Did Miller develop the same product?
A. I don't know. That's what it comes down to, because, you know, you have to prove that he's got the same product.
Q. So, a more accurate statement there would have been: They might have been screwing another company?
A. Yes. I mean, you know --
MR. HILLIARD: Objection to the form.
MR. SHUPENUS: Go ahead and answer.
A. Yeah, if they're using the same, you know, table structures, then pretty much as what Star_Base was using.
Q. Was Miller using the same table base structures as Star_Base?
A. I don't know. The only thing I know is what we had in our system, which was at the district.
Q. The next line Megan says: Yeah, and even if they went off support with us and stayed within Springfield with all of this, it would have been okay.
A. Okay.
Q. And you responded: Yeah, that's what I said. Is that correct?



A. Yeah, I did make a statement of that.
Q. So you did know that it was okay for District 186 to use the Star_Base program off maintenance, correct?
MR. HILLIARD: Object.
MR. SHUPENUS: Go ahead and answer.
MR. HILLIARD: You can answer.
A. When Bob made this statement, I didn't know beforehand it was okay. Let me see.
Q. Then why did you say: Yeah, that's what I said?
A. Okay. I might have said that to Henry. Yeah, I might have mentioned that to Henry. It's -- because as long as you're paying support, even though you redone the product...
Q. It appears that Megan said that even if District 186 went off support, they still could have used Star_Base, right?
A. Yeah, that's what this says, yeah.
Q. And what was your response?
A. Let's see if I can find it. I got to find it in here again. What line is that?
Q. That's about two-thirds of the way down. I believe, sir, that your response was: Yeah, that's what I said.



A. (No response.)
Q. We'll go on.
A. Okay, wait. Go ahead.
Q. Further down the page, you indicated that Henry told you, quote, they found the scheduler. And it was yours. Unquote. Who are you referring to in that statement?
A. I'm trying to remember. Let's see... Because I think we had come from a Monday morning meeting after they done a scheduling run, and the results came out the same, and I think that's when Henry made the comment that, you know, it was the scheduler.
Q. That what was the scheduler?
A. That we were using. We were using Century's scheduler.
Q. And in fact, you could use Century's scheduler, right?
MR. HILLIARD: Objection to the form.
MR. SHUPENUS: Go ahead and answer it.
A. Well, according to what this one agreement here says...

(Pause in the proceedings.)
Q. Well, Century indicated the same thing to you in the phone conversation, right, that --
A. This here.
Q. Right.
A. In the conversation. I didn't know it before then.
Q. Okay.
A. That it was all right to go ahead and use it.
Q. Do you feel better about what you did with respect to your work at District 186 following when the system was switched?
A. Well, I feel better reading this, that maybe, you know, the district was okay.
Q. Maybe you shouldn't have called and said that District 186 was doing something wrong. Isn't that correct?
A. Well, yeah. I mean, this is...
Q. Did anyone ever ask or request that you go to the Miller Group office instead of Brent Qualls?
A. At first, they wanted me to go instead of Brent.
Q. Who wanted you to go?



A. That's what they -- Mike and them.
Q. Who is --
A. Well, because I got it secondhanded. They wanted me to go because I knew more about Star_Base.
Q. Let's stop for a second. Who is they?
A. The boss.
Q. Who's the boss?
A. Mike Holinga.
Q. Mike Holinga wanted you to go to Miller?
A. That's what they had talked. Her and Agnes -- Agnes -- I took care of payroll, and she said she couldn't let me go.
Q. So Mike Holinga wanted you to go and Agnes didn't?
A. I'm pretty sure it was Mike. But Agnes was still my boss at the time that went down. Agnes was my boss. She said she could not let me go because I maintained payroll and everything, so Brent was the second choice.
Q. Why do you believe you were first choice?
A. I had worked more with Star_Base, and I knew how our old system worked.
Q. If you look at the first page at Megan's



last statement --
A. First page.
Q. Of Exhibit 5.
A. Okay.
Q. Megan indicates, I believe, that Star_Base is written in C code, right?
MR. HILLIARD: Objection to the form.
A. Star_Base -- the Star_Base code isn't C. It's oracle PLSQL.
Q. Okay. Do you know what Megan is referring to in his last statement on page 1 of Exhibit 5?
A. No, because you have to -- all of us -- you have to do in oracle forms and reports to -- I don't know what it converts in to.
Q. Okay. Is there any other basis for your contention that you were first choice to go work at Miller?
A. Well, I think because I had worked with oracle tables and stuff more than Brent had, because he was also doing all the networking at that time, routers and everything, and when we installed Star-Base, I wrote a bunch of reports and all that stuff. I done more in it than what he had.



