**E-FILED**
Tuesday, 21 June, 2005  02:52:17 PM
Clerk, U.S. District Court, ILCD

**IN THE UNTIED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| CENTURY CONSULTANTS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2003-CV-3105 |
| | ) | |
| THE MILLER GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SPRINGFIELD PUBLIC SCHOOL DISTRICT 186'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO SUPPRESS**

Defendant SPRINGFIELD PUBLIC SCHOOL DISTRICT 186 ("District 186"), through

its counsel, Brown, Hay & Stephens, LLP, hereby moves this Court for an Order suppressing and

barring plaintiff Century Consultants, Ltd. ("Century") from utilizing certain evidence, and in

support thereof states:

### INTRODUCTION

In its Amended Complaint, Century alleges facts it gleaned through secretly recording

telephone conversations with the alleged "whistleblower" in this case, David Williams

("Williams"). In the course of discovery, District 186 obtained sworn admissions from both

Williams and the Century employee who recorded the conversations, Robert Magan ("Magan"),

that indisputably verify that the recordings violate both Illinois Eavesdropping Act, 720 ILCS

5/14-1 et seq. and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18

U.S.C. §2510 et seq. Such tactics render such evidence, as well as information obtained as a

result of the improper discovery of such facts, "fruit of the poisonous tree," therefore, it must be suppressed.[1]

**FACTS**

Prior to his retirement, Williams was employed by District 186 as its lead systems analyst.[2] In the course of his employment, Williams became familiar with the Star_Base student information software package that District 186 purchased from Century.[3] Star_Base was but one of many elements comprising District 186's student information system.[4] A few years after District 186 purchased Star_Base, Williams became aware that District 186 wanted to convert its existing student information system to a web based system, but that District 186 could not find a commercially available web based system that was compatible with District 186's Macintosh computers.[5]

Williams then learned that District 186 and defendants John G. Miller and The Miller Group (collectively "Miller") entered into an agreement to develop such a system.[6] Williams also learned that Miller intended to market a student information system to other school districts.[7] At the time, Williams assumed that Miller intended to market the same student information system to other school districts that was being developed for District 186, but he had no first hand knowledge to support this assumption.[8]

Thereafter, Williams discovered that Miller was marketing a student information system known as InfoSystems 3, and incorrectly assumed that InfoSystems 3 was the system used by

---

[1] Immediately after District 186 obtained Williams' affidavit, the Court entered an Order staying these proceedings. As a result, Williams' affidavit was not presented to the Court until this time.
[2] Williams affidavit, paras. 2-3, a copy of which is attached hereto and incorporated herein as Exhibit A.
[3] Id., para. 4.
[4] Id., para. 11.
[5] Id.
[6] Id., para. 12.
[7] Id., para. 17.
[8] Id.

2

District 186.[9]    Williams knew that District 186's student information system still utilized portions of Century's Star_Base product, therefore, Williams incorrectly assumed that Miller's InfoSystems 3 product also used a portion of Star_Base, which Williams believed was improper.[10]

In the course of his employment, Williams had frequent contact with Magan.[11]   After Williams formed his belief that Miller was using Century's Star_Base software in its InfoSystems 3 product, Williams told Magan about his concerns.[12]   Magan conveyed the information he obtained from Williams to his superiors at Century.[13]   Century instructed Magan to obtain additional information from Williams and secretly record his conversations with Williams.[14]

Pursuant to Magan's request during these secretly recorded conversations, Williams obtained and printed certain documents from District 186's student information system, including table definitions and a program listing, and mailed these documents to Magan.[15] Williams represented to Magan that he obtained these documents from InfoSystems 3.  Williams later realized, however, that the documents were actually from the portion District 186's own system that continued to use Star_Base, rather than from InfoSystems 3.[16]  As a result, when Magan reviewed documents he received from Williams (believed at the time to be from InfoSystems 3) and compared them to Star_Base, he naturally found similarities.[17]   Magan thought he had uncovered evidence that someone had copied Century's Star_Base product and was selling it as its own, but he was actually comparing Star_Base to Star_Base.

