**E-FILED**
Friday, 15 July, 2005  02:42:10 PM
Clerk, U.S. District Court, ILCD

E

X

H

I

B

I

T

3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CENTURY CONSULTANTS, LTD., | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 03-3105 |
| | ) |
| THE MILLER GROUP, INC., JOHN G. | ) Judge Richard Mills |
| MILLER, AND THE SPRINGFIELD PUBLIC | ) |
| SCHOOL DISTRICT 186, | ) |
| | ) |
| Defendants. | ) |

## STATEMENT OF LOSSES SUBMITTED ON BEHALF OF THE MILLER GROUP, INC., AND JOHN G. MILLER

Pursuant to Fed.R.Civ.P. 65(c) and this Court's Order of May 16, 2003, Defendant Miller Group, Inc., and Defendant John G. Miller, by their attorneys, Hinshaw & Culbertson, submit a statement of losses expected to be incurred as a result of the Temporary Restraining Order entered in this cause on May 8, 2003. The losses are set forth in the affidavit of John G. Miller which is attached hereto and by reference made a part hereof.

May 17, 2003 .

Respectfully submitted,

THE MILLER GROUP, INC., and
JOHN G. MILLER, Defendants,

By _____
One of Their Attorneys

J. WILLIAM ROBERTS
CHARLES R. SCHMADEKE
HINSHAW AND CULBERTSON
400 South Ninth Street, Suite 200
Springfield, IL 62701-1908
217-528-7375
217-528-0075

EXHIBIT

MILLER 3
10-19-04 JB

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CENTURY CONSULTANTS, LTD., )
)
               Plaintiff, )
)
vs. )
)
THE MILLER GROUP, INC., JOHN G. MILLER, )
and THE SPRINGFIELD PUBLIC SCHOOL )
DISTRICT 186, )
)
)
)
               Defendants. )

Case No. CIVIL NO. 03-3105

Judge Richard Mills

## AFFIDAVIT OF JOHN G. MILLER

NOW COMES the AFFIANT, JOHN G. MILLER, of sound mind and over twenty-one years of age, being first duly sworn on oath, states and affirms that the following is based on his personal knowledge and that if sworn as a witness would competently testify to the following:

1.      At all relevant times, I served as the President and CEO of the Miller Group.

2.      The Miller Group and I are in the business of developing, marketing, and servicing computer programs and software for schools.  Our only product is known as InfoSystems 3.

3.      In 1998, The Miller Group entered into a contract with Springfield School District No. 186 for the design, development, and implementation of a system to support the District's faculty and staff for internal uses and to facilitate external access to specified data and information.

4.      Approximately four years were spent on the project with the School District, and during that period of time, the District was billed in excess of $1,000,000.

5.    The list price for InfoSystems 3 is $50,000 plus $15 per student, although we may discount and have discounted the price depending upon certain factors such as the size of the school district purchasing the product, the economic conditions of the district, and the components of the system purchased by the district.

6.    Other than the Springfield School District project, we have entered into contracts for the sale and implementation of InfoSystems 3 to support faculty and staff at six schools, the names, dates, and approximate amounts of the contracts are as follows:

| NAME | START DATE | AMOUNT |
|------|-----------|--------|
| a) Calendonia District 303 | June 2000 | $40,000 |
| b) Oswego District 308 | September 2000 | $120,000 |
| c) Riverton Middle School (not full system) | June 2001 | $3,000 |
| d) Adlai Stevenson High School District 125 | December 2002 | $150,000 (another $100,000 is due upon completion of the contract) |
| e) Marengo School District #165 | April 2003 | $35,000 (all of which is anticipated) |
| f) Kewanee District 229 | April 2003 | $55,000 (all of which is anticipated) |

