EXHIBIT D

DISTRICT 186'S MEMORANDUM IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT WITNESS

EXHIBIT D



Computer Forensics News & Discussion

Search

| Home | Login/Register | Forums | Newsletter | Email Group | Papers | Books | Training & Education | Downlc |

Login/Register

Computer forensics, hard drive data recovery, computer data recovery, hard drive recovery, hard disk recovery, data recovery services, computer forensic news and more...Welcome to Forensic Focus!

**Computer Forensic Tools**
Logicube is the manufacturer of hardware data capturing devices

**Computer Investigations**
Electronic discovery, Litigation
Uncover hidden and deleted data.

**Computer Forensic Group**
DC based Computer Forensics
Data Recovery / Network Security

**Computer Forensics**
Advanced Network Forer
Analysis Get a Whitepap
Request a Demo

Ads by C

WAYS TO HELP WITH TSUNAMI RELIEF (GOOGLE)

⊟ **Main Menu**

⊟ **Advert**

🏠 **Home :**
⊕ Homepage
⊕ Contact Us
⊕ Discussion Forums
⊕ Email Group
⊕ Link to Us
⊕ My Account
⊕ Newsletter
⊕ Recommend Us
⊖ Submit News

**Resources :**
⊕ Data Recovery Tips
⊖ Downloads
⊕ Events
⊕ Links
⊕ Papers & Articles
⊕ Recommended Reading
⊕ Training & Education

⊟ **Advertisement**

**Data Forensics - The smoking gun may be a click away**

By PAUL G. LEWIS

Lewis is the founding partner of PG Lewis & Associates of Whitehouse Station, a data forensics firm.

http://www.pglewis.com

Enquiries to Rob Kleeger, rkleeger@pglewis.com

This article is reprinted with permission from the SEPTEMBER 13, 2004 issue of the New Jersey Law Journal. ©2004 ALM Properties, Inc. Further duplication without permission is prohibited. All rights reserved.

The term "data forensics" suggests a high-tech process reserved only for cases centered around proprietary technology. However, data speaks volumes and data forensics can really make it talk. Recent news coverage of the Martha Stewart trial, the resignation of Connecticut Governor John Rowland, and ongoing investigations at Enron and WorldCom have demonstrated the importance of data forensics which is now routinely being used in cases of all types. Whether it is discrimination, breach of contract, theft of intellectual property, or sexual harassment, data forensics will likely play a role. Computer data is now ubiquitous, and data forensics has quickly become a legal necessity.

Searching through digital evidence could recover a hidden document or deleted e-mail message, which may accelerate a favorable settlement or even win the case. Consider the case example of a female executive that sued her former employer for sexual harassment. In her complaint, the plaintiff contended that the CEO of the

**DEFENDANT'S EXHIBIT 19**

Ads by Gooooogle

**Computer Forensics**
Learn the Computer Skills You Need. On-Site, Distance or E-Learning.
www.ComputerTrainingSchools.co

**Data Forensics - PG Lewis**
Investigations civil/criminal cases Analysis and expert testimony
PGLewis.com

**Computer Forensics Expert**
Criminal Defense & Civil Litigation Private, Corporate, Govt., Military
www.forensicdefense.com

**BMP Data Recovery Service**
20 years experience. Free analysis, court certified
bmpcomputers.com/data_recovery

**eForensics, LLC**
Excellence in digital forensics Cell phones to enterprise servers
www.eforensics.com

company had harassed her for a period of eighteen months. She stated that she did not come forward sooner for fear of being labeled an outcast in her community, when she was, in fact, a self-proclaimed loyal wife, mother, and churchgoer. She included a chronology of numerous instances of alleged infringements, so many that she advised that it was actually broken into two documents.

The first included entries for the initial ten-month period, the second for the following eight months. Why two documents? She claimed that the first file became so large that she was afraid of losing the information, thus filed it away and created a second. When the company cross-referenced the two documents to the CEO's calendar, they were startled to find that in every single instance, the scheduling of the CEO and female executive coincided, even though the CEO adamantly denied any wrongdoing when he was in her presence. With such substantial evidence against the CEO, the company decided to initiate settlement talks. Both parties discussed a settlement of $1.5M, but before it was agreed to, the company took the unconventional step of hiring a data forensics firm.

