STARK & STARK
A PROFESSIONAL CORPORATION
PO BOX 5315
PRINCETON, NJ  08543-5315
(609)896-9060
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CENTURY CONSULTANTS LTD., | |
| Plaintiff, | CIVIL ACTION NO. 03-CV-3105 |
| v. | |
| THE MILLER GROUP, INC., JOHN G. MILLER, and THE SPRINGFIELD PUBLIC SCHOOL DISTRICT 186, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## TO BAR PLAINTIFF'S EXPERT WITNESS

Plaintiff, Century Consultants, Ltd. ("Century") respectfully submits this Memorandum in opposition to the motion of defendant, Springfield Public School District 186 (the "School District") joined by defendants, John Miller, individually and The Miller Group, Inc. (collectively "Miller"), seeking to bar testimony of Century's expert witness, Paul G. Lewis ("Lewis") of PG. Lewis & Associates, in connection with claims against the School District and Miller.  By reference, Century incorporates the declaration of Lewis filed contemporaneously with this brief in opposition.

**PRELIMINARY STATEMENT**

The Court must as a matter of law deny School District's and Miller's[1] motions to bar the testimony of Century's expert, Paul G. Lewis. Those motions must be denied because they are based upon unsupportable facts and inapplicable law. School District and Miller invites the Court's attention to Cummins v. Wile Industries, 93 F.3d 362, 367-368 (7th Cir. 1996). That case is inapplicable because Cummins involved whether or not to admit scientific expert testimony; PG Lewis & Associates' expert testimony relates to technical evidence. As such, while the admissibility of all expert testimony is governed by FRE 702, it should not be subject to the Daubert test, re-articulated in Cummins. In addition, School District's and The Millers' attempt to characterize Lewis' expert report as unsupported speculation is itself unsupported by facts. Defendants' conclusory arguments are simply not based upon the facts. The motion should therefore be denied.

**ARGUMENT**

The School District and Miller make their motion pursuant to FRE 702, which states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The School District relies on Cummins v. Lyle Industries, 93 F.3d at 367-68 for the proposition that expert testimony must be subjected to the scientific method and that the testimony will assist

---

[1] Miller filed a brief incorporating all of the arguments of The School District.

the trier of fact in understanding the evidence in determining the facts at issue. Cummins applies the Daubert standard, which encompasses the test that the School District and Miller relies upon. Daubert, however, states that "Rule 702 also applies to 'technical, or other specialized knowledge.' Our discussion is limited to the scientific context because that is the nature of the expertise offered here." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 fn. 8 (1993). While it may be argued that Cummins applies to technical evidence, it refers to scientific, not technical evidence. 93 F.3d at 367-368. Since this is clearly a technical matter (a comparison of computer codes), the evidence should be judged by the less demanding strictures of FRE 702 instead of Daubert.

Even if this Court were to conclude that Lewis' expert opinions were based upon scientific methods, they would still be admissible. A review of Lewis' expert reports reveals that it is reliable. The opinions set forth in Lewis' expert reports were based upon reliable methodology. See, Clark v. Takata Corp., 192 F.3d 750, 756 (7th Cir. 1999). A plain reading of Defendants' motions reveal an attack on the general conclusions of Lewis as applied to the case rather than Lewis' methodology. This attempt must fail, since the opinions of Lewis were formulated after he carefully considered the evidence. The issues raised in the Defendants' moving papers may be the subject of cross-examination. The Court should not bar Lewis' testimony. See, Daubert, 509 U.S. at 596 (holding, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") Lewis' reports set forth persuasive, reliable grounds on which his decisions are based. As such, Defendants' arguments

3

that Lewis has not proved his conclusions are questions for the jury rather than a trigger of admissibility.

These arguments lead to the inevitable conclusion of the speciousness of the School District's and Miller's motions from the beginning. In one of the first points of Defendants' briefs, they misquote Lewis, marking the beginning a pattern of misrepresentations and exaggerations that continues throughout. Defendants invite the Court's attention to an article authored by Lewis which states "an attorney's failure to obtain a physical inspection of computers allegedly used in cases involving theft of intellectual property 'is at best inexcusable, and at worst, ineffective assistance of counsel and malpractice.'" School District's Memorandum of Law, pg. 2. This quote is inaccurate, as the actual quote from Lewis' article refers to "digital data," not physical computers. Declaration of Lewis at ¶8. In the quoted sentence, Lewis was referring to digital data as opposed to data on paper; not copies of digital data as opposed to data still on the machine on which it was created and modified. Id. Lewis comes to the reasonable conclusion that he could come to an opinion from the data present and that an analysis of the actual machines on which Miller performed the programming was not necessary and not cost-effective. Declaration of Lewis at ¶5; see discussion of modification of code, infra, pg. 6. The School District's twisting of the language is both inaccurate and is illustrative of the misguided tactics that the School District employs.

