STARK & STARK
A PROFESSIONAL CORPORATION
PO BOX 5315
PRINCETON, NJ  08543-5315
(609) 896-9060
ATTORNEYS FOR PLAINTIFF

<u>UNITED STATES DISTRICT COURT</u>
<u>CENTRAL DISTRICT OF ILLINOIS</u>

| | |
|---|---|
| CENTURY CONSULTANTS LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THE MILLER GROUP, INC., JOHN G. MILLER, and THE SPRINGFIELD PUBLIC SCHOOL DISTRICT 186,<br><br>Defendants. | CIVIL ACTION NO. 03-CV-3105<br><br>DECLARATION OF PAUL G. LEWIS IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE HIS TESTIMONY |

**PAUL G. LEWIS,** declares under penalty of perjury as follows:

1. My firm, PG Lewis & Associates, was retained by Plaintiff, Century Consultants, LTD, to serve as an expert witness. As such, I am fully familiar with the facts set forth herein through personal knowledge.

2. On or about August 6, 2005, I received a "Memorandum of Law In Support of Motion to Bar Plaintiff's Expert Witness" (hereinafter "the motion").

3. In summary, in the motion, defendant, The Springfield Public School District 186 argues that my expert testimony should be barred because:

    (a) I was not given sufficient latitude to conduct a proper investigation;

(b) I have no evidence that defendant, The Miller Group modified or altered the data sets;

(c) when presented with evidence that could disprove one of my theories, I would not examine such evidence without the approval of Century Consultants, LTD;

(d) my advertisements are not accurate; and

(e) the reliance on the type of methodology I used to arrive at my conclusions was "inexcusable."

4. I strongly disagree with Defendant, Public School District 186's argument that Century Consultants, LTD did not give me sufficient latitude to conduct a proper investigation when I formulated my opinions. My firm and I were given sufficient latitude to conduct a proper investigation and formulate an opinion to a reasonable degree of certainty. The Court Ordered the parties to produce electronic evidence. I was given the electronic evidence that was produced pursuant to the Court's Order. I worked under the assumption that each party followed the Court's Order and produced the actual files that it was Ordered to produce. While physical examination of the computers involved would confirm whether or not the parties produced what the Court Ordered, I did not feel this to be a necessary step, because I assumed that the parties would not violate the Court's Order. Attached as Exhibit "A".

5. I strongly disagree that I did not see any evidence that Miller modified or altered the data sets. On or about May 16, 2003, defendant, The Miller Group produced Compact disk 002. I carefully reviewed Compact disk 002 when I received it. My review of Compact disk 002 revealed that between May 9, 2003, and May 14, 2003, approximately three hundred forty-five (345) files were modified. This critical piece of evidence was of extreme significance, because the Court entered a Temporary Restraining Order on or about May 8, 2003. It is not

possible to know from the data I examined exactly which portions of the code were modified during this time frame. Nevertheless, the detailed time line included in the "Application Analysis" report dated May 29, 2003, indicates that approximately three hundred forty-five (345) files were modified over a six day period (May 9, 2003 through May 14, 2003). That report also concludes that the modifications occurred after, and in violation of, the Court's May 8, 2003, Temporary Restraining Order. Physical analysis of the computer used to make the file modifications during the six day time period (May 9, 2003 to May 14, 2003) may be able to determine the exact portions of source code that were modified. This would require the examiner to locate an earlier version of the file from the active (accessible) or unallocated (inaccessible) drive space. If successful in the data recovery, a file comparison between the older file and the file saved after May 8, 2003, would reveal the portions of the code that were modified. Such an exercise, however, would require physical access to the computers used to make modifications during the time frame in question (May 9, 2003 to May 14, 2003). Once that has been determined, a comprehensive data recovery process would need to be performed in an attempt to locate earlier versions of the approximately three hundred forty-five (345) files that were modified during the six day time frame in question. Assuming the data recovery was successful, a tedious data analysis would result in differences between the earlier version of the file and the version contained on Compact Disk 002. This process is complex, time consuming, and costly. Because I can establish that approximately three hundred forty-five (345) files were modified in violation of the Court's May 8, 2003, Temporary Restraining Order, I did not think it was worth the time, effort or costs to establish the exact modifications made to the files. I believe that it is enough to establish that the violations of that Order occurred between May 9, 2003, and May 14, 2003. I also believe that my reports establish the opinion that approximately

three hundred forty-five (345) files were modified in violation of the Court's May 8, 2003, Temporary Restraining Order.

