E-FILED
Wednesday, 01 February, 2006 03:28:19 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CENTURY CONSULTANTS, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2003-CV-3105 |
| ) | |
| THE MILLER GROUP, INC., JOHN G. ) | |
| MILLER, and the SPRINGFIELD PUBLIC ) | |
| SCHOOL DISTRICT NO. 186, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANT SPRINGFIELD PUBLIC SCHOOL DISTRICT 186'S CLOSING ARGUMENT IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT WITNESS

**NOW COMES** Defendant, SPRINGFIELD PUBLIC SCHOOL DISTRICT 186 ("District 186"), through its counsel, Brown, Hay & Stephens, LLP, and for its Closing Argument in Support of its Motion to Bar Plaintiff's Expert Witness states:

At the January 12, 2006 Daubert hearing, Plaintiff Century Consultants, Ltd. ("Century") elicited extensive testimony from its expert, Paul G. Lewis, regarding the conclusions he reached with respect to examination of certain data sets submitted by the parties. In doing so, Century missed the mark, as the Daubert analysis properly focuses on the methods used to reach the opinion rather than the opinion itself. In fact, Lewis' testimony makes it clear that none of the three elements governing admissibility of expert testimony pursuant to FRE 702 are met, and that his entire report is rooted in mere hearsay and assumption.

It is axiomatic that in order to prove copyright infringement through expert testimony, the expert would need to compare the copyrighted material with the allegedly infringing work. Lewis failed to perform a legitimate comparison in this regard. Instead, Lewis compared a few

portions of Century's software with the software of a licensed user of the same product. From there, and based on the false assumption that the licensed user's software was actually the product of a competitor, Lewis concluded that intellectual property had been stolen.

Specifically, Lewis' entire analysis is based on his erroneous belief that Miller's InfoSystems 3 application was installed at District 186, and that an employee of District 186 provided Century with source code from Miller's product obtained from District 186's computers. Lewis compared the source code obtained from District 186 with Century's Star_Base source code and found substantial similarities between them. With that, Century filed suit.

Century and Lewis, however, failed to ask themselves the most fundamental question, namely: "How do we know that the source code we received is source code from a competitor's product?" While this question should be asked in any event, it is even more critical considering that the source code came from one of Century's own customers, who in turn would logically have Century's source code in its computer system regardless. Century and Lewis ignored this question, and instead relied solely on the representations of the District 186 employee who provided Century with the source code. Such reliance is particularly shocking in light of the fact that the employee explicitly told Century that his belief was based on second hand information.[1]

Courts evaluate expert testimony pursuant to the analysis set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Daubert analysis requires courts to first assess the reliability of the expert's testimony, i.e. whether the testimony is based on valid scientific, technical or other specialized knowledge; and must then

---

[1] Memorandum in Support of Motion to Suppress, P.5.

assess the relevancy of the proposed testimony inasmuch as it would tend to assist the trier of fact. <u>Commonwealth Insurance Co. v. Titan Tire Corp.</u>, 2005 WL 3479031 (C.D.Ill. 2005).

District 186 originally engaged Miller for the purpose of developing software that could work in conjunction with District 186's data structures that it already had in place by virtue of its use of Star_Base.[2] As Century alleges in its Amended Complaint, District 186 was entitled to continue its use of Star_Base even after District 186 stopped paying fees to Century, but District 186 would no longer be entitled to support from Century.[3]

In conjunction with employees from District 186, Miller developed a web-based student information system for District 186 that could be used with District 186's previously existing data structures.[4] Miller also developed a separate product—InfoSystems 3—that could be used by other school districts who used data structures other than Star_Base.[5] Simply put, District 186 had no use for InfoSystems 3, as it had already purchased the rights to use its Star_Base data structures. Miller, on the other hand, had no use for the Star_Base data structures because its new product was designed to be used with virtually any data structure, and was written in a completely different programming language.

Lewis, however, did not realize that InfoSystems 3 was never installed at District 186, and instead believed the opposite to be true. If the software examined by Lewis had actually been Miller's InfoSystems 3 product, as Lewis was told, his analysis may have some validity. On the other hand, since District 186 continues to use the portion of the Star_Base application it purchased from Century, it is logical that District 186's software would contain the substantial

---

[2] <u>Id.</u> at PP. 2-3.
[3] Amended Complaint, para. 17.
[4] Memorandum in Support of Motion to Suppress, P.2.
[5] <u>Id.</u>

3

similarities discovered by Lewis. If the portion of software examined by Lewis was actually from the Star_Base element of District 186's system, Lewis' analysis must be disregarded.

