E-FILED
Monday, 13 February, 2006  04:51:18 PM
Clerk, U.S. District Court, ILCD

STARK & STARK
A PROFESSIONAL CORPORATION
PO BOX 5315
PRINCETON, NJ  08543-5315
(609)896-9060
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CENTURY CONSULTANTS LTD., <br><br> Plaintiff, <br><br> v. <br><br> THE MILLER GROUP, INC., JOHN G. MILLER, and THE SPRINGFIELD PUBLIC SCHOOL DISTRICT 186, <br><br> Defendants. | CIVIL ACTION NO. 03-CV-3105 |

**PLAINTIFF'S CLOSING ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION TO BAR PLAINTIFF'S EXPERT WITNESS**

Plaintiff, Century Consultants, Ltd. ("Century") respectfully submits this Memorandum as its closing argument in opposition to the motion of defendant, Springfield Public School District 186 (the "School District"), joined by defendants, John Miller, individually and The Miller Group, Inc. (collectively "Miller"), seeking to bar testimony of Century's expert witness, Paul G. Lewis ("Mr. Lewis") of PG. Lewis & Associates, in connection with claims against the School District and Miller.

The School District's closing argument[1] is remarkable for what it does not contain: any reference to most of the arguments the School District initially made in its motion to bar Mr. Lewis' opinion testimony. Now that the Court has conducted a full earing,[2] and taken testimony from Mr. Lewis, the School District has apparently abandoned virtually all of its arguments made in its original motion, including:

- That Mr. Lewis should be barred because his firm's website included allegedly misleading references to a "case scenario" which the School District contended was purely fictional[3]

- That Mr. Lewis failed to "physically inspect" the actual computers on which the source code he examined resided and that this failure undermined his entire analysis[4]

---

[1] Miller filed no closing argument with the Court.

[2] References to the transcript pages of the January 12th hearing in this Closing Argument will be abbreviated as "Tr. at _____. References to exhibits "P-___" are to the exhibits submitted in a binder to the Court during the hearing on January 12th. All of the exhibits were admitted into evidence.

[3] The School District actually argued Mr. Lewis was not "qualified" to render expert opinion testimony on this ground, and the Court found at the hearing that Mr. Lewis was indeed qualified. Tr. at 97-98. Even so, Mr. Lewis testified credibly that the "case scenario" was actually drawn from a particular client matter his firm handled. Tr. at 78-80.

[4] Mr. Lewis firmly refuted during his testimony the suggestion of the School District that physical examination of the computers was necessary where, as here, the same data which would have been retrieved from the computers was conveniently provided to the experts in cd-rom format. Tr. at 67-74. So weak is the School District's argument on this point that *its own expert conceded* that physical examination was not necessary when the digital data was available to the experts. *See* P-4, at 47-52.

- That Mr. Lewis did not actually perform most of the analysis contained in his report[5]

- That Mr. Lewis failed to review all of the information pertinent to his analysis, including additional data surrendered by Miller on diskettes in the Fall of 2004[6]

- That Mr. Lewis' conclusions that Miller altered the data based on his analysis of file modification dates is flawed[7]

Indeed, to the extent the School District was challenging Mr. Lewis' qualifications as an expert in the field of data forensics, that challenge was rejected by the Court during the hearing, and Mr. Lewis was qualified by the Court based on the proffer of his qualifications, and after *voir dire* by the School District's counsel. Tr. at 97-98. The only question remaining is whether Mr. Lewis' opinions fail to meet the liberal standard for admissibility under the federal rules.

---

[5] Here again, Mr. Lewis' testimony was detailed and credible, demonstrating that although he had the assistance of his staff in examining the digital data (much as a paralegal would assist an attorney in reviewing and summarizing documents), the expert report was prepared by his hand and with his full involvement. Tr. at 139-145.

[6] The School District's intimations that Mr. Lewis failed to review all of the pertinent data were not only unsupported, the additional cd-roms surrendered by Miller in discovery after Mr. Lewis did his initial report were actually *more* damaging to the defendants when Mr. Lewis reviewed them, for he found still more evidence of Miller's efforts to copy Star_Base, *see* Tr. at 75, 129-132.

