E-FILED
Friday, 26 May, 2006 04:31:52 PM
Clerk, U.S. District Court, ILCD

STARK & STARK
A PROFESSIONAL CORPORATION
PO BOX 5315
PRINCETON, NJ 08543-5315
(609)896-9060
ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| CENTURY CONSULTANTS LTD., <br><br> Plaintiff, <br><br> vs. <br><br> THE MILLER GROUP, INC., JOHN G. MILLER, and THE SPRINGFIELD PUBLIC SCHOOL DISTRICT 186, <br><br> Defendants. | Civil Action No. 2003-CV-3105 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTIONS TO DISMISS FIRST AMENDED COMPLAINT UNDER FED.R.CIV.P.**
**12(b)(1)**

Plaintiff, Century Consultants, Ltd. ("Century") respectfully submits this Memorandum of Law in opposition to the motions of defendants, Springfield Public School District 186 (the "School District") and The Miller Group, Inc. and John G. Miller (the "Miller Defendants") seeking to dismiss the First Amended Complaint in its entirety under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.[1]

---

[1] Only the School District filed a memorandum of law and supporting exhibits. The Miller Defendants simply adopted the School District's arguments.

**PRELIMINARY STATEMENT**

This motion to dismiss, like defendants' recent unsuccessful motion to suppress Century's expert testimony under the *Daubert* framework, is based on a series of flawed statements of law and misstatements of the record. In their *Daubert* motion, defendants disingenuously argued that Century's expert reviewed the "wrong" data, and compared Star_Base code to Star_Base code, when the facts actually demonstrated that Century's expert simply compared Star_Base code to the code turned over in discovery by defendants themselves and represented by defendants to be the infringing IS3 product. Now, despite never before raising a challenge during the three-year history of this lawsuit to the validity or scope of Century's 1995 copyright registration, defendants pull a few selected excerpts from the deposition testimony of Century's Vice-President and contend that Century has now "admitted" that it is suing on an unregistered copyright.

Defendants' arguments once again miss the boat. First, Century *is* suing on its registered copyright in Star_Base. That Century's corporate representative also testified that the company believes that a derivative work – a later version of Star_Base – is *also* infringed does not mean that Century is not basing its infringement claims on the original registration. In fact, Century's expert report and much of the evidence developed in discovery convincingly shows that the infringement claims are based on the *original* registered work. The core of this lawsuit is the contract between the Miller Defendants and the School District signed in December 1998 which *required* the Miller Defendants to use the Star_Base database structures to develop the new IS3 application. The database structures in 1998, with few exceptions, were the same structures which existed in Star_Base when the programs were registered in November 1995. They are the

subject of Century's comprehensive expert report, which catalogs the substantial similarities between the Star_Base and IS3 data structures. Similarly, the scheduler program, which is the most significant program in the Star_Base system, is the same today as it was in November 1995 when Star_Base was registered. Again, this program is the subject of extensive analysis in Century's expert report. For defendants to suggest now that Century is relying solely on an unregistered, later version of Star_Base utterly ignores the history of this lawsuit.

Moreover, by focusing exclusively on the literal elements of the software, defendants sidestep Century's infringement claims based on the "structure, sequence and organization" of the programs. Such claims are firmly entrenched in copyright law, and defendants' failure to address them (even though they are detailed in Century's expert report) is a telling concession of the weakness of their jurisdictional contentions. As Century's expert, Paul Lewis, has opined, the Miller Defendants' IS3 software is a "translated duplicate" of Star_Base in its logic, data flow and schema, even if much of the literal elements are not identical because the programs are written in different languages.

Defendants' arguments must fail under the law for additional reasons. First, their contention that the Star_Base registration in 1995 does not "cover" these claims because the entire source code and database structures were not physically deposited with the Copyright Office misstates the law. The Copyright Office issued regulations permitting only a small portion of code to be deposited to register an entire computer software package containing trade secrets, and Century followed those regulations in making its registration. Indeed, defendants' failure to raise any affirmative defenses at all attacking the validity or scope of the copyright registration is fatal to their attempt now to challenge the registration. Moreover, Century's recent

registration of the later version of Star_Base – the version produced in cd-rom to defendants during pretrial discovery – moots the jurisdictional challenge, for the law is clear that Century can cure any jurisdictional defect under §411 of the Copyright Act at any time prior to final judgment. To the extent that there is any jurisdictional defect at all (and Century disagrees that any exists), Century has cured it by making a further registration. For all of these reasons, defendants' motion to dismiss should be denied.