Q. Let's go back to the first amended complaint, Exhibit 4. Do you have any knowledge that MGI or Miller -- well, let me back up. Do you have any knowledge regarding whether the Miller Group or Miller copied copyrighted Star_Based programs?
A. I have no idea, because I wasn't at that location. I don't know what they did.
Q. Do you have knowledge of any facts that District 186 knew that Miller Group or Miller knew of any copyright infringement?
A. I don't know.
Q. Are you aware of any facts regarding whether District 186 in any way induced or contributed to copyright infringement on the part of Miller?
MR. HILLIARD: Objection to form.
MR. HILLIARD: Go ahead and answer.
A. I don't know.
Q. Are you aware of any facts indicating that the school district had any right to exercise control over Miller or the Miller Group with respect to software development?
A. I don't know.
Q. Are you aware of any facts indicating that anyone from District 186 gave anything

confidential to Miller or Miller Group?
A. I don't know.
Q. Now, I think you earlier testified that you like Brent Qualls; is that right?
A. Yeah, I like Brent. I have no problems with him.
Q. Do you believe that any of -- that Brent took any action with respect to work performed at Miller's offices, that would be indicative of Qualls trying to claw his way to the top, so to speak?
A. Well, I mean, when he was going to come back over to the district, he got a raise and everything.
Q. How do you know that?
A. It went through payroll.
Q. So you saw that?
A. Well, yeah. I take care of payroll. The payroll girls, they show me, you know, when it goes through the agenda, they're raising somebody.
Q. Did that anger you?
A. No, because I just, you know, like I said, I was getting close enough to -- I was content with what I was, you know, with salary and everything. I didn't care to be management.



Q. Well, were you making more than Brent?
A. At the time, yeah. So, I mean, that didn't bother me.
Q. Sitting here today after hearing the recording of the telephone conversation between Megan and yourself, and reading the transcript of the same, do you have any basis to believe that anyone from District 186 stole anything from Century?
A. No, not according to, you know, it says we can use -- in that license agreement.
Q. Okay. Mr. Williams, that's all I have. Thank you.
MR. HILLIARD: I have, I'm sorry, Mr. Williams, just a few follow-up questions. It won't take that long, and I appreciate your time.

REDIRECT EXAMINATION

BY MR. HILLIARD:
Q. The file server which was physically located at District 186's offices, had the Star_Base source code resident on it, correct? That was your understanding?
A. That's what I understand.
Q. And you testified that you never actually saw the Star_Base source code; is that right?



A. Not on the new system. On the old system, all the time, but when we went to the new, I was under the understanding, the way Bob Megan explained how it works, that the old system --
Q. The old what?
A. The old Star_Base, the oracle seven, the text base, you have to compile the programs, and the objects reside on the server. Under the new graphical, every time you use, it recompiles, so the source has to be there, because it constantly recompiles. It's not like the old system, whereas you just generate objects and execute objects.
Q. Okay. I think I understand what you're saying. But, did you -- so it was your understanding that the source code was accessible to certain people employed by the district if they wanted to see it, correct, for Star_Base?
A. Yeah, I mean, if you had the password, you know, the --
Q. You could access it?
A. Through the directors, yeah. If you had clearance to access it.
Q. Okay. Did you have clearance?
A. Not -- I never did sign on to that, so I



don't know for sure if, well, I didn't have permissions on some of the server. I don't know how deep my permissions went.
Q. My question is: Do you believe you could have accessed the Star_Base source code if you had wanted to?
A. I'm not for sure, because like I said, I never did try to.
Q. Was it your understanding that Mr. Qualls had access if, and I'm not asking you whether he did access it or not, if he wanted to, could he access the Star_Base source code?
A. I would think that he could, because he took care of the servers, so he should have, you know, he'd have permissions.
Q. It was your understanding that he had that access?
A. Yeah, I think. I would assume he had that access, because he took care of the server.
Q. Was there anyone else employed at the district who would have that access?
A. No, I don't think so.
Q. Okay.
A. I mean, you know...