---

[9]   Id., para.18.
[10]   Id., para.20.
[11]   Id., para.21.
[12]   Id.
[13]   Deposition of Robert Magan, pp. 113-115. A complete copy of Magan's deposition transcript will be tendered to the Court via hand delivery.
[14]   Id.
[15]   Williams affidavit, paras. 24-29.
[16]   Id.
[17]   Id.

Magan acknowledged in his deposition testimony that pursuant to the direction of his superiors at Century, he telephoned Williams and secretly recorded their conversations.[18]   Magan also verified the accuracy of a transcript of the recorded conversations subsequently created by District 186.[19]   Williams confirmed the accuracy of the transcript as well, and confirmed that he did not realize Magan was recording the conversations.[20]

The substance of the recording is in stark contrast Magan's declaration, which Century submitted to the Court at the outset of this case.  Magan ultimately testified that Williams was the sole source of the operative facts set forth in Magan's declaration, but Magan's lack of first hand knowledge was not disclosed until well after the Court had ordered injunctive relief.

Magan's improperly obtained hearsay assertions pertain to central issues in this case.  For example, in his declaration, Magan claims:

> 11.    *Mr. Williams also mailed to me the program listing from a portion of the Miller Group's product—the 'student scheduler.'  Once again, in comparing this to Star_Base, I discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables.*
>
> 12.    *I declare under penalty of perjury that the foregoing is true and correct.*[21]

Implicit in Magan's assertion is that Magan knew he was comparing code from Info Systems 3 to Star_Base.  The recording, however, indicates that Williams explicitly told Magan that Williams <u>did not know</u> whether InfoSystems 3 actually incorporated Century's student scheduler:

> *Williams:*    *But, you know, we tried to say.    All the documentation, everything, says this is copyrighted material.    And even, basically, there, I know that, well, this is second hand, this is sketchy, they were*

---

[18] Magan deposition at p. 110.
[19] Id.; Defendant's Exhibit 16, attached hereto and incorporated by reference as Exhibit B.
[20] Williams affidavit, Exhibit A and para. 21.
[21] Magan declaration, paras. 11-12.

4

*about to, they were going to use the [student]*
*scheduler. I never heard that face to face.*

*Magan:*        *Right.*

*Williams:*      *But it came out, (inaudible) and Henry told me they*
*found the [student] scheduler, and it was yours.*

*Magan:*        *Hmm.*

*Williams:*      *But you know, I got it second hand, so I mean,*
*that's...* [22]

Despite clearly understanding that Williams was unsure whether InfoSystems 3 utilized

the Star_Base student scheduler, Magan presented Williams' hearsay-derived suspicions to the

Court as sworn fact. Magan later testified in his deposition that Williams was his sole source of

knowledge regarding the evidence of alleged copying set forth by Magan in his declaration, and

that Magan's erroneous belief arose from what he learned in the secretly recorded conversations:

> *Q.*   *Well, look at paragraph eleven of your declaration. The second*
> *sentence says: Once again, in comparing this – meaning the*
> *program listing – to Star_Base, I discovered that the code used in*
> *Info System 3 has verbatim reference to Star_Base tables. Do you*
> *see that?*
>
> *A.*   *Yes, I do.*
>
> *Q.*   *From where did you obtain the codes used in Info System 3?*
>
> *A.*   *I was relying on the code that Dave had sent me.*
>
> *Q.*   *And the same thing with respect to your representation in*
> *paragraph ten?*
>
> *A.*   *Yes.*
>
> *Q.*   *Okay. Do you know that what Dave Williams sent you is from Info*
> *System 3?*
>
> *A.*   *I only know based on what he told me. So I have no way to*
> *confirm that. I was basing it on what Dave had told me.* [23]

---

[22] Magan deposition, p.110.
[23] Id. at 148-49.