7.    Before the entry of the Temporary Restraining Order on May 8, 2003, I was actively seeking to market the product known as InfoSystems 3 to the following school districts and reasonably anticipated that I could enter contracts with such school districts in the following amounts:

| NAME | AMOUNT |
|---|---|
| a) Arlington Heights District 214 | $231,500 (contract expected August 2003) |
| b) LaGrange District 102 | $72,000 (contract expected June 2003) |
| c) Kildeer District 96 | $103,670 (contract expected 2003) |
| d) Northbrook/Glenview District 30 | $30,000 (contract expected June 2003) |
| e) St. James School in Arlington Heights | $30,000 (contract expected August 2003) |
| f) Urbana/Champaign District 116 | $185,000 (contract expected August 2003) |
| g) Discussions with State of Illinois for statewide project | several million dollars |

8.    The Miller Group employs six persons.  The names and rates of monthly compensation of said employees are as follows:

| | | |
|---|---|---|
| a. | Jack Miller | $15,000.00 |
| b. | Bill Choate | $4,500.00 |
| c. | Michael David | $2,600.00 |
| d. | Michael Long | $2,000.00 |
| e. | Andrew Schmadeke | $600.00 |
| f. | Matt Sparks | $500.00 |
| g. | Barb Miller | $2,500.00 |

9.    We have the following monthly expenses and costs (all amounts approximate):

| | | | |
|---|---|---|---|
| a. | Rent | | $850.00 |
| b. | Insurance | | |
| | 1. | Health | $1500.00 |
| | 2. | building | $125.00 |
| c. | Phones | | |
| | 1. | T-1 | $1043.00 |
| | 2. | SBC Ameritech | $365.00 |
| | 3. | Ameritech mobile: | $130.00 |
| d. | Computers (software, repairs, etc.) | | $450.00 |
| e. | Utilities | | $325.00 (average) |
| f. | Travel, gasoline and employee meals (chicken day. . .) | | $385.00 |
| g. | Property Tax | | $1500 / $125.00 month |
| h. | Maintenance and garbage | | $165.00 |

| i. | FedEx and postage | $68.00 |
| j. | Office supplies | $58.00 |
| k. | Security | $45.00 |
| l. | Business Debt Service | $7000.00 |

10.    Adam Claypool, a venture capital broker of DesMoines, Iowa, had offered to market InfoSystems 3 nationally and seek $2,000,000 from the venture capital market. We have been informed that the offer has been withdrawn due to the entry of the Temporary Restraining Order.

11.    If the Temporary Restraining Order remains in full force and effect for any extended period or a Preliminary Injunction is entered barring the marketing and distribution of InfoSystems 3 for an indefinite period, the Miller Group will effectively be put out of business.

I DECLARE UNDER PENALTY OF PERJURY OF THE LAWS OF THE UNITED STATES THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.

FURTHER AFFIANT SAYETH NAUGHT.

Dated: May 17 , 2003

_____
John G. Miller

Subscribed and sworn to before me, a notary public, on May 17, 2003.

_____
NOTARY PUBLIC

```
OFFICIAL SEAL
MARTHA L. RYAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-13-2003
```

EXHIBIT

4



# AGREEMENT

Agreement entered into effective the 21st day of December, 1998, by and between **SPRINGFIELD SCHOOL DISTRICT NO. 186**, a body corporate and politic with principal offices at 1900 West Monroe, Springfield, Illinois ("District") and **THE MILLER GROUP**, with offices at 1028 S. Second St., Springfield, Illinois ("Miller"), WITNESSETH:

WHEREAS, District desires to develop a flexible and expandable internet-based information system that can be maintained on an economical basis; and

WHEREAS, Miller has the experience and expertise to design and guide the development of such system on a District-wide basis; and

WHEREAS, District desires to retain the consulting services of Miller to design and develop such system, and Miller is willing to perform such services in accordance with the terms and conditions hereinafter set forth.