Upon initial analysis of the two chronology documents, it was discovered that both were created on the exact same day, precisely one hour and ten minutes apart from one another, and just thirteen days prior to the former executive being terminated. It was further determined, with 100 percent accuracy, that the CEO's calendar was opened on another window while the two documents were being created—suggesting that the author was able to view the CEO's calendar at the same time each entry was made. To make matters worse for the plaintiff, AOL e-mail records left behind on her computer strongly implicated her in a relationship with a coworker from another state. Internet records "hidden" on her hard drive uncovered frequent airfare purchases to the other state, all being billed to the company.

The company then asked that the computer of the suspected lover and current employee also be analyzed, and it was confirmed that the two were romantically involved. Digital photographs were found in a hidden folder, which showed the plaintiff and her lover on various trips. It was also revealed, based on file creation dates, that when the company sent the plaintiff to a weeklong seminar in Florida, she opted instead to go on a cruise with her significant other. In an e-mail message found on her partner's computer, the plaintiff stated that she knew she was about to be terminated for lack of performance — blamed for the most part on their ongoing affair. She vowed to seek revenge against the CEO if, in fact, he fired her. She later referred to her proposed settlement of the sexual harassment claim as being the same as winning the lottery. In the end, she quickly dropped all charges once the data forensic evidence was disclosed.

When determining whether or not a computer hard drive should be pre- served and analyzed, there are several factors that must be considered. First, there must be the likelihood that the hard drive does, indeed, contain information of value. If an event allegedly occurred in 2002 and a new computer is purchased in 2004, it is highly unlikely that any information of value will be contained on the new computer unless, of course, older data was copied to it. Conversely, if a suspect was known to be in constant contact with another individual, there may be the potential that evidence exists on both parties' hard drives. In the end, cost is the determinant factor since most data forensics firms bill by the hour. The number of drives to be preserved and analyzed usually translates directly into a linear increase in the overall cost.

In the typical case, a hard copy document is analyzed, and the lawyer can only engage in direct or cross examination on the basis of information printed on the page. It is difficult to determine the document's authenticity, original author, or edits made while still a workin- progress. However, documents created in Microsoft Word or other leading word processing systems are likely to contain a plethora of information that is not displayed on the screen and not printed to the printer. A forensic examiner is able to discover a wealth of additional information with regard to the document in what is called "metadata." Metadata is a description or definition of electronic data, or data about data. Often, metadata can only be accessed in certain viewing modes. Metadata can include descriptive 'tags' and information about when a document was created, and what changes have been made on that document.

Ads by Goc

**Compute**
Get a rea
Fight crim
educatior
college-sma

**Free Onl**
In Compu
Investiga
mail, OS,
Security
cc.middlese

**ESS Dat**
St. Louis
nationwic
forensics
www.essda

**Compute
Expert**
Nationwic
Digital E\
Discover
www.mellor

**Compute
Service**
Compute
and Anal
Charlotte
www.insigh

□ Recent

Last 10 F

◎ Forens
**Courses**
Last post b
General D
04, 2005 a

◎ mobile
**pda's**
Last post b
Hardware
at 15:50:4!

◎ Forens
and ATA-

□ User I

For example, it is possible (and probable) that your adversary may be able to read your edits if a data forensics expert is employed. For example, assume a settlement offer is drafted for $100,000. After further discussion, the document is edited to reflect an offer of only $75,000. The document is then forwarded to the other party via e-mail for consideration. If the other party hires a forensic examiner, they are likely able to see that the original offer was for $100,000, but was changed before being set to $75,000. This may prove to be important and valuable knowledge when a counter offer is then returned. We are not suggesting that negotiations not take place electronically or that every legal transaction needs forensic analysis, but you can begin to understand the ramifications of our digital age.

Internet logs also may provide valuable evidence. The rule of thumb is that if information was displayed at some time on a computer screen, it can generally be recovered from that computer. If, for example, a user checks her account balance online, it is likely that information can be retrieved at a later date. This general rule can be applied to data of all types.