Second, the School District attempts to argue that Lewis' application of the creation of data set 3 in his report to Miller as faulty. Lewis' report does list data set 3 as having been authored by the Miller Group but having a label that said "Springfield District 186." Defendant's Memorandum of Law, Exhibit A, pg. 3. However, this by no means leads to the

conclusion that the motion should be granted.  Lewis' analysis involving data set 3 involves the comparison of two versions of the Scheduler File.  Id. at 24.  Lewis compared the versions of this file found in data sets 2 and 3 to the Star_Base version.  Id. at 16.  Even if it is established that data set 3 did originate with the School District, the comparison of these three sets of data still lead to the conclusion that Miller used the Star_Base code in a manner that supports Century's case because Data set 2, which without dispute originates from Miller, contains code that is also extremely similar to Star_Base.  See Id. at 20-23.[2]  Lewis was not asked and did not use his expert skills to come to a conclusion regarding the origin of data set 3.  Century should have the opportunity to prove at trial that data set 3 did originate with Miller.  But the question of its origin, while important to the case as a whole (but certainly not decisive because, as shown above, Century has an extremely strong case even if data set 3 did originate with the School District and not with Miller), is not important with regard to this motion.  For these reasons, the court should disregard the School District's arguments regarding data set 3.

The School District also argues that Lewis has not checked to see whether Star_Base contains copyrighted material, as only certain pages of code contain a copyright line or symbol.

---

[2] The Court should note that in a general discussion of Lewis' comparison of similar terms throughout the Star_Base and Miller programs, the School District's expert states that some of these similarities are non-obvious and strikingly similar. Pg. 10.  Additionally, he states that it is unlikely that such similarity is random.  Id.  It is difficult to see why the School District's expert would make such statements if these comparisons of code did not even meet FRE 702 and the Daubert test.  Clearly, the explanation is that they do meet the test, necessitating a denial of this motion.

But it has not supplied any basis for the contention that Lewis should be responsible for checking. To now argue that Lewis did not verify his sources constitutes neither a flaw in his methodology nor a lack of understanding. This issue of copyright notice in the code is neither relevant to Lewis' expert report nor to this motion.

The School District further contends that Lewis did not perform the analysis detailed in his report. That argument is incorrect. Several employees of Lewis' firm, PG Lewis & Associates undisputedly did "legwork" on the case. However, Lewis himself signed the report and will testify under oath as to the veracity of the data and the conclusions. The mere fact that employees did legwork, even significant legwork, regarding a labor-intensive computer programming project does nothing to disqualify Lewis as an expert or support barring him from testifying. And if indeed the School District is correct (which it is not), and only Lewis' former employees can substantiate Lewis' conclusions, it seems that the School District would want Lewis to testify and to expose this alleged fact rather than seek to bar him at this preliminary stage and in this spurious fashion.

The School District also argues that Lewis' conclusion that Miller altered data before turning over much of the analyzed code is "baseless." The same adjective should instead be directed toward the Defendants arguments. The School District falsely states that the only reasons that Lewis presents for his conclusion are the actual modification dates of certain files and the fact that some of them took place early in the morning. A review of his expert reports reveals that Lewis actually bases his conclusion on the fact that only certain sets of data exhibit modification dates close to the date of turnover and that these same sets of data also exhibit signs of mass search and replace procedures that Miller performed in order to disguise the Star_Base

code within its software.  See School District's Memorandum of Law, Ex. A, pg. 36-47.  The School District also argues that it sent additional disks to Lewis that would disprove his conclusion, but this was after his report was already completed and was unaccompanied by any letter or note explaining what the disks were.  Declaration of Lewis at ¶6.  Bolstering these already persuasive factors, as set forth in the Declaration of Lewis at ¶6, is the fact that Defendants' expert's report does not mention these additional disks; one of the disks was blank; and the other disk contained data that was created after the execution of the May 9, 2003, Temporary Restraining Order.  Id.