6.   I strongly disagree with defendant, Springfield Public School District 186's contention that I did not examine evidence that would disprove any of the opinions set forth in the original and rebuttal expert reports. The "Application Analysis" report was submitted on or about May 29, 2003. On or about June 2, 2003, my office received a Compact Disk from The Miller Group. That Compact Disk labeled "IS3 CRT Files" was sent without a cover letter. Because no cover letter was included with the Compact Disk labeled "IS3 CRT Files," I did not know why it was being sent (after the production of the "Application Analysis" report). I inserted this Compact Disk into a computer and have found it to be completely blank and void of any data. Therefore, it cannot be of any significance in this matter. On or about June 19, 2003, my office received a Compact Disk labeled "IS3 CVS Reporting" from defendant, The Miller Group. That Compact Disk labeled "IS3 CVS Reporting" was sent without a cover letter. Because no cover letter was included with the Compact Disk labeled "IS3 CRT Files," I did not know why it was being sent (after the production of the "Application Analysis" report). The Compact Disk contains two folders ("IS3" created on 6-16-2003 and "SCHEDULE" created on 6-14-2003) which in turn contain many subfolders and files. Many of the files have a modification date later than May 8, 2003. This Compact Disk is not addressed in the Defendant's Expert Report authored by Dr. Miller. It is not mentioned and does not appear to have been analyzed by Dr. Miller. Since it was not mentioned in the Defendant's Expert Report, I did not analyze this disk for inclusion in my rebuttal report. I have attached the Defendant's Expert Report as Exhibit "B".

7. I strongly disagree with defendant, The Springfield Public School District 186's contention that my firm's advertisements are inaccurate. PG Lewis & Associates does not disclose client information to any third party. PG Lewis & Associates has been engaged in hundreds of legal matters and has significant experience in data forensics. Each matter is managed using our proprietary methods. These approaches are considered to be a trade secret. PG Lewis & Associates' marketing materials generally discuss the firm's approaches. Those marketing materials do not disclose PG Lewis & Associates' exact methods. The firm's methods allow it to act in an efficient manner and each data forensics assignment or matter is managed in an efficient and cost effective manner. Since no two matters are identical, PG Lewis & Associates' tailors the treatment of the individual matter within its proprietary model. Our marketing materials were created to illustrate the benefits PG Lewis & Associates' services offer. Those materials were developed by providing examples of what data forensics may accomplish in order to allow the consumer to make an informed decision about whether or not to utilize PG Lewis & Associates' professional services. PG Lewis & Associates' marketing materials are true, accurate and set a reasonable expectation for the prospective clients.

8. I also strongly disagree with defendant, The Springfield Public School District 186's contention that the type of methodology I used to come to the opinions set forth in the reports and during the course of my lengthy deposition was "inexcusable." In an article I authored entitled, "Data Forensics: The Smoking Gun May Be A Click Away" (Forensic Focus, October 8, 2004), I wrote "[t]he failure to analyze digital data is at best inexcusable, and at worst, ineffective assistance of counsel and malpractice." This matter almost exclusively dealt with the analysis of digital data. I do not understand defendant's argument that the method used is "inexcusable" in the context of the article I wrote. Again, PG Lewis & Associates did analyze

digital data. The purpose of my article, which is mentioned above and in the defendant's moving papers, was to illustrate the importance of analyzing digital data instead of just reviewing a paper version of the same file. The information and evidence reviewed when PG Lewis & Associates prepared both the "Analysis Report" and the "Rebuttal Report" was the result of detailed forensic analysis of the data produced by the parties at the direction of the Court. The analysis was performed in accordance with the strict internal protocols using proprietary methods that have been utilized for hundreds of legal matters. PG Lewis & Associates' services have been utilized by many global corporations along with the United States Department of Justice.

9. I certify that the all of the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

PAUL G. LEWIS

DATED: September 16, 2005