It is wholly undisputed that the latter is true. Through its corporate representative Robert Magan, Century admits that it received its information from former District 186 employee David Williams.[6] In a secretly recorded telephone conversation, Williams told Century that the software application installed at District 186 was the same InfoSystems 3 product being sold by Miller.[7] Century acknowledges that Williams was the sole source of its apparent knowledge that Miller's InfoSystems 3 software was installed at District 186.[8]

Century then passed the source code excerpts it received from Williams to Lewis, and told Lewis that the source code came from Miller's InfoSystems 3 application.[9] Lewis compared the source code with the Star_Base source code and, of course, found substantial similarities.

Williams later admitted that his belief that InfoSystems 3 was installed at District 186 was based solely on an assumption, and that he had no basis to believe this fact to be true.[10] Century, however, converted Williams' assumption into a sworn fact through the Declaration of Robert Magan. Lewis relied on this same false information, which obviously led to his conclusion that Star_Base and InfoSystems 3 are strikingly similar. In reality, Lewis simply learned that the portion of Star_Base District 186 continued to use is strikingly similar to Star_Base.

Century's error should have been discovered by Lewis upon his receipt of the complete data sets of Star_Base, InfoSystems 3 and District 186's hybrid application. Lewis' belief that

---

[6] Id. at P.5.
[7] Id.
[8] Id.
[9] Paul G. Lewis deposition, P.31.
[10] Affidavit of David Williams, PP 3-4.

4

InfoSystems 3 was the same as District 186's system caused him to use the data sets from Miller (data sets 2 and 4) interchangeably with District 186's data set (data set 3). In his report, Lewis is unable to identify the data sets from which he compared tables with Star_Base. This fact is critical, for if Lewis compared a table from data set 3 with Star_Base and found similarities, such similarities would be expected. On the other hand, if Lewis compared tables from data set 2 or data set 4 with Star_Base and found similarities, such similarities may give rise to a legitimate cause of action. At the time of his deposition, Lewis could not ascertain which data set he compared in the course of his alleged table-by-table analysis.[11] Instead, Lewis could only offer his assumption.[12] One full year later at the Daubert hearing, however, Lewis claimed to have a recollection—undisclosed in his report—that he compared the tables in data set 2 with those in Star_Base.[13] In the end, Lewis testified that the basis of his opinion—specifically, his comparison of the proper data sets—"may not be clearly documented in the report...."[14] Such analysis cannot be considered reliable.

At his January 12, 2005 deposition, Lewis also revealed that his conclusions are based on the assumption that Williams provided Century with source code from InfoSystems 3 software installed at District 186:

> Q. [referring to the source code sent to Century by Williams] And how are these documents – well, let me back up. Was it source code that you received?
>
> [Lewis] Yes.
>
> Q. Source code for what?

---

[11] Lewis deposition, P.153.
[12] Id.
[13] Transcript of Daubert hearing, P.150-51.
[14] Id. at P.165, L.8-9.

5

> A. Source code for the district, the application installed at District 186.
>
> Q. Of what?
>
> A. What my belief of their student information system.
>
> Q. Were you told what that portion of source code was?
>
> A. I was told that the source code allegedly referenced tables that were created by Century Consultants.
>
> Q. Were you told where the source code was obtained?
>
> A. I believe I was told that the source code was obtained from District 186.
>
> Q. Were you told that the source code was source code of the Info System 3 that was being marketed and sold by The Miller Group?
>
> A. I believe I was told that it was The Miller Group's product that was installed at District 186. [15]

Lewis also admits that the source code reviewed by him is the same source code attached to the declaration of Century employee Robert Magan, which was filed in the Court at the outset of this case.[16]

Magan admits that the same source code was obtained by him from Williams. Further, Magan admits that if Williams erroneously characterized the source code as being from InfoSystems 3 rather than Star_Base, Magan's assumption regarding the origin of the source code would also be flawed.[17]

In his affidavit, Williams admits that he in fact has no idea whether the source code obtained by him came from Star_Base, InfoSystems 3, or somewhere else. Instead, Williams

---

[15] Lewis Deposition, p. 31-33.
[16] *Id.*, p. 38-39
[17] Memorandum in Support of Motion to Suppress, P.5.