[7] Mr. Lewis painstakingly outlined his analysis of the file modification dates and demonstrated the basis for his opinions at the hearing, *see* Tr. at 70-74, 106-110.

Federal Rule of Evidence 702, which governs the School District's motion, provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 113 S. Ct. 2786 (1993), the Supreme Court announced that this liberal standard of admissibility reflected in Fed.R.Evid. 702 replaced the more narrow *Frye* "general acceptance" standard. Accordingly, under *Daubert*, expert testimony is admissible if specialized knowledge of the expert would assist the trier of fact and the witness is qualified as an expert. *See United States v. Bonds,* 12 F.3d 540, 554 (6th Cir. 1993). *See also United States v. Hall,* 93 F.3d 1337, 1342 (7th Cir. 1996). Here, Mr. Lewis has already been qualified as an expert – the only remaining issue is whether his opinions would assist the trier of fact. This Court must assess that potential for assistance by determining whether Mr. Lewis' opinions are relevant and reliable. *See Daubert*, 113 S. Ct. at 2795.

The School District does not make any contention that Mr. Lewis' opinions are not relevant to the issues involved in this litigation. Certainly, expert opinion consisting of an analysis of substantial similarities between software applications is relevant in a lawsuit based on allegations of software infringement. Rather, the School District attacks only the reliability of those opinions. In fact, the only point the School District continues to press on this motion is that Mr. Lewis made an inaccurate "assumption" in performing his analysis. Specifically, the School District argues that Mr. Lewis' entire 74-page report and 21-page rebuttal report are

4

suspect because he analyzed the "wrong" data. The School District's argument is misdirected, both factually and legally.

The School District's contention is that Mr. Lewis simply "accepted" representations of Century and a former School District employee about the origins of certain aspects of the software applications he analyzed, and mistook this paper "data" for the infringing software developed by Miller to be sold as its own product to other school districts (when in fact he was really analyzing only the School District's SIS software). *See* School District's Closing Argument, at 4. The School District is wrong. Mr. Lewis analyzed the distinct sets of digital data provided to him by both Miller and the School District during discovery. After this Court entered a temporary restraining order on May 8, 2003, Century immediately served (on May 9th) written requests for production of documents on both Miller and the School District. The request made to Miller explicitly sought (among other things) the "source code for IS3 in digital format", as well as the executables for IS3. *See* P-7. The term "IS3" was defined in the request for production as "the InfoSystems 3 software product marketed by The Miller Group on its website, www.miller-group.net". Plainly, the request sought the product which Miller was marketing generally to the public, including other school districts (and not simply the work product of Miller contained on the School District's computers). In response to this request, Miller's counsel delivered to David Herman, Century's local counsel, diskettes labeled "IS3 Scheduler Source Code", "IS3 Source Code", and "IS3 Tables", and those diskettes were immediately transmitted by Mr. Herman to Mr. Lewis for his analysis. *See* P-5 (letter of May 15, 2003 and attachments). *See also* P-8 (letter from Mr. Herman to Miller's counsel confirming that Miller would be delivering the digital data of the allegedly infringing IS3 software). Mr. Lewis


also received a further diskette from Miller's counsel (transmitted through Mr. Herman) labeled "IS3 Scheduler Source Code". *See* P-5 (letter of May 21, 2003 and attachments).

Similarly, Century served a separate request for production on the School District, seeking (among other things) the "source code for the School District's current student information software system in digital format, including but not limited to the source code for all database triggers/procedures/packages (copied to a read-only cd)." P-7. In response to this request, the School District's counsel delivered to Mr. Herman a diskette labeled "Springfield District 186", and that diskette was also turned over immediately to Mr. Lewis for his analysis. *See* P-5 (letter of May 21, 2003 and attachments).