## BACKGROUND

*A.     Century's Original November 1995 Copyright Registration*

In or around November 1995, Century retained an intellectual property attorney with over 30 years of experience in copyright law to assist the company in perfecting its application for registration of its student administration computer software programs, known as Star_Base, with the U.S. Copyright Office. *See* Watov Decl. ¶¶ 2-4. The initial application for registration was filed by an officer of Century, but the Copyright Office raised questions concerning the claim for protection over the screen displays, and when those questions were raised Century retained counsel to complete the application process. Century's counsel contacted the Copyright Office and wrote a letter to the Examiner assigned to the matter, arguing Century's position that the screen displays were protectable under copyright law. The Examiner eventually agreed, and Century's counsel submitted a revised Form Tx to the Copyright Office. *See* Watov Decl. ¶ 5 and Exhibit "C".

Century's deposit of computer program materials with the Copyright Office consisted of: 1) a complete set of the screen displays for the menu program of the Star_Base package; and 2) the entire source code of the menu program, which consisted of a total of 76 pages of source

code. (The first 10 pages of that part of the deposit are attached to the Watov Declaration as Exhibit "B"). The menu program references every other sub-program in the Star_Base package, including scheduling, grading, attendance, discipline and test scores (to name a few). It is the "gateway" program into all of the other programs. *See* LaMantia Decl. ¶ 3. If Century had printed out all of the source code and data structures for the entire Star_Base software package as it existed in November 1995, it would have filled tens of thousands of pages and many banker's boxes. *Id.* ¶ 4.

At no time did the Examiner ever question the deposit of the Star_Base menu program, or indicate to Century's counsel that the deposit was not sufficient to secure a registration on the entire program. At no time did the Examiner indicate that the Copyright Office wanted additional portions of the source code deposited. Watov Decl. ¶ 7. The Copyright Office issued the registration. *Id.* Exhibit "C".

Century's counsel followed the published procedures of the Copyright Office in completing Century's application for registration of its copyrights in the Star_Base software package. Watov Decl. ¶ 8. The Copyright Office publishes a circular, known as Circular 61, which outlines the Copyright Office's own procedures for making deposits of software in connection with the registration of computer programs. *See* Watov Decl. Exhibit "D".

The registration application for Star_Base was filed on "Form TX" as an "unpublished" work. Watov Decl. ¶ 9. The Copyright Office issued the registration as "Txu 760-019". The "u" in the registration number denotes an "unpublished" work, and the Century application was filed (and issued) in this fashion because Century considered the source code and related program elements for Star_Base to be a trade secret. *Id.* In other words, because the source code and

5

related program elements were not made known generally to the public, the work was "unpublished". In the Form TX, Century did not list any date and nation of "first publication" of the work precisely because it was an unpublished work. *Id.*

Nevertheless, even the deposits made with the Copyright Office of unpublished works are accessible to the public who wish to view the deposits through the Library of Congress. This is one of the reasons Century did not wish to deposit its entire source code and related program elements with the Copyright Office. Watov Decl. ¶ 10. Accordingly, Century utilized the procedures established under Section II of Circular 61 to make the deposit of Star_Base. For computer programs containing trade secret information, the Copyright Office permits the deposit to contain only the "[f]irst 25 and last 25 pages of source code with portions containing trade secrets blocked out" or an equivalent amount of source code sufficient to identify that the work is protectable under copyright law. Watov Decl. ¶ 11.

Century actually deposited more than what was required by the Office. It deposited the entire 76-page menu program (with trade secret portions blocked out). Moreover, a CD-ROM of the entire program was not required to be deposited by the Copyright Office rules for an unpublished work containing trade secrets, so Century did not deposit a copy of the programs in electronic form. *Id.* The manner in which Century completed the application for Star_Base was consistent with the procedures established by the Office and with the published treatises and other materials on the subject. *See* Watov Decl. ¶ 12 and Exhibit "E".