The recording also indicates that Williams conveyed his expectation of privacy to Magan after Magan requested the student scheduler documents:

| | |
|---|---|
| *Magan:* | *Well, yeah, if you can, you know, find a little bit more stuff,* |
| *Williams:* | *Yeah.* |
| *Magan:* | *And don't worry about them, uh...* |
| *Williams:* | *I'm going to dig into this and I'm gonna find out today. Now, do you want to actually look at this php code?* |
| *Magan:* | *Yeah, you know, if you could just send one of 'em I would just like to see...* |
| *Williams:* | *Yeah, like I say, though, this is, this is between you and I.* |
| *Magan:* | *Right, right, right, okay, don't worry about it.* |
| *Williams:* | *And don't (inaudible).* |
| *Magan:* | *Yep.* [24] |

In fact, not only is Magan's declaration inconsistent with the recordings, the declaration is also inconsistent with Magan's deposition testimony. Contrary to the assertions in his declaration, Magan ultimately testified:

- that he was not under oath when he signed the declaration;[25]

- that he doesn't know when he signed the declaration;[26]

- that he did not know whether the document attached to his declaration as Exhibit A was, in fact, a copy of the License Agreement between District 186 and Century;[27]

- that he had no first hand knowledge regarding his representation in paragraph 6 of his Declaration regarding District 186's contract with Miller to assist in the design of a student software package;[28]

---

[24] Id.
[25] Id. at p. 117.
[26] Id.
[27] Id. at p. 120.
[28] Id. at pp. 126-127.

6

- that contrary to his assertion in paragraph 7, a former District 186 employee did not, in fact, tell Magan that Miller was using and marketing Century's Star_Base product to customers other than District 186.[29]

## PROCEDURAL HISTORY

Despite Magan's admitted lack of personal knowledge, Century used Magan's declaration to convince the Court to enter an *ex parte* Order granting injunctive relief. Not only does Magan now admit that he did not, in fact, have personal knowledge of the facts alleged in his declaration, Magan also indicates that he was not actually under oath when he signed his declaration.[30]

Armed with what it mistakenly believed was an indisputable case of copyright infringement, Century filed suit against Miller and District 186. At that time, Century submitted an unsworn, undated declaration from Magan containing the facts presented to Magan by Williams. Century, however, presented this hearsay information to the Court as personal, first hand knowledge, even though both Magan and Williams subsequently verified that Williams explicitly told Magan that he obtained the information second hand. Century never disclosed to the Court that Magan's declaration was actually based on "information and belief," much less that his "information and belief" was obtained illegally.

After the Court entered the Temporary Restraining Order, Century disclosed and provided a cassette tape to District 186 containing audio recordings of conversations between Magan and Williams. As discovery progressed, facts emerged indicating that Magan's allegedly sworn factual representations were not only false, but were also rooted solely in hearsay assumptions made by a person who acknowledged that he did not know whether his suspicions were correct. These facts emerged shortly before the Court stayed these proceedings due to Miller's resulting bankruptcy.

---

[29] Id. at pp. 129-130.
[30] Id. at p. 116.

## APPLICABLE LAW

### A.    THE ILLINOIS EAVESDROPPING ACT BARS CERTAIN EVIDENCE RELIED UPON BY CENTURY

The <u>Erie</u> doctrine applies to any case wherein state law provides the rule of decision. <u>Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.</u>, 313 F.3d 385, 390 (7th Cir. 2002). Pursuant to <u>Erie</u>, in matters wherein jurisdiction is based on federal question, federal substantive law controls. However, in matters wherein jurisdiction is supplemental, state substantive law governs. <u>Houben v. Telular Corp.</u>, 309 F.3d 1028, 1032 (7th Cir. 2002).

The underlying case contains both federal and state law claims. Century alleges subject matter jurisdiction based on 28 U.S.C. §§1331 (federal question), as well as 1338(a) (copyright infringement) and (b) (copyright infringement resulting in unfair competition).[31]  Jurisdiction over the remaining state law claims is alleged based upon 28 U.S.C. §1367(a) (supplemental jurisdiction).

The Illinois Eavesdropping Act ("the Act") provides in pertinent part that a person commits eavesdropping when he:

> (1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication or (B) in accordance with Article 108A or Article 108B of the "Code of Criminal Procedure of 1963", approved August 14, 1963, as amended; or
>
> * * *
>
> (3) Uses or divulges . . . any information which he knows or reasonably should know was obtained through the use of an eavesdropping device.