NOW THEREFORE, in consideration of the mutual promises and covenants herein provided, the parties hereto agree as follows:

1.    **Term of Agreement.**    This Agreement shall commence effective December 21, 1998, and shall remain in effect until such time as design, development and implementation of the aforesaid flexible and expandable internet-based information system (the "System") has been completed, unless this Agreement shall be earlier terminated pursuant to the provisions of Section 7 hereof.

2.    **Scope of Services.**    Miller shall design and guide the development and implementation of the System to support District's faculty and staff for internal uses and to facilitate external access to specified data and information. Features of the System shall include: use of

existing data structures (Starbase); harvest of legacy data; use of existing computer equipment; ubiquitous access to information without regard to platform; low maintenance costs; flexible and expandable features; low cost development of new software for standards/benchmarks, instructional units, assessments, discipline and tracking of student files; availability of data and information for internal use of District and, in limited circumstances, for external access to specified data and information; District-wide access to software; lower District training costs. The system shall be Year 2000 compliant in all respects, and specifically shall function accurately and without interruption before, during and after January 1, 2000, without change in operation associated with the advent of the new century or other date-related events.

3.     **Independent Contractor**.     Such services hereunder shall be performed by Miller as an independent contractor, and nothing contained in this Agreement shall be construed or implied to create an employment, agency or partnership relationship. Neither party shall have the authority to agree or incur expenses on behalf of the other except as may be expressly authorized in writing. Miller shall not, nor shall any programmer, consultant or designer associated with Miller, be deemed to be an employee of District.

4.     **Compensation**.     On or about the effective date hereof, District shall pay Miller the sum of $10,000.00 to defray Miller's start-up costs for delivery of services hereunder. In addition, Miller shall bill District monthly for services rendered during the immediately prior month, and each bill shall:   identify by initials the person who is rendering services hereunder on behalf of Miller; summarize services rendered; identify the date and time increment for such services. All services shall be billed at a flat rate of $75.00 per hour, and District shall pay Miller for approved services within 30 days of receipt of each monthly statement.

5.     **District Provision of Hardware and Software**.     On or about the effective date hereof, District shall provide Miller with up to two Apple Macintosh G3 computers to act as servers

2

(one for data base application development and serving and the other for web connectivity serving), up to four Apple Macintosh G3 computers for desktop development and up to two Apple Macintosh G3 Power Computers. Upon issuance of a Certificate of Completion of the System by District, each such Apple Macintosh computer shall become the sole property of Miller. In the event this Agreement shall terminate prior to System completion, then Miller shall return each such Apple Macintosh computer to District.

District shall further acquire all necessary software to facilitate Miller's development of System applications hereunder, which software shall remain the sole property of District.

6.    **Termination of Consulting Services.**    District shall review development progress hereunder on a monthly basis, and shall have the right to terminate this Agreement at any time if it is not satisfied with development progress or the pace of System development. In the event District shall elect to terminate this Agreement, it shall give written notice to the Miller Group of its intention to do so at the address set forth above, and shall identify in such notice the reason or reasons for the proposed termination of services. Miller shall then have 30 days from the date of such notice to resolve to District's satisfaction any such identified reasons or problems with performance. If Miller is unable to resolve any such reasons or problems to District's satisfaction, then the Agreement shall terminate 30 days from the notice date and Miller shall be paid for all services rendered through the date of termination.

7.    **Non-Disclosure Agreement.**    Miller acknowledges that all personal information in respect to District students and their families and in respect to District employees and agents shall be considered confidential, and agrees that The Miller Group, its agents, employees and affiliates shall not disclose any such confidential information to third parties without the prior written consent of District.

3

8. **Ownership of Applications and Software Solutions.** Any and all applications and software solutions developed hereunder shall be the property of Miller, provided, however, that Miller shall pay to District Ten Percent (10%) (or such other percentage fee as the parties shall negotiate to their mutual satisfaction on a case-by-case basis) of the service revenues generated by Miller for developing similar applications and software solutions and rendering the same or similar services to any third party. For purposes of this section, "Miller" shall include any affiliated or successor enterprise or business.