The failure to analyze digital data is at best inexcusable, and at worst, ineffective assistance of counsel and malpractice. With the vast majority of documents being created on a computer system, and with so many written communications taking place electronically, attorneys now have both the luxury of easily and quickly validating a controversy and the responsibility of doing so.

Data forensics was all but unknown just a few short years ago, but today is considered a standard and routine practice in legal matters of all types. With so much evidence "hidden" away on computers, data forensics is a stone that cannot be left unturned.

Copyright © by Forensic Focus All Right Reserved.

Published on: 2004-10-08 (368 reads)

[ Go Back ]

Welcom

Nickname
Password
(Register)

Memb
 Latest:
 New Tc
 New Ye
 Overall

People
 Membe
 Visitors
 Total: (

Who I:
 Visitors
01: News
02: Conter
03: News
04: Conter
05: Forum
06: News

Staff (
No staff me

Survey
Which of
do you u:
imaging

 EnCas
 Forens
 SafeB;
 dd
 Ghost
 Other

R

Vc
Con



Click to check if this page is realy HTML 4.01 compliant for speed :)

Privacy Policy All logos and trademarks in this site are property of their respective owner. The comments are property of their posters
Forensic Focus

Page Generation: 0.0828 Seconds and 39 DB Queries in 0.0806 Seconds
Interactive software released under GNU GPL 2, Code Credits