Finally, the School District attacks Lewis' qualifications, resting on some of the same specious arguments as discussed above, as well as several new ones.  First, the School District states that its code as well as Miller's are in a different computer language than Star_Base.  Second, it argues that Lewis admits in his deposition that Miller did not directly copy code.  The rebuttal to both of these statements are related.  With regard to the first, computer programs can be translated from one language to another while still remaining basically the same; therefore this argument is baseless.  Second, Lewis's deposition states that it is the logic of the program that Miller appropriated.  School District's Memorandum of Law, Exhibit C, pg. 176-177.  Therefore, even if there are not always instances of direct cutting and pasting (of which there are certainly examples), there could still be, and are, copyright infringements.

A scenario set forth on Lewis' website also falls within the sights of the School District as yet another undeserving target.  The School District attacks a case study that is clearly marked as fictional.  School District's Memorandum of Law, Exhibit G.  This marketing strategy is necessary because Lewis' firm does not compromise the privacy of its clients by divulging the

details of actual cases. The School District, once again, sets forth no reason why this advertisement should bar Lewis from testifying. The obvious explanation for this lack is that there is no reason why Lewis should not be allowed to testify pursuant to FRE 702, Daubert or Cummins.

From its arguments as set forth, the School District states that the following conclusions result: a) that Century did not give Lewis sufficient latitude to conduct a proper investigation[3]; b) that he has no evidence that Miller modified or altered data sets[4]; c) that Lewis will not examine evidence that could disprove his theories without his clients' approval[5]; d) that his advertisements are not accurate[6]; and e) that his reliance on his methodology is inexcusable[7]. Far from being inescapable conclusions, these propositions are merely an escape from reality. See Declaration of Lewis at ¶¶4-8. The above arguments puncture any assertion that could have led to those of this list of conclusions. As set forth in footnote 2, supra, the School District's own expert speaks positively of some of Lewis' conclusions. The School District's attempts to explain away these conclusions should not be allowed to prevent Lewis' testimony. The proper place to attempt to explain away his conclusions are at trial, where the School District has every right to make such an attempt, however futile it may be. At this stage, however, the law dictates that the School District should not be able to bar Lewis' testimony before it takes place.

---

[3] See Declaration of Lewis at ¶4, in which Lewis addresses this incorrect assertion.

[4] See Declaration of Lewis at ¶5, in which Lewis addresses this incorrect assertion.

[5] See Declaration of Lewis at ¶6, in which Lewis addresses this incorrect assertion.

[6] See Declaration of Lewis at ¶7, in which Lewis addresses this incorrect assertion.

[7] See Declaration of Lewis at ¶8, in which Lewis addresses this incorrect assertion.

## CONCLUSION

      For the foregoing reasons, Century respectfully requests that the Court deny the School District's motion, which was joined by Miller, to bar Plaintiff's expert witness.

      Respectfully submitted,

**CENTURY CONSULTANTS, LTD.**,
Plaintiff


By:   **/s/ Craig S. Hilliard by Scott I. Unger**
       One of its Attorneys

<u>Lead Counsel</u>
Craig S. Hilliard
Scott I. Unger (Admission Pending)
STARK & STARK
A Professional Corporation
P.O. Box 5315
Princeton, NJ  08543-5315
(603) 896-9060

<u>Local Counsel</u>
David A. Herman
GIFFIN, WINNING, COHEN & BODEWES, P.C.
One West Old State Capitol Plaza
Myers Building - Suite 600
P.O. Box 2117
Springfield, IL  62705
(217) 525-1571

**PROOF OF SERVICE**

      Service of the foregoing document was made by providing a copy thereof, via electronic filing, to:

>Almon A. Manson, Jr.
>Robert M. Shupenus
>Eric L. Grenzebach
>BROWN, HAY & STEPHENS
>205 S. Fifth Street, Suite 700
>P.O. Box 2459
>Springfield, IL  62705
>
>Lance T. Jones
>LAW OFFICES OF LANCE T. JONES
>1100 S. Fifth Street
>Springfield, IL  62703

this 16th day of September, 2005.

                                            **/s/ Craig S. Hilliard by Scott I. Unger**