6

only knows that the source code came from the software installed at District 186. Given the fact that Williams obtained the source code from District 186's system, combined with the fact that InfoSystems 3 was never installed at District 186, Lewis could not have used the source code supplied by Williams to perform a comparison between InfoSystems 3 and Star_Base.

Lewis also reviewed data sets supplied by the parties after Century filed suit. Even though data set 3 came from District 186's system and data sets 2 and 4 contained The Miller Group's InfoSystems 3 application, Lewis proceeded under the flawed assumption that all three data sets were authored by Miller:

> Q. [Referring to page 3 of Lewis' Application Analysis] Data Sets 2, 3, and 4 appear in your table to be authored by The Miller Group. How do you know that The Miller Group authored Data Sets 2, 3 and 4?
>
> A. Again, there is a general assumption that was made based on either verbal communication or markings on the C.D.s that led me to the reasonable conclusion that The Miller Group was the author of Data Sets 2, 3 and 4.
>
> Q. But you don't know specifically what it is that led you to that conclusion, is that correct?
>
> A. At the time I didn't feel that it was necessary to doubt that these files or these data sets were authored by The Miller Group.
>
> Q. I don't mean to beat a dead horse here but, in fact, it doesn't sound like anyone told you that these people were or these entities were the authors of these data sets. It rather appears, it's just an assumption, which is fine, but I want you to tell me whether this is an assumption or whether someone told you this is true?
>
> A. All of the C.D.s that I received were labeled and I had ownership type of markings on the original C.D.s, handwritten messages or notes on the C.D.s claiming to be the property of an entity. In the case of Century Consultants, they were marked as claiming to be the property of Century Consultants. And in the

7

case of The Miller Group, they claimed to be the property of The Miller Group.[18]

At the Daubert hearing, Lewis continued to rely on the same flawed assumption:

> Q.    ...Before you came to conclusions, did you just assume that IS3 was installed at the Springfield School District?
>
> A.    That is—yes, that's an assumption that was made here, that's something that was told to me.
>
> Q.    So you just believed it?
>
> A.    Well, I mean I have to understand the basic parameters of a case so that I know how to conduct analysis.
>
> Q.    Who told you that the IS3 program was installed at the Springfield School District?
>
> A.    I don't recall.
>
> Q.    Just someone?
>
> A.    In think in a conversation, it could have been Mr. Hilliard. I'm not certain.[19]

Expert testimony based on assumption and hearsay cannot, as a matter of law, assist the trier of fact, as opinions based on assumption are inconsistent with those developed through application of the scientific method. As a result, Lewis' testimony does not pass muster under the Daubert analysis, and his testimony should be barred.

**WHEREFORE**, Defendant SPRINGFIELD PUBLIC SCHOOL DISTRICT 186 respectfully requests the Court bar Century's expert from offering testimony in this cause, and award all other relief the Court deems proper.

---

[18] Id. at pp. 55-56.
[19] Transcript of Daubert hearing, P.135-36.

8

SPRINGFIELD PUBLIC SCHOOL
DISTRICT 186, Defendant,


By: s/ Robert M. Shupenus
      One of Its Attorneys

**BROWN, HAY & STEPHENS, LLP**
Almon A. Monson, Jr.
Registration No. 1756761
Robert M. Shupenus
Registration No. 6238096
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
(217) 544-8491

## PROOF OF SERVICE

I, the undersigned, hereby certify that on February 1, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney of record:

Lance T. Jones
Law Offices of Lance T. Jones
1100 South Fifth Street
Springfield, IL 62703
ltj@warpnet.net

Craig Hilliard
Stark & Stark, P.C.
993 Lenox Drive
Lawrenceville, NJ 08648
chilliard@stark-stark.com

David A. Herman
Giffin, Winning, Cohen & Bodewes, P.C.
One West Old State Capitol Plaza
Myers Building – Suite 600
P.O. Box 2117
Springfield, IL 62705
dherman1@gifwinlaw.com

s/ Robert M. Shupenus

February 1, 2006\alm\i:\amoore\rms\lit\century\district 186 close arguement support of motion to bar expert witness testimony.doc