Now, despite receiving these diskettes with digital data directly from counsel for Miller and counsel for the School District, in response to explicit requests for the source code and database structures for IS3, *and* separately, for the software resident on the School District's computers, the School District incredibly argues that Mr. Lewis looked at the "wrong" data. The School District is incorrect. Mr. Lewis looked at the correct data - he looked at what defendants provided and represented to be accurate. Indeed, the School District's own expert – Dr. Keith Miller – did *exactly* the same thing. *See* P-4, at 146-151.

Moreover, the School District's entire argument misses the real point. Even if Mr. Lewis' analysis of the School District's data were flawed (and it is not), the School District makes no suggestion that he did not properly compare Star_Base against the IS3 data provided by Miller.[8] The core claim by Century in this lawsuit is not that the School District's system contained

---

[8] The only point they make is that Mr. Lewis was not as detailed as he should have been in his report in delineating the different data sets. *See* School District's Closing Argument, at 5.

software which infringed on Century's rights, but that Miller was given access to Century's software by the School District, and created a substantially copied version of the software which he then marketed and sold to *other school districts* for profit. The focus is on IS3, not on the School District's student information system. And in that connection, Mr. Lewis found substantial identity between Miller's diskettes and Century's software, in literal code, in logic, and in the structure, sequence and organization of the code and the database structures. His report and rebuttal report clearly separate for analysis the two data sets – Miller's and the School District's – which he reviewed and compared independently against Century's Star_Base software. *See, e.g.,* P-1, at 20-23, 48; P-2, at 10, 14. The School District has offered nothing to this Court to shake the reliability of Mr. Lewis' qualifications or the methodology he used to reach the conclusions contained in his report.

    Not only does the School District misread the facts, but it misreads the law as well. The School District mistakenly argues that *Daubert* bars the admission of an expert's testimony merely because the expert may have made a mistake in his analysis and reached erroneous conclusions. To the contrary, *Daubert* and its progeny make clear that the focus of the district court in examining the admissibility of an expert's opinions is on "principles and methodology, not on the conclusions that they generate". *Daubert*, 113 S. Ct. at 2797. *See also United States v. Bonds,* 12 F.3d 540, 563 (6th Cir. 1993)("We hold that questions about the accuracy of results [of an expert's tests] are matters of weight, not admissibility."); *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 744 (3d Cir. 1994)(proponents of experts "do not have to demonstrate to the judge ... that the assessments of their experts are *correct*, they only have to demonstrate ... that their opinions are reliable"). The underlying question in every case is whether the expert's

opinion would assist the trier of fact in evaluating and understanding the evidence. *United States v. Hall,* 93 F.3d 1337, 1342 (7th Cir. 1996)("In evaluating a Rule 104(a) proffer of expert testimony, the ultimate test is whether the testimony would assist the trier of fact in understanding the evidence.").

Here, the School District concedes that Mr. Lewis' methodology of comparing similarities in code and structure between the data sets of the software applications is a correct methodology for a data forensics examiner. *See* School District's Closing Argument, at 1 and 3 ("If the software examined by Lewis had actually been Miller's InfoSystems 3 product, as Lewis was told, his analysis may have some validity"). Instead, the School District simply says that Mr. Lewis made mistakes in his analysis, but as *Daubert* teaches, this is simply not a bar to admission of the opinion testimony. The School District can point out what it believes are "mistakes" in cross-examination at trial. *See Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

There is nothing novel about the methodology used by Mr. Lewis in comparing the software of Century, Miller and the School District. The School District concedes as much. In these circumstances, *Daubert* teaches that opinion testimony is liberally admissible. For example, in *Roback v. V.I.P. Transport, Inc.,* 90 F.3d 1207 (7th Cir. 1996), the defendant (a truck driver who struck another car), brought a third-party action blaming the operation of a faulty cruise control system for the accident. The defendant retained an engineer who used a computerized data acquisition system (known as DATAQ) to gather data on the performance of the system. The expert drove the truck and used the DATAQ to document how the vehicle

8

performed. The third-party defendant argued that the expert's testimony was inadmissible under *Daubert* because the DATAQ methodology had not been subject to peer review. The Court rejected the argument:

> Documenting the malfunction of a vehicle by gathering and compiling data during a test run is hardly a novel methodology. In a basic sense, [the expert] was no different than an eyewitness who may have observed [the] truck malfunction on another occasion. Arguably, however, his testimony would have been more reliable because his observations were quantified. The only thing apparently unique to [the expert's] approach was the DATAQ, in the sense that he put together the hardware and designed the software, and ... only he had ever used them. But [the expert] used standard components to assemble the DATAQ, and he certainly could have been interrogated about the way in which his software worked. His data were subject to examination and independent verification. We see no way in which [the expert's] testimony did not qualify for admission under Rule 702.

*Id.* at 1215-16.

Here, as in *Roback*, examining digital data and comparing the results is hardly a novel methodology. Importantly, the School District did not even attempt to argue that the methodology used by Mr. Lewis was not accepted by others in the field (other than to suggest that Mr. Lewis' failure to "physically examine" the actual computers undermined his analysis). On that point, the School District's argument is belied by the testimony at deposition of their own expert, Dr. Keith Miller, who not only failed to "physically examine" the computers in doing his own report, testified that *in his opinion it was not even necessary* where, as here, the expert is provided with the digital data on disk by the opposing party. *See* P-4, at 47-52. Indeed, Mr. Lewis testified at length on this subject at the hearing, demonstrating that there is no reason to examine the computers when the same digital data which would be retrieved from the computer would be provided on a cd-rom.[9] The School District's failure to call its own expert at the

---

[9] In fact, the School District's motion was misleading, because it misquoted an article authored by Mr. Lewis, arguing that the article states that "an attorney's

hearing to challenge this proffer is telling, but not surprising. In the end, the School District can make no persuasive argument that Mr. Lewis' opinions should not be admissible under Rule 702.[10]

## CONCLUSION

For the foregoing reasons, Century respectfully requests that the Court deny the School District's motion, which was joined by Miller, to bar Plaintiff's expert witness.

> STARK & STARK
> A Professional Corporation
>
> BY:_____s/ Craig S. Hilliard_____
>       CRAIG S. HILLIARD
>       Attorneys for Plaintiff Century Consultants Ltd.

---

failure to obtain a physical inspection of computers allegedly used in cases involving theft of intellectual property 'is at best inexcusable, and at worst, ineffective assistance of counsel and malpractice.'" School District's original Memorandum of Law, pg. 2. This quote is inaccurate, as the actual quote from Lewis' article refers to "digital data," not physical computers. *See* P-6, at p.2. In the quoted sentence, Mr. Lewis was referring to digital data as opposed to data on paper; not copies of digital data as opposed to data still on the machine on which it was created and modified. Id. This was fully explained by Mr. Lewis at the hearing. *See* Tr. at 65-74.

[10] The School District also contends that Mr. Lewis' report and opinion testimony should be barred because it is based on "hearsay". Nothing in the federal rules governing expert testimony, or the case law interpreting those rules, prevents an expert from relying in part on hearsay. In fact, Fed.R.Evid. 703 explicitly provides that the "facts or data need not be admissible in evidence in order for the opinion ... to be admitted." Consequently, that Mr. Lewis relied on hearsay does not render his opinion testimony inadmissible. *See, e.g., United States v. Rollins*, 862 F.2d 1282 (7th Cir. 1988) (admitting FBI agent's expert opinion testimony even though based on hearsay statements of informant). It is, of course, open to the School District's cross-examination at trial, but it does not compel its exclusion altogether.

**PROOF OF SERVICE**

    I, the undersigned, hereby certify that on February 13, 2006, I filed this Closing Argument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Defendants:

Almon A. Manson, Jr., Esq.
Brown, Hay & Stephens
205 S. Fifth Street, Suite 700
P. O. Box 3459
Springfield, IL 62705-2459

Lance T. Jones, Esq.
Law Office of Lance T. Jones
1100 So. Fifth Street
Springfield, IL   62703

                                      s/ Craig S. Hilliard
                                      CRAIG S. HILLIARD