B.   *Century's Recent Filing of An Expedited Registration Application for Version 3*

Century filed an expedited registration application with the U.S. Copyright Office for Star_Base, Version 3, by overnight mail on May 17, 2006. *See* Watov Decl. Exhibits "F" and

"G". The application was granted and the registration issued by the Copyright Office. *Id.* Exhibit "H". This registration covers Star_Base (Version 3), the code, database structures and schema for which were all provided to defendants' counsel on cd-rom back in 2003 during pretrial discovery. *See* LaMantia Decl. ¶ 12. Version 3 is simply an updated version of the Star_Base package registered in 1995.

C.    *Century's Infringement Claims Are Based on the Original Registered Work*

In this lawsuit, Century claims that defendants used the Star_Base database structures and other elements of the programs (such as the scheduler) as the essential building blocks on which a competing package known as IS3 was developed, first for the Springfield School District and then for The Miller Group's sale to other school districts.

The underlying database structures and much of the code for the sub-programs has changed little since Star_Base was registered in 1995. *See* LaMantia Decl. ¶ 6 and Exhibit "A". Between 75% and 90% of the actual source code from the Star_Base package registered in November 1995 still exists in the later Version 3 (which Century has now registered with the Copyright Office). Moreover, the database structures today are substantially the same as they were in November 1995 when Century filed its registration application for Star_Base. Although a few individual fields have been added to some of the tables, and some tables added, Century's tables (which number between 300-400 in the system) are substantially the same today as they were in 1995 when the original registration was filed. *Id.*

Century's expert report demonstrated the substantial similarities between the IS3 scheduler code and schema and the Star_Base scheduler code and schema. *See* LaMantia Decl. ¶ 7. The scheduler code and schema for Star_Base is the same today as it was in November 1995

when Century registered its copyrights. With the exception of minor bug fixes, Century has not changed the scheduler since it was registered in 1995. *Id.* Century received from an employee of the Springfield Public School District 186 a copy of the scheduler which is identified as "IS3" in the file path marker. *See* LaMantia Decl. Exhibit "C" hereto. Although the programming language is different, the program is virtually identical to Century's scheduler in logic, conflict codes and calls to Century's database structures. *See* LaMantia Decl. ¶ 8.

Century's expert also reviewed 4 tables from the database structures of IS3 and Star_Base. *See* LaMantia Decl. ¶ 9. The Star_Base tables compared to IS3 were all created before November 1995, and were part of the Star_Base package registered in November 1995. *Id.*

Moreover, Century's expert also reviewed the scheduler schema for both Star_Base and IS3, and concluded that the logic flow was substantially similar. *See* LaMantia Decl. ¶ 10. The schema and logic flow for the Star_Base scheduler has not changed since the package was registered with the Copyright Office in 1995.

That Century's infringement claims derive from the original registration is also amply supported by the proofs developed in discovery. The documents marked as "Miller-8" and "Miller-9" in depositions are printouts of the Star_Base database structures, and contain detailed lists of the tables and field names. The printouts are dated October 1998. With the exception of a few additions of field names and tables, these printouts show the database structures as they existed in the Star_Base system when Century submitted the application for registration of Star_Base in 1995 with the U.S. Copyright Office. LaMantia Decl. ¶ 11.

The Miller Group's chief architect of the IS3 system, Dr. William Choat, testified that he relied heavily on these same documents to develop the new system. In his own words:

> Q: And Miller 9. Do you recognize those documents?
> A: Oh yeah. Absolutely.
> ....
> Q. Now, is this what you referred to before when you said – we talked about the database structures?
> A. Yeah. Yeah, this is exactly what I was talking about. The columns and – within each table.
> Q. Did you use those documents in any way?
> A. Yeah. That's all I had. I used them like crazy. Yeah. It's kind of like seeing an old friend again. I forgot about these.
> ....
> Q. Do you believe that looking at these documents assisted you in being able to develop the front end application?
> A. That's all I had. Yeah. Oh, this was my – I carried it home at night.

See Hilliard Decl. Exhibit "A", at 59-61. Indeed, the terms of the contract between the Miller Defendants and the School District *required* the Miller Defendants to use the "existing" database structures of Star_Base in developing the new system. See Hilliard Decl. Exhibit "C". These are the same "existing" data structures which were part of Star_Base when it was registered in 1995.