The Act defines an "eavesdropper" in pertinent part as any person "who operates or participates in the operation of any eavesdropping device," together with one who directs another

to illegally use an eavesdropping device on his behalf. A first offense of eavesdropping is a

Class 4 felony. Id.

Section 5 of the Act is the exclusionary provision, and provides that evidence obtained

through eavesdropping is inadmissible even in civil proceedings:

> Any evidence obtained in violation of this Article is not admissible in any
> civil or criminal trial, or any administrative or legislative inquiry or
> proceeding, nor in any grand jury proceedings; provided, however, that so
> much of the contents of an alleged unlawfully intercepted, overheard or
> recorded conversation as is clearly relevant, as determined as a matter of
> law by the court in chambers, to the proof of such allegation may be
> admitted into evidence in any criminal trial or grand jury proceeding
> brought against any person charged with violating any provision of this
> Article.

Id.

This section of the Act is interpreted by courts as the Illinois Legislature's adoption of the

"fruit of the poisonous tree" doctrine. In re Marriage of Almquist, 299 Ill.App.3d 732, 737 (3rd

Dist. 1998). Evidence obtained in violation of the Act is inadmissible in any civil or criminal

trial, with the sole exception of trials pertaining to a violation of the Act. Independent Trust

Corp. v. Hurwick, 351 Ill.App.3d 941, 951 (1st Dist. 2004).

Even though the Act pertains to the admissibility of evidence, which is normally

considered a procedural rather than substantive issue, federal courts regard the exclusionary

provision of the Act as substantive. Glinski v. City of Chicago, 2002 WL 113884 (N.D.Ill.). In

Glinski, the Court analyzed the effect of the Act as a bar to admissibility of evidence in an action

applying state substantive law. The Court held that the Act is substantive rather than procedural

because the exclusionary rule contained therein is "'concerned with the channeling of behavior

outside the courtroom,' not solely with accuracy and economy in the litigation." Id., * 7, quoting

Barron v. Ford Motor Co. of Canada, Ltd., 965 F.2d 195, 199 (7th Cir. 1992).

9

**B.     THE FEDERAL WIRETAPPING STATUTE BARS CERTAIN EVIDENCE RELIED UPON BY CENTURY**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") also prohibits the interception of any oral communication where the parties have a reasonable expectation of privacy.  Pursuant to §2510(d) of Title III, however, such conduct is permitted as long as one of the parties to the conversation consents, and the purpose of recording the conversation is not to commit a "criminal or tortious act in violation of the Constitution or laws of the United States or of any State."    Otherwise, §2515 provides that communications intercepted in violation of Title III cannot be used as evidence in any trial, hearing or other proceeding in any court.

**ARGUMENT**

The evidence obtained through the secret recordings cannot be used to support Century's state law claims.  It cannot be argued in good faith that both parties consented to the recordings, as both parties unequivocally swear that the opposite is true.  It is also undisputed that the information obtained through the secretly recorded conversations serves as the impetus to Century's Amended Complaint.  The Act absolutely bars each of Century's state law claims.

Similarly, Century's improper use of intercepted communications voids the limited protections it may have otherwise had under Title III, therefore, its federal claims fail as well.  In most cases, when the "purpose" of recording the conversation is to simply gather evidence prior to filing a lawsuit, the purpose is neither criminal nor tortious, and is thus protected.  Glinski, *2. Century's actions, however, fall well outside of this exception, and cross the line separating the mere gathering of evidence from the commission of a criminal or tortious act.

Upon initially filing suit against Miller and District 186, Century submitted Magan's declaration to the Court for the purpose of obtaining injunctive relief in order to prevent Miller (a

10

competitor of Century) from selling its competing product.  Century was able to obtain this injunction in large part through Magan's erroneous assertions.