9. **Assignment.** This Agreement shall not be assigned by either party without the prior written consent of the other party.

10. **Governing Law.** Any disputes or claims arising under this Agreement shall be governed by the laws of the State of Illinois.

11. **Entire Agreement.** This Agreement represents the entire agreement of the parties and it expressly supersedes all previous written and oral communications between the parties. No amendment, alteration or modification of this Agreement shall be valid unless executed in writing by authorized signatories of both parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate counterpart original by their duly authorized representatives to be effective as of the date and year first above written.

THE MILLER GROUP,

By: _____

SPRINGFIELD SCHOOL DISTRICT
NO. 186,

By: _____

Attest: _____

December 16, 1998\maI\F:\WPWIN60\DIST186\GEN\MILLERGR.AGR

4

EXHIBIT

5

HARVEY B. STEPHENS
EDWARD J. CUNNINGHAM
ROBERT A. STUART, JR.
J. PATRICK JOYCE, JR.
ERIC L. GRENZEBACH
JEFFERY M. WILDAY
WILLIAM F. TRAPP
PAUL BOWN
ALMON A. MANSON, JR.
DWIGHT H. O'KEEFE, III
DONALD R. TRACY
EMMET A. FAIRFIELD
DENISE M. DRUHOT
HARVEY M. STEPHENS
JOHN E. CHILDRESS
—
ELIZABETH W. ANDERSON
JAMES W. BRUNER
LORILEA BUERKETT
FRANK I. CHOI
MICHAEL J. DRAKE
MARILYN MEDICA
CATHERINE A. DeGENOVA-CARTER
RONALD J. GIACONE
—
NORMAN P. JONES
BEN L. DEBOICE
SIMON L. FRIEDMAN
ROBERT M. MAGILL

**BROWN, HAY & STEPHENS**
ATTORNEYS AT LAW
700 MERCANTILE BANK BLDG
205 S. FIFTH STREET
SPRINGFIELD, ILLINOIS 62701

ROBERT A. STUART
1541-1988
ROBERT H. STEPHENS
1965-1998
—
TELEPHONE (217)544-8491
TELECOPIER (217)544-9609

ADDRESS CORRESPONDENCE TO:
P.O. BOX 2459
SPRINGFIELD, ILLINOIS 62705-2459



EXHIBIT
MILLER 6
10-19-04 JB

No. of Pages  6

RE: _____

## FAX TRANSMITTAL

DATE: 12-16-98

TO: Dr Richard Hill

Mike Holmyr        Jack Miller

FAX NUMBER: 525 3005   525 7910   7894437

FROM: Eric Grenzebach

IF YOU HAVE ANY PROBLEMS WITH THIS FAX TRANSMITTAL, PLEASE CONTACT
Camille

(217)544-8491

COMMENTS: _____

_____

_____

_____

*CONFIDENTIALITY NOTICE: This facsimile transmission (and/or the documents accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please immediately notify us by telephone to arrange for the return of the documents.*

Original to follow by mail:

                                    Yes                No

CLIENT: _____ DIST   X

BHS FILE NO: _____

        N                    Y
                             C

# MEMORANDUM

**VIA TELEFAX**
(217) 525-3005
(217) 789-4370

TO:     **Dr. Robert C. Hill, Superintendent**
        **Mike Holinga**
        **Springfield School District No. 186**

        **Jack Miller**

FROM:   Eric L. Grenzebach

DATE:   **December 16, 1998**

RE:     **Miller Group Consulting Agreement (Second Draft)**

Gentlemen:

Enclosed is a second draft of the above-referenced Agreement which incorporates the changes discussed earlier today. Please let me know of any further refinements you may prefer.