# EXHIBIT E

# DISTRICT 186'S MEMORANDUM IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT WITNESS

EXHIBIT E

**PG Lewis & Associates, LLC**
*Client Activity Log*

**CONFIDENTIAL**

**Client: Century Consulting**
Total Time: 93:45:00 Hours

| Matter | Date | Time In | Time Out | Total Time | PGLA Rep | Item Serial # | Item Name | Action | From Location | Reason For Move | To Location |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CEN-01-01 | 5/16/2003 | 9:00 AM | 9:30 AM | 0:30 | PGL | | | Conference Call | | | |
| CEN-01-01 | 5/16/2003 | 3:00 PM | 5:30 PM | 2:30 | PGL | | | Analyze information received from Century as compared to the information from Miller Group. Continue analysis based on feedback. | | | |
| CEN-01-01 | 5/16/2003 | 5:30 PM | 6:30 PM | 1:00 | PGL | | | Discussion of findings with Craig Hilliard. | | | |
| CEN-01-01 | 5/17/2003 | 10:00 AM | 4:00 PM | 6:00 | DNS | | | Analysis - Code comparison and logic comparison. Intersects tables for similarities | | | |
| CEN-01-01 | 5/17/2003 | 11:30 AM | 2:00 PM | 2:30 | PGL | | | Analysis | | | |
| CEN-01-01 | 5/18/2003 | 9:00 AM | 11:30 AM | 2:30 | DNS | | | Continued analysis Discussions with analyst regarding cross findings. | | | |
| CEN-01-01 | 5/18/2003 | 11:00 AM | 11:30 AM | 0:30 | PGL | | | Discussions with analyst regarding cross findings. | | | |
| CEN-01-01 | 5/18/2003 | 4:00 PM | 6:00 PM | 2:00 | PGL | | | Continued analysis | | | |
| CEN-01-01 | 5/19/2003 | 10:15 AM | 11:00 AM | 0:45 | PGL | | | Conference call of findings with Craig Hilliard. | | | |
| CEN-01-01 | 5/24/2003 | 9:00 AM | 8:15 PM | 11:15 | LIA | | | Analysis, flow chart, findings. | | | |
| CEN-01-01 | 5/25/2003 | 9:00 AM | 10:45 PM | 13:45 | LIA | | | Diagrams, tables, complete initial analysis. | | | |
| CEN-01-01 | 5/26/2003 | 10:00 AM | 7:45 PM | 9:45 | PGL | | | Asses all data, create Findings Report. | | | |
| CEN-01-01 | 5/28/2003 | 5:45 PM | 6:45 PM | 1:00 | PGL | | | Discuss/Explain Findings Report with C. Hilliard | | | |
| CEN-01-01 | 5/29/2003 | 9:15 AM | 9:45 AM | 0:30 | PGL | | | Revise report based on discussions with C. Hilliard | | | |
| CEN-01-01 | 5/29/2003 | 9:45 AM | 10:45 AM | 1:00 | PGL | | | Discuss/Explain Findings Report with C. Hilliard | | | |
| CEN-01-01 | 5/29/2003 | 11:45 AM | 12:30 PM | 0:45 | PGL | | | Revise report based on discussions with C. Hilliard | | | |
| CEN-01-01 | 10/5/2003 | 1:00 PM | 2:00 PM | 1:00 | LAG | | | Prepared 2 Copies (4 CDs) for attorney per request of specific evidence files | | | |
| CEN-01-01 | 10/12/2004 | 2:30 PM | 4:45 PM | 2:15 | PGL | | | Create list of questions for consel to be used at the deposition of the defendants. Discuss with Stark on one CD. E-mailed reference to | | | |
| CEN-01-01 | 10/12/2004 | 5:30 PM | 7:00 PM | 1:30 | LAG | | | Analyze CD's in FTK. Found reference to Stakes on one CD. E-mailed reference to one for client. | | | |
| CEN-01-01 | 10/19/2004 | 7:45 PM | 8:00 PM | 0:15 | PGL | | | Telephone conversation with counsel | | | |
| CEN-01-01 | 10/20/2004 | 7:30 AM | 8:00 AM | 0:30 | PGL | | | Review opposing experts report | | | |
| CEN-01-01 | 10/20/2004 | 10:45 AM | 11:00 AM | 0:15 | PGL | | | Telephone conversation with counsel | | | |
| CEN-01-01 | 11/1/2004 | 10:00 AM | 12:00 PM | 2:00 | PGL | | | Review/Respond to opposing expert's report | | | |
| CEN-01-01 | 11/1/2004 | 11:00 AM | 12:00 PM | 1:00 | LAG | | | Prepared Copies of CD evidence item #s 001 - one for client | | | |
| CEN-01-01 | 11/2/2004 | 1:00 PM | 2:00 PM | 1:00 | PGL | | | Travel time to Stark & Stark for 11/2 meeting | | | |
| CEN-01-01 | 11/2/2004 | 2:00 PM | 4:00 PM | 2:00 | PGL | | | Meeting with Stark & Stark to discuss opposing expert's report and rebuttal strategy | | | |
| CEN-01-01 | 11/2/2004 | 4:00 PM | 5:00 PM | 1:00 | PGL | | | Travel time from Stark & Stark for 11/2 meeting | | | |
| CEN-01-01 | 11/12/2004 | 1:00 PM | 6:00 PM | 5:00 | PGL | | | Assemble outline for rebuttal report. | | | |
| CEN-01-01 | 11/14/2004 | 10:30 AM | 3:30 PM | 5:00 | PGL | | | Author rebuttal report | | | |
| CEN-01-01 | 11/15/2004 | 9:00 AM | 1:00 PM | 4:00 | PGL | | | Author rebuttal report | | | |

DEFENDANT'S EXHIBIT 71

| | | | | | |
|---|---|---|---|---|---|
| CEN-01-01 | 11/15/2004 | 1:45 PM | 6:30 PM | 4:45 | PGL | Author rebuttal report |
| CEN-01-01 | 11/16/2004 | 9:00 AM | 10:45 AM | 1:45 | PGL | Complete report - proof for acuracy. |
| CEN-01-01 | 11/18/2004 | 12:15 PM | 1:15 PM | 1:00 | PGL | Discuss report with Counsel. |
| CEN-01-01 | 11/18/2004 | 2:45 PM | 3:45 PM | 1:00 | PGL | Final edits and submission of report. |
| CEN-01-01 | 1/6/2005 | 3:30 PM | 4:45 PM | 1:15 | PGL | Assemble documents, duplicate documents, Fedex to C. Hillard |
| CEN-01-01 | 1/10/2005 | 5:30 PM | 6:30 PM | 1:00 | PGL | Telephone conversation with counsel |
| | | | | 0:00 | | |
| | | | | 0:00 | | |
| | | | | 0:00 | | |
| | | | | 0:00 | | |
| | | | | 0:00 | | |