## ARGUMENT

**A.   DEFENDANTS WAIVED ANY CHALLENGE TO THE SCOPE AND VALIDITY OF CENTURY'S COPYRIGHT REGISTRATION BY FAILING TO PLEAD ANY APPLICABLE AFFIRMATIVE DEFENSES ATTACKING THE REGISTRATION**

Defendants' challenges to the validity and scope of Century's copyright registration must be rejected because: 1) they never pled any affirmative defenses to the validity or scope of the registration; and 2) in the case of the Miller Defendants, they *admitted* the validity of the registration (in addition to failing to plead any affirmative defenses to the registration).

In its original Answer to the Complaint, the School District did not plead a single affirmative defense to the infringement claims, even though the challenges they raise now are defenses which should have been so pled. *See, e.g.,*; *Wabash Publishing Company v. Flanagan,* 1990 WL 19977, at *6 (N.D. Ill. 1990)(noting that challenges to validity of copyright registration "would be more properly asserted as affirmative defenses"); *Brooks v. Bates,* 781 F. Supp. 202, 204 (S.D.N.Y. 1991)(addressing affirmative defenses challenging validity and scope of copyright registration including defense of lack of jurisdiction under the Copyright Act). Moreover, the School District waived any defenses to the infringement claims by failing to file *any* responsive pleading to the First Amended Complaint. The First Amended Complaint was filed on April 30, 2004. This amended pleading superceded the original Complaint. *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995).

Instead of answering, the School District filed a motion to dismiss on June 3, 2004. The motion was converted by the Court to a motion for summary judgment on September 17, 2004, and eventually all pending motions for summary judgment were withdrawn on March 23, 2006. Pursuant to Fed.R.Civ.P. 12(a)(4), the School District was obligated to file an Answer to the First Amended Complaint within 10 days of September 17, 2004, when its Rule 12 motion to dismiss was no longer pending. No responsive pleading to the First Amended Complaint has *ever* been filed by the School District. Having failed to plead any affirmative defenses initially, and having failed to raise any defensive pleading at all to the First Amended Complaint, the School District cannot now challenge the validity and scope of Century's copyright registration. *See Pinto Trucking Service, Inc. v. Motor Dispatch, Inc.,* 649 F.2d 530, 534 (7th Cir. 1981)(failure to plead any affirmative defenses to complaint waived any such defenses).

In their Answer to the First Amended Complaint, filed on May 17, 2004, the Miller Defendants *admitted* the validity of the Star_Base copyright registration and *admitted* the allegation that all of the Star_Base source code was registered as an unpublished work. *See* Answer of Miller Defendants, at ¶ 11. The Miller Defendants raised only two affirmative defenses – laches and license – neither of which, of course, challenges in any way the validity or scope of the copyright registration. Accordingly, the Miller Defendants' motion must be denied because they have waived any defenses to the validity or scope of the copyright registration.

B.  **CENTURY'S ORIGINAL 1995 REGISTRATION OF STAR_BASE COVERS THE INFRINGEMENT CLAIMS ADVANCED IN THIS LAWSUIT**

Defendants' primary but misdirected argument is that Century's original registration with the Copyright Office of the Star_Base software does not "cover" its infringement claims merely because the entire source code, database structures and related program elements were not part of the actual deposit with the U.S. Copyright Office. They argue that if a line of source code is not part of the actual deposit, that line of source code cannot be the basis for an infringement claim. Defendants misstate the law, including the Copyright Office's own requirements for the deposit of computer programs.

Century's Star_Base programs in 1995 (as with the later derivative works today) contain hundreds of thousands of lines of source code and other information. Printing the entire programs would fill tens of thousands of pages and many banker's boxes. This is not an uncommon size for computer programs. The Copyright Office has recognized that the massive size of human readable print in computer programs necessitated an efficient way of registering an author's rights in a program, and therefore it published regulations permitting the deposit of only

11

"identifying" portions of programs to satisfy the deposit requirements of the Copyright Act. The Copyright Act expressly allows the Register of Copyrights to "require or permit...the deposit of identifying material instead of copies" for particular types of works. 17 U.S.C. §408(c)(1). The Register has enacted regulations which allow for the deposit of "identifying materials", rather than complete copies, for computer programs. *See* 37 C.F.R. §202.20(c)(2)(vii)(A).[2] These regulations are summarized in Circular 61, which Century followed in making its 1995 registration. *See* Watov Decl. ¶¶ 8-14.