It is well established that a party cannot use assertions based on information and belief in order to obtain injunctive relief.  Bowles v. Montgomery Ward & Co., 143 F.2d 38 (7th Cir. 1944), see also Wright & Miller, 11A Fed. Prac. & Proc. Civ. 2d §2949.  Instead, affidavits submitted in support of a claim for injunctive relief must be based on the personal knowledge of the affiant.  Kinney v. Federal Security, Inc., 2001 WL 219691, *1-2 (FN2) (N.D.Ill.).  Century could not have received the injunctive relief it sought had it apprised the Court that its allegations were based solely on unsubstantiated hearsay.  Without injunctive relief, Century would have been required to subject its claims for relief to cross examination and judicial scrutiny before obtaining it.  Instead, Century disguised Williams' second hand knowledge and unfounded suspicions as sworn facts within Magan's personal knowledge for the purpose of wrongfully obtaining injunctive relief.  By the time contrary facts were unearthed, Miller was driven into bankruptcy, and District 186 expended considerable resources defending a claim based in unfounded suspicion and conjecture.  The harm already inflicted upon each of the defendants arising out of Century's conduct demonstrates why there exists a strong public policy against the use of "fruit of the poisonous tree" as evidence.

## CONCLUSION

Century did not disclose and submit the recorded conversations to the Court as the evidentiary basis for injunctive relief.  Had it done so, Century would almost certainly not have obtained the Temporary Restraining Order, but it may still have still been able to rely upon evidence it subsequently obtained for use in its federal claims.[32]  Century instead chose to intentionally mislead the Court in order to obtain quick relief for the purpose of devastating a

---

[32]   Century's state law claims are barred under the Illinois Eavesdropping Act regardless.

11

competitor. In doing so, Century ruined any chance it may have otherwise had to invoke the "proper purpose" exception to Title III.

The foundation for Century's claim is the knowledge that Century improperly derived through violating both the Illinois Eavesdropping Act and Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Evidence improperly obtained and used through violations of these statutes should be suppressed, together with all evidence subsequently obtained as a result.

**WHEREFORE**, defendant SPRINGFIELD PUBLIC SCHOOL DISTRICT 186 respectfully requests the Court enter an Order:

A.  Mandating suppression of all facts obtained through the secretly recorded conversations between Robert Magan and David Williams;

B.  Striking Robert Magan's declaration, together with all inferences, facts and references to such facts contained in Century's Amended Complaint;

C.  Requiring Century to reimburse District 186 for its costs and attorneys' fees incurred as a result of Century's false representations contained in Robert Magan's declaration; and

D.  Awarding all other relief the Court deems proper.

> SPRINGFIELD PUBLIC SCHOOL
> DISTRICT 186, Defendant,
>
> By: s/Robert M. Shupenus
> One of Its Attorneys

**BROWN, HAY & STEPHENS, LLP**
Almon A. Manson, Jr.
Registration No. 1756761
Robert M. Shupenus
Registration No. 6238096
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
(217) 544-8491

## PROOF OF SERVICE

I, the undersigned, hereby certify that on June 21, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record:

Lance T. Jones
Law Offices of Lance T. Jones
1100 South Fifth Street
Springfield, IL  62703
ltj@warpnet.net

Craig Hilliard
Stark & Stark, P.C.
993 Lenox Drive
Lawrenceville, NJ  08648
chilliard@stark-stark.com

David A. Herman
Giffin, Winning, Cohen & Bodewes, P.C.
One West Old State Capitol Plaza
Myers Building – Suite 600
P.O. Box 2117
Springfield, IL  62705
dherman1@gifwinlaw.com

s/Robert M. Shupenus
Almon A. Manson, Jr. Reg No. 1756761
Robert M. Shupenus, Reg. No. 6238096
Brown, Hay & Stephens, LLP
205 South Fifth Street, Suite 700
P.O. Box 2459
Springfield, Illinois 62705-2459
(217) 544-8491
(217) 544-9609
amanson@bhslaw.com
rshupenus@bhslaw.com

June 21, 2005/ean/F:\wpwin60\RMS\Li\CENTURY\Memo ISO mtn Suppress.doc

13