ELG:mal
Enclosure

# AGREEMENT

Agreement entered into effective the 21st day of December, 1998, by and between **SPRINGFIELD SCHOOL DISTRICT NO. 186**, a body corporate and politic with principal offices at 1900 West Monroe, Springfield, Illinois ("District") and **THE MILLER GROUP**, with offices at 1028 S. Second St., Springfield, Illinois ("Miller"), WITNESSETH:

WHEREAS, District desires to develop a flexible and expandable internet-based information system that can be maintained on an economical basis; and

WHEREAS, Miller has the experience and expertise to design and guide the development of such system on a District-wide basis; and

WHEREAS, District desires to retain the consulting services of Miller to design and develop such system, and Miller is willing to perform such services in accordance with the terms and conditions hereinafter set forth.

NOW THEREFORE, in consideration of the mutual promises and covenants herein provided, the parties hereto agree as follows:

1.    **Term of Agreement.**    This Agreement shall commence effective December 21, 1998, and shall remain in effect until such time as design, development and implementation of the aforesaid flexible and expandable internet-based information system (the "System") has been completed, unless this Agreement shall be earlier terminated pursuant to the provisions of Section 7 hereof.

2.    **Scope of Services.**    Miller shall design and guide the development and implementation of the System to support District's faculty and staff for internal uses and to facilitate external access to specified data and information. Features of the System shall include: use of

existing data structures (Starbase); harvest of legacy data; use of existing computer equipment; ubiquitous access to information without regard to platform; low maintenance costs; flexible and expandable features; low cost development of new software for standards/benchmarks, instructional units, assessments, discipline and tracking of student files; availability of data and information for internal use of District and, in limited circumstances, for external access to specified data and information; District-wide access to software; lower District training costs. The system shall be Year 2000 compliant in all respects, and specifically shall function accurately and without interruption before, during and after January 1, 2000, without change in operation associated with the advent of the new century or other date-related events.

3.    **Independent Contractor.**    Such services hereunder shall be performed by Miller as an independent contractor, and nothing contained in this Agreement shall be construed or implied to create an employment, agency or partnership relationship. Neither party shall have the authority to agree or incur expenses on behalf of the other except as may be expressly authorized in writing. Miller shall not, nor shall any programmer, consultant or designer associated with Miller, be deemed to be an employee of District.

4.    **Compensation.**    On or about the effective date hereof, District shall pay Miller the sum of $10,000.00 to defray Miller's start-up costs for delivery of services hereunder. In addition, Miller shall bill District monthly for services rendered during the immediately prior month, and each bill shall:    identify by initials the person who is rendering services hereunder on behalf of Miller; summarize services rendered; identify the date and time increment for such services. All services shall be billed at a flat rate of $75.00 per hour, and District shall pay Miller for approved services within 30 days of receipt of each monthly statement.

5.    **District Provision of Hardware and Software.**    On or about the effective date hereof, District shall provide Miller with up to two Apple Macintosh G3 computers to act as servers

2

(one for data base application development and serving and the other for web connectivity serving), up to four Apple Macintosh G3 computers for desktop development and up to two Apple Macintosh G3 Power Computers. Upon issuance of a Certificate of Completion of the System by District, each such Apple Macintosh computer shall become the sole property of Miller. In the event this Agreement shall terminate prior to System completion, then Miller shall return each such Apple Macintosh computer to District.

District shall further acquire all necessary software to facilitate Miller's development of System applications hereunder, which software shall remain the sole property of District.

6. **Termination of Consulting Services.** District shall review development progress hereunder on a monthly basis, and shall have the right to terminate this Agreement at any time if it is not satisfied with development progress or the pace of System development. In the event District shall elect to terminate this Agreement, it shall give written notice to the Miller Group of its intention to do so at the address set forth above, and shall identify in such notice the reason or reasons for the proposed termination of services. Miller shall then have 30 days from the date of such notice to resolve to District's satisfaction any such identified reasons or problems with performance. If Miller is unable to resolve any such reasons or problems to District's satisfaction, then the Agreement shall terminate 30 days from the notice date and Miller shall be paid for all services rendered through the date of termination.