# EXHIBIT F

# DISTRICT 186'S MEMORANDUM IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT WITNESS

EXHIBIT F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CENTURY CONSULTANTS, LTD. )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE MILLER GROUP, INC., JOHN G. )<br>MILLER, AND THE SPRINGFIELD PUBLIC )<br>SCHOOL DISTRICT 186 )<br>)<br>Defendant. ) | Case No. 03-CV-3105 |

## DEFENDANTS THE MILLER GROUP, INC., AND JOHN G. MILLER'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants, The Miller Group, Inc. and John G. Miller, by and through their attorneys, Hinshaw & Culbertson, answers Plaintiff's First Set of Interrogatories as follows:

1. Identify all persons who assisted in any way in the development of IS3, including but not limited to those persons who wrote any source code for IS3.

**ANSWER:** The following persons, employed by the Miller Group, 1028 South Second Street, Springfield, Illinois, participated in the development of IS3:
1. John G. Miller, III
2. William M. Choat
3. Michael David
4. Keith Borecki
5. Andrew Schmadeke

The following persons, either currently or formerly employed by Springfield Public Schools, District 186, 1900 West Monroe Street, Springfield, Illinois, participated in the development:
1. Brent Qualls
2. Dave Williams
3. Tom Kerins
4. Mike Holinga
5. Sue Ruff

In addition, numerous teachers, guidance personnel, administrators and secretaries from the Springfield Public School District provided suggestions and requests for IS3.

The following persons employed by the Adlai E. Stevenson High School, District #125 Lake County, 2 Stevenson Drive, Lincolnshire, Illinois, participated in the development of IS3:

1.  Rick Nelson

In addition, numerous teachers, guidance personnel, principals, administrators, and secretaries from the Adlai G. Stevenson High School provided suggestions and requests for IS3.

Finally, Shari Troike Hibbert, Sangamon County Regional Superintendent of Schools Office, Springfield, Illinois, Regional Positive Benefit Intervention System

2. For each person identified in your answer to interrogatory #1, list and describe the specific tasks performed by that person in the development of IS3.

**ANSWER:** John G. Miller, III – Project Architecture, User Interface, Leadership;
William M. Choat, PhD – IS3 source code writing;
Michael David – IS3 source code writing;
Kent Borecki – IS3 source code writing;
Andrew Schmadeke – IS3 source code writing;

Brent Qualls – IS3 source code writing;
David Williams – participated in the development of the finance and transportation
   components, which ultimately were not used in the Miller IS3 system;
Tom Kerins, PhD – provided assessment;
Mike Holinga – project leadership;
Sue Ruff – project leadership;
The other teachers, guidance personnel, principals, administrators, secretaries provided suggestions and information on user interface, component design and required reports.

Rick Nelson – Project leadership, user interface, component design and reports for the Adlai E. Stevenson High School. The other teachers, guidance and personnel, administrators and secretaries provided suggestions and information on user interface, component design and required reports.

Shari Troike Hibbert provided project leadership and information on user interface, component design, and reports for the IS3 discipline component.

3. Did you make any modifications or changes to the source code of IS3 between May 8, 2003, and May 20, 2003?

**ANSWER:** Yes. Numerous changes were made.

2

4. If your answer to interrogatory #3 is "yes," identify and describe each and every modification and/or change made to the source code of IS3, and describe the reasons for making each change to the source code.

**ANSWER:** IS3 is frequently changed to enhance the system, to configure it to a particular customer's needs, or to fix bugs. Pursuant to Fed.R.Civ.P. 33(d), the Miller Group is providing disk(s) addressing all changes to IS3 made since June 18, 2002. The Concurrent Versioning System (CVS), which may be acquired from www.cvshome.org, permits tracking every change to the IS3 software since that time.

5. Have you made any modifications or changes to the source code of IS3 since May 20, 2003?

**ANSWER:** Yes.

6. If your answer to interrogatory #5 is "yes," identify and describe each and every modification and/or change made to the source code of IS3, and describe the reasons for making each change to the source code.