The Copyright Office "has expertise to determine in the first instance whether a filer has complied with the technical requirements for a registration certificate." *Fonar Corp. v. Domenick,* 105 F.3d 99, 105 (2d Cir. 1997). Once the registration is issued, it is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Here, of course, the Copyright Office accepted the deposit made by Century and registered the computer program. Defendants raise no persuasive argument why this Court should question the Copyright Office's primary jurisdiction in accepting the registration. And

---

[2] Defendants' lone citation to *Geoscan, Inc. of Texas v. Geotrace Technologies, Inc.*, 226 F.3d 387 (5th Cir. 2000) does not compel a different conclusion. There, no copyright registration ever issued, because the Copyright Office determined that the application was incomplete. It is unclear from the opinion whether the applicant even qualified to use the alternative procedures allowed under 37 C.F.R. §202.20(c)(2)(vii)(A) and summarized in Section II of Circular 61 (for example, whether the programs themselves contained more than 50 pages of source code). Moreover, the Copyright Office apparently failed to register the application in part because the deposit which was made was of a *later* version of source code and not the original code in existence at the time of the application. For all of these reasons, *Geoscan* is easily distinguishable from this case, and certainly does not stand for the broad proposition urged by defendants that in every case the "entire" source code of a computer program must be deposited to be protected by the copyright.

defendants' failure to plead any appropriate affirmative defenses waives any challenge they can make now to the validity of the certificate, which on its face registers the "computer program" including all screen displays.

Defendants also contend that Century has now admitted that its infringement claims derive solely from an unregistered derivative version of Star_Base. Not true. A careful reading of Century's pleadings and deposition testimony indicates clearly that Century claims that defendants took and used core structural elements of the original work which was registered, including the scheduler code, database structures and schema. *See* LaMantia Deposition Transcript, at pp. 48-49 (attached to defendants' moving papers). *See also* LaMantia Decl. ¶¶ 6-11; Hilliard Decl. Exhibits "A", "B" and "C". Defendants admittedly used core elements of Star_Base which were part of the software registered in 1995.

Defendants' citation of several cases for the proposition that a copyright owner cannot sue on an unregistered derivative work misses the mark. In *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,* 275 F. Supp. 2d 543 (D.N.J. 2003) – one of the cases cited by defendants – the district court actually noted the well-established rule that a copyright owner can still pursue claims on an underlying registered work, even if a later derivative work is not registered. Any original content solely in the derivative work cannot be the subject of an infringement claim until the derivative work is registered, but the copyright owner does not lose its rights merely because it releases later, updated versions of a previously registered work.

In *Video Pipeline,* Disney sought to advance infringement counterclaims on unregistered "trailers" which were based on registered film works. The plaintiff argued that Disney could not

sue on unregistered derivative works, but the district court actually rejected that argument, holding in language fully applicable here:

> Registration of the underlying copyrighted work is sufficient to sustain a copyright infringement action pertaining to the derivative works, in this case, the in-store trailers....."By definition, a derivative work contains elements of underlying works that themselves may be subject to copyright; the copyright in the derivative work extends only to those elements *original to the derivative work*. It follows that where the preexisting work is registered, but the derivative work is not, **a suit for infringement may be maintained as to any preexisting work**, but not as to any element original to the unregistered derivative work."

*Id.* at 556 (quoting *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.,* 2002 WL 1455180, at *6 (E.D.N.Y. 2002)(emphasis in original and added).[3]

Here, as in *Video Pipeline*, all of the core elements of Century's infringement claims are indisputably based on code, database structures and schema which existed in the original, underlying registered work. Accordingly, defendants' contention that Century's suit is based only on an unregistered derivative work is simply not correct.