7. **Non-Disclosure Agreement.** Miller acknowledges that all personal information in respect to District students and their families and in respect to District employees and agents shall be considered confidential, and agrees that The Miller Group, its agents, employees and affiliates shall not disclose any such confidential, information to third parties without the prior written consent of District.

3

8.   <u>**Ownership of Applications and Software Solutions.**</u>   Any and all applications and software solutions developed hereunder shall be the property of Miller, provided, however, that Miller shall pay to District Ten Percent (10%)  (or such other percentage fee as the parties shall negotiate to their mutual satisfaction on a case-by-case basis) of the service revenues generated by Miller for developing similar applications and software solutions and rendering the same or similar services to any third party.  For purposes of this section, "Miller" shall include any affiliated or successor enterprise or business.

9.   <u>**Assignment.**</u>   This Agreement shall not be assigned by either party without the prior written consent of the other party.

10.   <u>**Governing Law.**</u>   Any disputes or claims arising under this Agreement shall be governed by the laws of the State of Illinois.

11.   <u>**Entire Agreement.**</u>   This Agreement represents the entire agreement of the parties and it expressly supersedes all previous written and oral communications between the parties.  No amendment, alteration or modification of this Agreement shall be valid unless executed in writing by authorized signatories of both parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate counterpart original by their duly authorized representatives to be effective as of the date and year first above written.

**THE MILLER GROUP,**

By:_____

**SPRINGFIELD SCHOOL DISTRICT NO. 186,**

By:_____

Attest:_____

## AGREEMENT

Agreement entered into effective the _____ day of _____, 199__ by and between **SPRINGFIELD SCHOOL DISTRICT NO. 186,** a body corporate and politic with principal offices at 1900 West Monroe, Springfield, Illinois ("District") and **THE MILLER GROUP,** with offices at _____, Springfield, Illinois ("Miller"), WITNESSETH:

WHEREAS, District desires to develop a flexible and expandable internet-based information system that can be maintained on an economical basis; and

WHEREAS, Miller has the experience and expertise to design and guide the development of such system on a District-wide basis; and

WHEREAS, District desires to retain the consulting services of Miller to design and develop such system, and Miller is willing to perform such services in accordance with the terms and conditions hereinafter set forth.

NOW THEREFORE, in consideration of the mutual promises and covenants herein provided, the parties hereto agree as follows:

1.      **Term of Agreement.**    This Agreement shall commence effective _____, 199__, and shall remain in effect until such time as design, development and implementation of the aforesaid flexible and expandable internet-based information system (the "System") has been completed, unless this Agreement shall be earlier terminated pursuant to the provisions of Section 7 hereof.

2.      **Scope of Services.**    Miller shall design and guide the development and implementation of the System to support District's faculty and staff for internal uses and to facilitate external access to specified data and information. Features of the System shall include: use of

existing data structures (Starbase); harvest of legacy data; use of existing computer equipment; ubiquitous access to information without regard to platform; low maintenance costs; flexible and expandable features; low cost development of new software for standards/benchmarks, instructional units, assessments, discipline and tracking of student files; availability of data and information for internal use of District and, in limited circumstances, for external access to specified data and information; District-wide access to software; lower District training costs. The system shall be Year 2000 compliant in all respects, and specifically shall function accurately and without interruption before, during and after January 1, 2000, without change in operation associated with the advent of the new century or other date-related events.

3. **Independent Contractor**. Such services hereunder shall be performed by Miller as an independent contractor, and nothing contained in this Agreement shall be construed or implied to create an employment, agency or partnership relationship. Neither party shall have the authority to agree or incur expenses on behalf of the other except as may be expressly authorized in writing. Miller shall not, nor shall any programmer, consultant or designer associated with Miller, be deemed to be an employee of District.