**ANSWER:** See Answer to Interrogatory Number 4.

7. Have you filed, or attempted to file, any copyright registration with the U.S. Copyright Office in connection with IS3? If so, identify the dates on which any such application was made, and attach to your answers to these Interrogatories copies of any such application.

**ANSWER:** No.

8. Have you made any payments to the School District in connection with the sale or licensing of IS3? If so, identify the dates and amounts of any such payments.

**ANSWER:** No payments have been made to date to the Springfield School District. Approximately $15,000 is owed to the School District in connection with the sale of IS3 to the Oswego, Riverton, and Caledonia schools. Payment has not been made because consideration

3

was being given to offsetting that amount against a contemplated support contract with the Springfield School District.

9. Did anyone employed by the School District provide you with any information or documents concerning Century's Star_Base software?

**ANSWER:** Yes.

10. If your answer to interrogatory #9 is "yes," identify the persons who provided you with any information or documents, list or describe the information or documents provided to you, and identify the dates on which any such information or documents were provided.

**ANSWER:** Henry Stuckey provided a listing of Tables in the fall of 1999.

11. Identify any persons who provided information contained in, or otherwise assisted in, the preparation of the "Statement of Losses" submitted by you to the Court on or about May 17, 2003. For each person identified, list or describe the information provided or assistance given in connection with the preparation of that document.

**ANSWER:** Thomas D. Tolsdorf, CPA, formerly of McGladrey & Pullen, LLP, 15 South Old State Capitol Plaza, Suite 200, Springfield, Illinois, and now retired, provided information regarding the business expenses. His residence is located at 2012 Vista Lake Court, Springfield, Illinois. In addition, although my attorney did not provide any information regarding the statement of losses, he assisted in the preparation of the document.

12. Identify any persons who provided information contained in, or otherwise assisted in, the preparation of the following three documents sent by your counsel on May 30, 2003 to Stark & Stark: a) the "Personal Balance Sheet of Jack and Barb Miller as of April 30, 2003; b) the "Year to Date Income Statement" of the Miller Group; and c) the "Income by Customer Summary." For each person identified, list or describe the information provided or assistance given in connection with the preparation of those documents.

4

**ANSWER:** The documents described in this Interrogatory were prepared by Thomas D. Tolsdorf.

13. Identify any accountants who prepared, or assisted in the preparation of, any tax returns for you between 1998 and 2003.

**ANSWER:** Thomas D. Tolsdorf, CPA.

14. Has IS3 been installed at Caledonia District #303? If so, identify what was installed, the date on which it was installed, and the dates, if any, on which any updates or upgrades were installed.

**ANSWER:** A partial system of IS3, vis., the components of student demographics, elementary attendance, lunch count, MEAP testing, and cumulative folders, was installed at Calendonia District #303 in July 2000. There have been occasional enhancements and bug fixes; the last enhancement was in March 2003. .

15. Has IS3 been installed at Oswego District #308? If so, identify what was installed, the date on which it was installed, and the dates, if any, on which any updates or upgrades were installed.

**ANSWER:** A custom version of IS3, stet. as an overlay of the Oswego District's existing Pentamation system, was installed at Oswego District #308 commencing in 2002 and completed in January 2003.

16. Has IS3 been installed at Riverton Middle School? If so, identify what was installed, the date on which it was installed, and the dates, if any, on which any updates or upgrades were installed.

**ANSWER:** This was done in 2002. Only the student discipline component of IS3 was installed at the Riverton Middle School. Since that time, there have been occasional enhancements and bug fixes.

5

17.  Has IS3 been installed at Adlai Stevenson High School? If so, identify what was installed, the date on which it was installed, and the dates, if any, on which any updates or upgrades were installed.

**ANSWER:** Installation of the entire system of IS3 began in December 2002, but is not yet completed at the Adlai E. Stevenson High School. The Project is approximately 65% complete.

18.  Has IS3 been installed at Marengo School District #165? If so, identify what was installed, the date on which it was installed, and the dates, if any, on which any updates or upgrades were installed.

**ANSWER:** The project for the Marengo School District was awarded in April 2003. Installation is approximately 50% complete. The entire IS3 system will be installed upon completion.