**C.    DEFENDANTS' ARGUMENTS COMPLETELY IGNORE CENTURY'S INFRINGEMENT CLAIMS BASED ON THE NON-LITERAL ELEMENTS OF THE PROGRAMS**

Defendants' arguments are fatally flawed for another important reason. Defendants mistakenly assume that unless Century can demonstrate literal copying of actual source code, it has no infringement claim at all based on the 1995 registration. Defendants are incorrect. Copyright protection extends to non-literal elements of a computer program, such as the

---

[3] To draw a simply analogy, the author of a registered textbook on the Presidents of the United States does not lose his copyrights in the original textbook merely because he releases a later unregistered edition with an additional chapter on a newly-elected President. He may not sue for infringement of the new chapter until he registers the derivative work, but he can always sue for infringement of the underlying registered work.

14

structure, sequence and organization of the programs. This protection is analogous to protection extended to other literary works. *See, e.g., Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 55 (2d Cir. 1936)(holding that "a play may be pirated without using the dialogue"). Limiting copyright literally to the text – or, in this case, to the source code – would permit "plagiarist[s to]...escape by immaterial variations." *Nichols v. Universal Pictures Co.,* 45 F.2d 119, 121 (2d Cir. 1930). Accordingly, in the realm of copyright protection for computer software, federal courts uniformly recognize that the "non-literal similarity of computer programs can constitute copyright infringement." *Softel, Inc. v. Dragon Med. & Sci. Communs.,* 118 F.3d 955, 963 (2d Cir. 1997). This is alternatively referred to as protection of the "structure, sequence and organization" of computer programs. *Qad, Inc. v. ALN Associates, Inc.,* 770 F. Supp. 1261, 1265 (N.D. Ill. 1991)(recognizing that copyright protection of computer programs "may extend beyond the programs' literal code to their structure, sequence, and orgnaization"). Therefore, the relationships between software modules and data structures can be protectable. *See, e.g., Harbor Software, Inc. v. Applied Systems, Inc.,* 925 F. Supp. 1042 (S.D.N.Y. 1996). Even purely structural elements like data flow and control flow within the programs can be protected under the copyright. *Id.*

  Here, Century clearly pled infringement claims based not only on literal copying of elements of the programs, but on the replication of the structure, sequence and organization of the programs. *See* First Amended Complaint, at ¶30. Century's expert made a detailed examination of the non-literal similarities between the programs, and concluded that the logic flow and schema for the two systems are substantially identical. *See* LaMantia Decl., Exhibit "A", at 24-28, 33, 51-53. These non-literal elements of the Star_Base structure have not changed

since the programs were registered in November 1995. *See* LaMantia Decl. ¶ 10. Accordingly, defendants are just wrong in contending that the original Star_Base registration does not cover the infringement claims in this lawsuit.

D. **ANY DEFECT IN THE SCOPE OF THE STAR_BASE REGISTRATION HAS BEEN CURED BY CENTURY'S REGISTRATION OF THE LATER VERSION OF STAR_BASE PRODUCED TO DEFENDANTS IN PRETRIAL DISCOVERY**

Century filed an application with the Copyright Office for expedited registration of the later version of Star_Base, Version 3 (or what is also referred to as Version 6i in defendants' motion papers). The law is clear that any defects in the Court's subject matter jurisdiction over the infringement claim can be cured by this subsequent registration of the derivative work. In *Positive Black Talk Inc. v. Cash Money Records Inc.,* 394 F.3d 357 (5th Cir. 2004), the Fifth Circuit faced the same situation, and held that a jurisdictional defect under 17 U.S.C. § 411(a) can be cured by an appropriate registration after the lawsuit is filed and (if the Court deems it necessary) the filing of a supplemental pleading. *Id.* at 365-66 (citing several cases including cases within the Seventh Circuit). As the Fifth Circuit explained, the "notion that the supplemental pleading cures the technical defect, notwithstanding the clear language of §411, is consistent with the principle that technicalities should not prevent litigants from having their cases heard on the merits." *Id.* at 366. Indeed, the Fifth Circuit noted, citing *Mathews v. Diaz,* 426 U.S. 67 (1976), that even the failure to amend the complaint is no bar to finding a jurisdictional defect cured. The Fifth Circuit concluded that as long as the jurisdictional defect is cured before final judgment, the infringement claims are not barred. *See also Joseph J. Legat Architects, P.C. v. United States Development Corporation*, 601 F. Supp. 673, 674-75 (N.D. Ill. 1985)(finding no defect in jurisdiction where registration issued while suit was still pending).