4. **Compensation**. Miller shall bill District monthly for services rendered during the immediately prior month hereunder, and each bill shall: identify by initials the person who is rendering services hereunder on behalf of Miller; summarize services rendered; identify the date and time increment for such services. All services shall be billed at a flat rate of $75.00 per hour, and District shall pay Miller for approved services within 30 days of receipt of each monthly statement.

5. **Retainer for Services**. On or about the effective date hereof, District shall pay Miller the sum of $10,000.00 to be applied to services rendered hereunder at a rate not to exceed $1,000.00 per month until the retainer balance has been reduced to 0.

2

6.   **District Provision of Hardware and Software.**    On or about the effective date

hereof, District shall provide Miller with~~°~~ no more than two Apple Macintosh G3 computers to act as servers (one

for data base application development and serving and the other for web connectivity serving), four

Apple Macintosh G3 computers for desktop development and two Apple Macintosh G3 Power

Computers. Upon issuance of a Certificate of Completion of the System by District, each such Apple

Macintosh computer shall become the sole property of Miller. In the event this Agreement shall

terminate prior to System completion, then Miller shall return each such Apple Macintosh computer

to District.

District shall further acquire all necessary software to facilitate Miller's development of System

applications hereunder, which software shall remain the sole property of District.

7.   **Termination of Consulting Services.**    District shall review development progress

hereunder on a monthly basis, and shall have the right to terminate this Agreement at any time if it

is not satisfied with development progress or the pace of System development. In the event District

shall elect to terminate this Agreement, it shall give written notice thereof to the Miller Group at the

address set forth above and shall pay Miller for all services rendered through the effective date of

termination.    *Breach + cure - 30 day.*

8.   **Non-Disclosure Agreement.**    Miller acknowledges that all personal information

in respect to District students and their families and in respect to District employees and agents shall

be considered confidential, and agrees that The Miller Group, its agents, employees and affiliates shall

not disclose any such confidential, information to third parties without the prior written consent of

District.

9.   **Ownership of Applications and Software Solutions.**    Any and all applications and

software solutions developed hereunder shall be the exclusive property of District, provided,

however, that Miller shall have the right of first refusal to market any such applications and/or

3

software solutions or derivatives thereof to any third parties. In such event, Miller and District shall negotiate terms for allocating revenues on a case-by-case basis. District shall have the right to copyright any products, services and applications and secure such servicemarks and/or trademarks as are appropriate to identify and protect its proprietary interests.

10.  **Assignment.**  This Agreement shall not be assigned by either party without the prior written consent of the other party.

11.  **Governing Law.**  Any disputes or claims arising under this Agreement shall be governed by the laws of the State of Illinois.

12.  **Entire Agreement.**  This Agreement represents the entire agreement of the parties and it expressly supersedes all previous written and oral communications between the parties. No amendment, alteration or modification of this Agreement shall be valid unless executed in writing by authorized signatories of both parties.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate counterpart original by their duly authorized representatives to be effective as of the date and year first above written.

**THE MILLER GROUP,**

By:_____

**SPRINGFIELD SCHOOL DISTRICT NO. 186,**

By:_____

Attest:_____

December 15, 1998 wwh\\R\MKENSLI.LI\WPWIN60\DISTR\GEN\MILLERGR.AGR

4

EXHIBIT

6

# PROPOSAL TO PROVIDE

*rough draft*

## INTERNET/INTRANET
## SOFTWARE DEVELOPMENT SERVICES

# SPRINGFIELD SCHOOL DISTRICT # 186

### OCTOBER, 1998

## THE MILLER GROUP
### Springfield, Illinois
### 1-800-HR3-6880
http://www.miller-group.net
e-mail: info@miller-group.net



EXHIBIT

MILLER 11
10-19-04 JB

The Miller Group, an experienced internet, database and web connectivity developer based in Springfield, Illinois, proposes to develop software and connectivity systems for the Springfield School District # 186.