19.  Has IS3 been installed at Kewanee School District #229? If so, identify what was installed, the date on which it was installed, and the dates, if any, on which any updates or upgrades were installed.

**ANSWER:** The project for the Kewanee School District was awarded in April 2003. Installation is approximately 50% complete. The entire IS3 system will be installed upon completion.

J. WILLIAM ROBERTS, Lead Counsel
CHARLES R. SCHMADEKE
HINSHAW AND CULBERTSON
400 South Ninth Street
Suite 200
Springfield, IL 62701-1908
217-528-7375

60104587v1 829035

## CERTIFICATION

I Hereby certify that the foregoing statements made by me in the attached answers are true to the best of my knowledge and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
JOHN G. MILLER

Dated: June 13, 2003

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he/she caused a copy of the foregoing DEFENDANTS THE MILLER GROUP, INC., AND JOHN G. MILLER'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES to be served on the following parties of record on June 13, 2003, via Facsimile Transmission and U.S. Mail:

/s/ Charles R. Schmadeke
CHARLES R. SCHMADEKE

Craig Hilliard
Stark & Stark
PO Box 5315
Princeton, NJ 08543-35315

David A. Herman
Giffin, Winning, et al.
One West Old State Capitol Plaza
Myers Bldg., Suite 600
PO Box 617
Springfield, IL 62705

William F. Trapp
Brown, Hay & Stephens
205 S. 5th Street
PO Box 2459
Springfield, IL 62705

60104587v1 829035

# EXHIBIT G

# DISTRICT 186'S MEMORANDUM IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT WITNESS

EXHIBIT G



P.G. Lewis & Associates LLC
DATA FORENSICS

*The perfect blend of technical excellence and legal prowess*

About Us | Services | Case Studies | Press Center | Contact Us



### Theft of Intellectual Property

All case studies are summaries of cases managed by PG Lewis & Associates
(References to personal names and client firm names are fictional)

Tom Jeeves had a successful company with a successful product. His company invested millions into the development of a proprietary software package that tracked financial investments. It was in use by some of the largest brokerage houses world-wide, and Tom was making lots of money.

Tom built his business with two other people, but never offered them equity. The two other people, Frank and Jim were paid handsomely nonetheless.

Frank headed up the National Sales Team, and maintained key relationships with the company's largest accounts. Jim was the actual architect of the software that was so wildly successful. He knew the ins and outs of every line of code. After all, he and his team wrote the entire application from scratch.

One day, Frank resigned from the company and not too long afterward, so did Jim. Both claimed there exit had nothing to do with the other's, but Tom was suspicious. Several months later, Tom discovered that Frank and Jim had created a new company and that they had a sexy new software application - that tracked financial investments. Their program looked better and had more features, but there was nothing Tom could do. Neither Frank nor Jim were under a non-compete agreement.

Enter PG Lewis & Associates. After comparing publicly available copies of both applications, they appeared to be very different - on the surface. PG Lewis used proprietary tools to dig deeper beyond the user interface. Below the colorful screens, we found a complex set of formulas and a large piece of code written in C++. When we compared the date and size of the two pieces of seemingly similar code, they did not match. We next compared the "digital DNA" of the two applications and discovered something startling - both applications were identical. While on the surface they looked very different, we were able to prove sufficient evidence to receive a search warrant demanding Frank and Jim to turn over their source code. Frank and Jim stole the code from Tom, and then cleverly concealed their tracks by adding a new user interface, changing variables, and adding new functionality. PG Lewis proved that almost a million lines of code were exactly the same.

Frank and Jim were forced to abandon their new company and pay a hefty penalty to Tom.

< Back to Case Studies

**Headquarters**
295 Route 22 East
Whitehouse Station, NJ 08889
**Phone:** (888) 907-2500

**CHICAGO - DALLAS - DENVER - DETROIT - MIAMI - NEW YORK - SEATTLE - WHITEHOUSE**

© 2001, 2002, 2003, 2004. PG Lewis & Associates, LLC. All Rights Reserved.
Privacy Policy.

DEFENDANT'S
EXHIBIT
17