Although this holding should make it unnecessary for Century to file a supplemental pleading, Century is prepared to file a supplemental pleading to specifically allege the issued registration of Version 3, and will do so if the Court so directs. But in any event, this registration now moots defendants' contention that the Court lacks jurisdiction over any claims of infringement on an unregistered derivative work.

E.  **THIS COURT IN ALL EVENTS HAS DIVERSITY JURISDICTION OVER THE REMAINING COUNTS OF THE AMENDED COMPLAINT**

Defendants contend that if the Court were to dismiss the copyright infringement claims on jurisdictional grounds, it should also decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 and dismiss the remaining state law claims. Although Century did not explicitly plead diversity as a separate jurisdictional basis in the Amended Complaint, this Court has diversity jurisdiction even absent the federal copyright claims.

Rule 8(a)(1) of the Federal Rules of Civil Procedure requires only that a plaintiff plead a "short and plain statement" of the grounds of the Court's jurisdiction, and the Seventh Circuit, echoing the decisions of sister circuits, has held that "it is not essential that a complainant set forth the statutory basis for the court's jurisdiction in order for the court to assume jurisdiction, if the facts alleged provide a basis for the assumption of jurisdiction." *Rohler v. TRW, Inc.,* 576 F.2d 1260, 1264 (7th Cir. 1978). *See also Continental Cas. Co. v. Canadian Univ. Ins. Co.,* 605 F.2d 1340 (5th Cir. 1979)(although complaint did not contain short and plain statement of jurisdictional grounds, it did allege the citizenship of the parties so that diversity jurisdiction was evident from the face of the complaint); *New York State Waterways Ass'n, Inc. v. Diamond,* 469 F.2d 419 (2d Cir. 1972)(court properly read complaint liberally and found federal question

jurisdiction even though only admiralty jurisdiction was alleged). Here, Century's Amended Complaint on its face demonstrates the existence of diversity. The First Amended Complaint alleges that Century is a New Jersey citizen, and that all defendants are citizens of Illinois.[4] To the extent this Court requires a further explicit statement to demonstrate the existence of diversity jurisdiction, Century would seek leave to plead it by way of a supplemental pleading. *Salzstein v. Bekins Van Lines,* 747 F. Supp. 1281 (N.D. Ill. 1990)(court directed plaintiff to file amended complaint setting forth jurisdiction clearly where complaint suggested both diversity and federal question jurisdiction).

## CONCLUSION

For all of the foregoing reasons, Century respectfully requests that the Court deny the defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(1).

>Respectfully submitted,
>CENTURY CONSULTANTS, LTD.,
>Plaintiff
>
>By:___s/Craig S. Hilliard____
>         One of its Attorneys

Lead Counsel
Craig S. Hilliard
STARK & STARK
A Professional Corporation
P.O. Box 5315
Princeton, NJ 08543-5315
(609) 896-9060

---

[4] There is no question that the amount in controversy exceeds $75,000. The Miller Defendants' own "Statement of Losses" filed with the Court (docket entry 28) indicates that they generated over $1 million in revenues from the sale of the infringing IS3.

<u>Local Counsel</u>
David A. Herman
GIFFIN, WINNING, COHEN & BODEWES, P.C.
One West Old State Capitol Plaza
Myers Building - Suite 600
P.O. Box 2117
Springfield, IL   62705
(217) 525-1571

## TYPE/VOLUME CERTIFICATION

 Pursuant to Local Rule 7.1(B)(2), I certify that this Memorandum, though over 15 pages in length, complies with the type-volume limitations of the local rules and does not exceed 7,000 words or 45,000 characters.

          s/ Craig S. Hilliard
          CRAIG S. HILLIARD

## CERTIFICATE OF SERVICE

 I, the undersigned, hereby certify that on May 26, 2006, I filed this Memorandum and the accompanying Declarations with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Defendants:

Almon A. Manson, Jr., Esq.
Brown, Hay & Stephens
205 S. Fifth Street, Suite 700
P. O. Box 3459
Springfield, IL 62705-2459

Lance T. Jones, Esq.
Law Office of Lance T. Jones
1100 So. Fifth Street
Springfield, IL   62703

          s/ Craig S. Hilliard
          CRAIG S. HILLIARD