**Scope of Project**

The expressed purpose of the project is to develop a internet-based information system to support the faculty and staff of Springfield School District # 186. The current system faces several liabilities including Year 2000 compliance issues, training difficulties, lack of district-wide access to crucial software, fragmented database development, and insufficient applications that actually meet the needs of teachers and staff.

An internet/intranet based system would allow for more flexible, expandable and appropriate application development, use of legacy data and reduced training costs.

Important issues in this project would be:
- Use existing data structures (Starbase)
- Harvest legacy data
- Use existing computer equipment
- Ubiquitous access, without regard to platform
- Low cost to maintain
- Flexible, expandable system
- Low Cost development of new software for:
  Standards/Benchmarks
  Instructional Units
  Assessments
  Discipline
  Other Student Tracking Files, such as eligibility and Bridge
- Data & information available to any internal request, and some data available, with proper security, to outside requests

**Proposal to Develop**

The Miller Group proposes to develop such an enterprise-wide information system using experienced software and internet developers. We estimate that a significant portion of the information system development can be done within 12 months, using one dedicated FTE (90-100%) database programmer (William M Choat, Phd.), one dedicated FTE (80%) internet connectivity programmer (John G. Miller III, Ted Brown), one (10-20%) management consultant (John G. Miller III) and occasional (10-20%) web site design staff (Jennifer Danzinger, Ted Brown). Occasional outside consultants maybe required, but will not be called upon without prior District # 186 approval.

The database programmer will be developing the Standards, Benchmarks, Instructional Units applications, and will develop other database application

software as required.

The internet connectivity programmer will develop the Student Tracking applications, connectivity with the existing Starbase legacy data, and will tie the new applications that have been developed to existing data. The web designers will develop, with the connectivity programmer, the web interface pages.

### Fees

The Miller Group anticipates that this project will be a long-term association, and proposes to offer reduced hourly rates for Springfield School District # 186.

Our normal rates for database programming are $95.00 to $125.00 per hour. Our rates for web connectivity programming are $75.00 - $100.00 per hour. Our management consultant rate is $125.00 per hour and our web design rate is $50.00 per hour.

Because of school district discounts, it is less expensive for Springfield School District to provide new computer hardware for the Miller Group than it is for The Miller Group to bill the School District a higher rate and buy that same equipment at retail.

The Miller Group proposes, in exchange for necessary computer hardware[1], and ownership of the software solutions produced, we would bill a flat rate of $75.00 per hour for all services.

The Springfield School District would agree to provide all necessary software[2] to develop these applications.

An estimate of total costs for the period of November, 1998 to October, 1999 would be in the range of $150,000.00 to $225,000.00.

### Marketing Agreement

We feel that an internet/intranet based Standards, Benchmarks and Assessment information system is not only appropriate for Springfield School District # 186, but

---

[1] Required hardware to meet the needs of Mac OS X and database development would include:
- two (2) Apple Macintosh G3 computers to act as Servers, one for database application development and serving, one for web connectivity serving
- four (4) Apple Macintosh G3 computers for desktop development
- two (2) Apple Macintosh G3 Powerbook Computers

[2] Software required might include 4th Dimension, WS4D, Tango, Lasso, WebCatalog, WebStar, Net Cloak. Total cost is estimated to be $5,000.00 to $12,000.00

also for other school districts as well. We are comfortable enough with the viability of this solution that we intend to market this solution to other school districts in Illinois and other states.

In exchange for advocacy of this approach by the Springfield School District, ownership of the applications developed, and the District's developmental assistance, The Miller Group proposes that we pay the Springfield School District a fee of 5-10% of revenues attributable to this solution.

### Terms

The Miller Group would request a 12 month or longer contract, and is poised to begin development of this information system and various applications upon receipt. To meet startup costs, a retainer payment of $10,000 would be appreciated.