E-FILED
Tuesday, 16 January, 2007  04:08:39 PM
Clerk, U.S. District Court, ILCD

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 25

# Springfield Public School District 186

## CONSULTING AGREEMENT

Agreement entered into ___August 17, 1998_____ [date], by and between **SPRINGFIELD SCHOOL DISTRICT NO. 186** ("District"), and _Miller Group Consulting Services_ ("Consultant") whereby the parties hereto agree as follows:

1. **Term of Agreement.** This Agreement shall commence effective _September 1, 1998_ [date] and shall end on _September 1, 1999_ [date] unless earlier terminated as hereinafter provided. The initial term may be extended by written addendum of the parties. All consultants shall be approved in advance by the Superintendent or his designee. Fees that exceed $500. per day or a maximum of $2,000 must have prior approval of the Board of Education.

2. **Consultant Services..** During the initial or any extended term hereof, Consultant shall provide the following services on behalf of District at time and locations approved by District:

   _Consultation on web site development and web server software implementation._

   _____

   _____

   _____

3. **Compensation.** District shall compensate Consultant for services hereunder at the rate of $_50.00_ per _hour_ time. Consultant must complete the Contractual Service Statement in order for payment to be made. District shall pay within 30 days of receipt of all completed paperwork unless otherwise agreed to by the parties. If travel and miscellaneous expenses are to be included, please indicate what expenses are agreed to by both parties:

   _____

4. **Non-assignability.** This Agreement is for personal services to be performed by Consultant, and shall not be assignable by Consultant without the prior written consent of District.

5. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and supersedes all prior oral or written proposals, agreements or understandings in connection with services rendered or to be rendered by Consultant to District.

### [O V E R]



DEFENDANT'S
EXHIBIT
37

6. <u>Governing Law</u>.   This Agreement shall be construed and enforced in accordance with the laws of the State of Illinois.

7. <u>Compliance with Policies and Administrative Rules</u>.   In the performance of consulting services hereunder, Consultant shall conform to the policies and administrative rules of District. Failure to do so shall constitute grounds for immediate termination of this Agreement.

8. <u>Early Termination</u>.   This Agreement may be terminated by either party, with or without cause, by giving the other party at least 60 days advance written notice thereof.

9. <u>Status of Consultant</u>.   In rendering services hereunder, Consultant shall be acting as an independent contractor and not as an employee of District. As an independent contractor, Consultant shall have no authority, express or implied, to commit or obligate District in any manner whatsoever, and nothing contained in this Agreement shall be construed or implied to create a partnership, agency or joint venture relationship between Consultant and District. Consultant shall be liable for the payment of all taxes applicable to any compensation paid to Consultant by District hereunder, and it is expressly understood that District shall not be required to withhold or pay any federal, state or local income, FICA, unemployment or workers' compensation taxes relative to such compensation.

IN WITNESS WHEREOF, the parties have executed this Agreement in duplicate on the date and year first above written.

SPRINGFIELD SCHOOL DISTRICT NO. 186

By: _Robert C. Hill_
Superintendent (Or His Designee)

Attest: _Mike Holinga_

CONSULTANT

_John Mitchell_
Name

Soc. Sec. No. _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_
Or
FEIN Number _____

District No. 186 Contact Person:

Mike Holinga
Name

1900 West Monroe
Office Address

525-3015                 525-7910
Phone Number             Fax Number

holinga@springfield.k12.il.us
E-Mail Address

6/98

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 26

**The Miller Group**
Contract for Consulting Services

This Agreement is made this 1st day of September, 1998, between Springfield School District (#186) ("Client"), having its principal place of business at Springfield, Illinois and The Miller Group ("Group"), having its principal place of business at 1028 South Second St., Springfield, Illinois 62704

In consideration of Client retaining The Miller Group for consultation on web site development and web server software implementation for Client, it is agreed as follows:

**1. Compensation and Term**

Client hereby retains The Miller Group and The Miller Group hereby agrees to perform the following services: Consulting services of The Miller Group as required by Client, through August 31, 1999. The Miller Group will, at various times, perform services at Client's headquarters, at other Client facilities, or at The Miller Group facilities, as directed by Client. The Miller Group will perform the services at various times and for various durations as directed by Client.

The following fees shall apply:

$50.00 per hour for 120 hours of consulting annually, payable 1/12 per month.

Reasonable and necessary business and travel expenses actually incurred by The Miller Group shall be reimbursed by Client upon submission of expense reports with back-up documentation, except that no travel expenses shall apply for assignments within a 25 mile radius of downtown Springfield, Illinois. All such expenses in excess of $25 and all travel plans must be approved in advance by Client.

The Miller Group shall provide detailed invoices and shall maintain, and provide, upon request, backup documentation for a period of one year from the date of the respective invoices. Client shall make full payment for services within thirty days of invoice. If The Miller Group brings a legal action to collect any sums due under this Agreement, it shall be entitled to collect, in addition to all damages, its costs of collection, including reasonable attorney's fees.

This Agreement shall commence on the date stated above, and shall remain in effect until all obligations under this Agreement have been properly completed. Either party to this Agreement may terminate this Agreement with or without cause by providing at least seven days written notice to the other party.

**2. Warranties by The Miller Group**

The Miller Group represents and warrants to Client that it has the experience and



DEFENDANT'S EXHIBIT
38
PENGAD-Bayonne, N. J.

ability to perform the services required by this Agreement; that it will perform said services in a professional, competent and timely manner; that it has the power to enter into and perform this Agreement; and that its performance of this Agreement shall not infringe upon or violate the rights of any third party or violate any federal, state and municipal laws. However, Client will not determine or exercise control as to general procedures or formats necessary to have these services meet Client's satisfaction.

## 3. Insurance

The Miller Group shall obtain and maintain during the term of this Agreement insurance, including worker's compensation, motor vehicle, and comprehensive general liability.

## 4. Independent Contractor

The Miller Group acknowledges that the services rendered under this Agreement shall be solely as an independent contractor. The Miller Group shall not enter into any contract or commitment on behalf of Client. The Miller Group further acknowledges that it is not considered an affiliate or subsidiary of Client, and is not entitled to any Client employment rights or benefits. It is expressly understood that this undertaking is not a joint venture.

## 5. Confidentiality

The Miller Group recognizes and acknowledges that this Agreement creates a confidential relationship between The Miller Group and Client and that information concerning Client's business affairs, customers, vendors, finances, properties, methods of operation, computer programs, and documentation, and other such information, whether written, oral, or otherwise, is confidential in nature. All such information concerning Client is hereinafter collectively referred to as "Confidential Information."

## 6. Non-Disclosure

The Miller Group agrees that, except as directed by Client, it will not at any time during or after the term of this Agreement disclose any Confidential Information to any person whatsoever and that upon the termination of this Agreement it will turn over to Client all documents, papers, and other matter in its possession or control that relate to Client. The Miller Group further agrees to bind its employees and subcontractors to the terms and conditions of this Agreement.

## 7. Grant

The Miller Group agrees that its work product produced in the performance of this Agreement shall remain the exclusive property of Client, and that it will not sell,

transfer, publish, disclose or otherwise make the work product available to third parties without Client's prior written consent. Any rights granted to The Miller Group under this Agreement shall not affect Client's exclusive ownership of the work product.

### 8. Office Rules

The Miller Group shall comply with all office rules and regulations, including security requirements, when on Client premises.

### 9. Conflict of Interest

The Miller Group shall not offer or give a gratuity of any type to any Client employee or agent.

### 10. Governing Law

This Agreement shall be construed and enforced in accordance with the laws of the State of Anystate.

### 11. Entire Agreement and Notice

This Agreement contains the entire understanding of the parties and may not be amended without the specific written consent of both parties. Any notice given under this Agreement shall be sufficient if it is in writing and if sent by certified or registered mail.

IN WITNESS WHEREOF,

Client and The Miller Group have duly executed this Agreement as of the day and year first above written.

THE MILLER GROUP

By _[signature]_

Name: JOHN G. MILLER

Title: Owner

Date: 8/13/98

CLIENT COMPANY, INC.

By: _[signature]_

Name: ROBERT C. HILL

Title: SUPT. OF SCHOOLS

Date: 8/24/98

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 27**

18.    Century thereafter learned that the School District had contracted with another company, MGI, to assist it in the design of a student software package.

19.    In fact, MGI entered into at least two written agreements with the School District under which MGI contracted to provide certain software-related services and develop certain software products.  More specifically, on or about September 1, 1998, MGI (through Miller) and the School District entered into a contract under which MGI agreed to provide certain software development and/or web site development services to the School District.  On or about December 21, 1998, MGI (through Miller) and the School District entered into a separate agreement under which MGI agreed to develop and implement a software system directly based upon, and using crucial components of, the Star_Base programs then in the School District's possession and use.  Pursuant to that second agreement, the School District was to receive 10% of the revenues derived from the sale of the "new" software system, and related maintenance services, to any third parties.   Upon information and belief, this "new" system became a product known as "InfoSystems 3", and as alleged below, this product infringes Century's rights in and to the Star_Base programs.  Based on the agreement between MGI and the School District, the School District owns an interest in and to this product.

20.    MGI's website, www.miller-group.net, describes and advertises to the general public a product called InfoSystems 3. The InfoSystems 3 product is advertised on the website as an "online student information system", which is precisely the type of system Century licenses to the School District.   MGI and Miller use a "demonstration program" as a general advertising and marketing tool to sell the infringing product, and they intend the widespread distribution of this "demonstration program" to the general public for the purpose of advertising the product's

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-5-

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 28**

availability to potential customers. Upon information and belief, the "demonstration program" is also displayed at trade shows. This "demonstration program" embodies and reflects elements of the Star_Base software which, as alleged throughout this Complaint, was and is an infringement of Century's copyrights. The mere display of this "demonstration program" to the general public as a tool to advertise the availability of the InfoSystems 3 product is itself an infringing act under federal copyright laws.

21.     In early February 2003, a Century employee received an unsolicited phone call from Don Randle, a former information technology employee of the School District. Randle informed Century that he was aware that the School District had retained MGI to write some front-end programs to interface with the Star_Base database, that he "knew for sure" that MGI was using Century's database structures, and that he was fairly certain that MGI was also using Century's scheduler program (a component of the Star_Base software).

22.     Century also received an unsolicited phone call in February 2003 from Dave Williams, a current employee of the School District, who advised Century that MGI "stole" Century's software, and that MGI was well aware that Century's software was copyrighted.

23.     Following these conversations, Mr. Williams mailed to Century a list of the table definitions from MGI's InfoSystems 3 product. Upon comparing these definitions with Star_Base, Century has discovered that virtually all of the definitions were identical.

24.     Mr. Williams also mailed to Century the program listing from a portion of MGI's product – the "student scheduler". Once again, in comparing this to Star_Base, Century has discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-6-

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBERS 29-39

## AFFIDAVIT OF DAVID WILLIAMS

STATE OF ILLINOIS              )
                               )    ss.
COUNTY OF SANGAMON             )

DAVID WILLIAMS, being duly sworn, hereby deposes and states as follows:

1.     I am over age 18, under no legal disability, and am able to truthfully testify regarding the facts and matters set forth herein.

2.     I was employed by Springfield Public School District 186 ("District 186") from 1970 until I voluntarily retired in 2004.

3.     When my employment with District 186 began, I was a computer programmer. When I retired, I was District 186's lead systems analyst.

4.     In the course of my employment with District 186, I became familiar with a computer software product known as Star_Base, which is a student information system. It is my understanding that District 186 obtained Star_Base from Century Consultants, Ltd. ("Century").

5.     At some point in the mid 1990's, District 186 submitted a Request for Proposal ("RFP") to several vendors for the purpose of obtaining computer software that would enable District 186 to switch from a mainframe information system to a database system.

6.     In the course of my employment with District 186, I attended meetings wherein vendors demonstrated their software products in response to District 186's RFP. I did not, however, participate in District 186's decision to enter into any agreement with Century, and was unaware of the terms of any contracts between District 186 and Century.

7.     Star_Base software was installed at District 186 in or around 1996. In the course of my employment, I routinely worked with Star_Base and interacted with employees of Century for the purpose of District 186's implementation and use of Star_Base.

8.     The Star_Base software installed at District 186 operated in conjunction with an Oracle database.

9.     The Star_Base software installed at District 186 could be modified in a manner so that District 186 could develop or purchase other programs that could interact with the Oracle database. This enabled District 186 to add functions to its system that could not be performed by Star_Base, without the necessity of recreating a separate database to perform such functions.

Initials: _DW_

10.    When requested, Century employees assisted me in making substantial modifications and additions to the Star_Base software, and Century was well aware that District 186 made such modifications and additions.  In fact, Century supplied District 186 with the source code for Star_Base so that District 186 could make modifications and additions to Star_Base to suit its needs.

11.    A few years after Star_Base was installed at District 186, I learned that District 186 wanted to convert its existing student information system, which consisted of Star_Base and several other components, to a web based system that would be compatible with the Apple Macintosh computers utilized by District 186.  It is my understanding that no such product was commercially available when District 186 decided to convert to a web based system.

12.    I was not involved in District 186's decision to convert to a web based system, and did not know that such a conversion was contemplated until after a decision had already been reached.  At the same time, I learned that The Miller Group was hired by District 186 to assist in the development of District 186's new student information system.

13.    Upon learning of the decision to convert to a web based system, I assumed that the new system would replace the Star_Base software that was installed at District 186, but I did not know that to be true.

14.    When work first began on development of District 186's new web based student information system, I had no role in its development.  Eventually, however, I wrote a substantial amount of source code for District 186's new system.

15.    In the course of my employment with District 186, learned the new programming language being utilized in the source code for District 186's new student information system, which is very different from the programming language used in District 186's version of Star_Base.

16.    While I am aware that The Miller Group participated in the development of District 186's new student information system, I did not have substantive interaction with anyone from The Miller Group regarding the nature of its involvement.

17.    Both during and after development of District 186's new student information system, I assumed that The Miller Group intended to market and sell the same student information system to other school districts, although no one told me that would be the case.

18.    My assumption that The Miller Group intended to market and sell copies of District 186's student information system was strengthened when I discovered that The Miller Group was marketing a student information system named InfoSystems 3 through a web page on the internet.  I assumed that InfoSystems 3 was the same student information system that was being developed at District 186.

2                              Initials:  ⟨ w̱ ⟩

19.    I have never had any basis, other than my own assumption, for believing that InfoSystems 3 is the same student information system that The Miller Group helped to develop for District 186. Still, I assumed that to be the case.

20.    At the time I discovered that The Miller Group was marketing a student information system to other school districts, District 186 was still utilizing elements of Star_Base. As a result, I assumed that InfoSystems 3 also utilized elements of Star_Base, which I thought was improper.

21.    In February 2003, I had conversations with Robert Magan ("Magan"), who was a Century employee with whom I had frequent contact prior to that time. During the conversations, Magan and I discussed concerns I had regarding District 186's continued use of Star_Base, as well as The Miller Group's marketing and sale of InfoSystems 3, among other things. While I did not know it at the time, I later learned that Magan was recording some of our conversations.

22.    On October 21, 2004, I appeared for deposition in the matter of "Century Consultants, Ltd. v. The Miller Group, Inc., John G. Miller and Springfield Public School District 186," United States District Court, Central District of Illinois case number 2003-CV-3105 ("the lawsuit"). I heard the recording of that conversation for the first time at the deposition. I believe that the transcript attached hereto as Exhibit A truly and accurately reflects the contents of this recording.

23.    The statements made by me to Magan were not made under oath. In fact, I did not and do not have sufficient knowledge to swear to the accuracy of the statements made therein. Instead, I merely conveyed certain assumptions to Magan. My remarks to Magan were made in confidence, and I had no idea that Magan or Century would use these remarks as the basis for a lawsuit.

24.    I have reviewed a document in the lawsuit titled "DECLARATION OF ROBERT MAGAN" ("Magan's Declaration"), together with attachments, and I recognize the attachments attached as Exhibit C as being documents I sent to Magan.

25.    I represented to Magan that the documents I sent to him were obtained and printed from District 186's student information system. I have neither seen nor had access to any student information system other than the student information system at District 186, other than during demonstrations of competing products in the course of my employment with District 186.

26.    I have never had actual knowledge of any elements, components, structures, source code, object code, data structures, field names, logic, or anything else from Star_Base that was used by The Miller Group to develop InfoSystems 3.

3                                              Initials: _O W_

27.     I sent Magan table definitions attached to his Declaration.  I obtained these table definitions from District 186's student information system.  I did not obtain these table definitions from InfoSystems 3.

28.     I sent Magan the program listing referenced in Magan's Declaration and attached thereto as Exhibit D.  I obtained the program listing from District 186's student information system.  I did not obtain the program listing from InfoSystems 3.

29.     In light of the fact that I obtained the materials I sent to Magan from District 186's student information system, the similarities discovered by Magan exist because Magan compared the Star_Base program listing and table definitions to District 186's program listing and table definitions, taken from a portion of District 186's student information system that continued to use elements of Star_Base.

30.     If Magan's belief that InfoSystems 3 contains elements of Star_Base is based on my representations to him, Magan's belief is incorrect.  I merely conveyed assumptions to him that I had no basis to believe were true.

31.     While I regret the fact that this lawsuit is based upon the fact that I conveyed erroneous assumptions to Magan, I assumed that Magan and Century would undertake an investigation for the purpose of ensuring my assumptions were correct prior to filing a lawsuit.  No one from Century told me that Century would file a lawsuit based on my unverified assumption that The Miller Group was marketing the same student information system that was developed for District 186.

32.     While I assumed it to be true at the time I spoke with Magan, I did not have any first-hand knowledge or basis for any belief that The Miller Group's InfoSystems 3 product incorporates any element of Star_Base whatsoever.  To this day, I still do not have such knowledge.


_____
DAVID WILLIAMS

Signed and sworn before me this 28th day of January, 2005.


_____

OFFICIAL SEAL
CINDY STOCKER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-3-2005

January 28, 2005\crs\I:\CRAPP\WORD\LIT\RMS\CENTURY\WILLIAMS AFFIDAVIT.doc

Initials: _____

## CENTURY V. DISTRICT 186

RECORDED CONVERSATION BETWEEN DAVE
WILLIAMS ("Williams') AND ROBERT MAGAN ("Magan")

---

Magan:      Dave.

Williams:   Yeah.

Magan:      Hey, what are you doin?

Williams:   Inaudible

Magan:      Yeah . . . .

Williams:   Inaudible

Magan:      (laughing)

Williams:   Inaudible

Magan:      Well, yeah, that's why I didn't put too much detail in the email.  Well, we
            got your stuff, um, I was wondering if you could um . . .you said they
            wrote everything in – what – php?

Williams:   Php, yeah.

Magan:      Do you have any access to, to their code so we can, like, see. . .

Williams:   Well, I mean, there are, uh…(inaudible)

Magan:      Well, we want to actually see them, I guess some of their codes that
            accesses our tables, and you said the scheduler was definitely something
            that they, they stole.

Williams:   (inaudible)

Magan:      Right.

Williams:   (inaudible)

**EXHIBIT A**

Initials: D W

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 40**

Page 1

1

                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF ILLINOIS

                    SPRINGFIELD DIVISION

3                   NO. 2003-CV-3105

4       - - - - - - - - - - - - - - - - - -

5       CENTURY CONSULTANTS, LTD.,

6                   Plaintiff,                    DEPOSITION OF:

                vs.

7                                                 ROBERT MAGAN

        THE MILLER GROUP, INC., JOHN G.

8       MILLER and the SPRINGFIELD

        PUBLIC SCHOOL DISTRICT NO. 186,

9

                    Defendants.          ORIGINAL

10

        - - - - - - - - - - - - - - - - - -

11

12

13                  TRANSCRIPT OF PROCEEDINGS, taken by

14      and before KIM A. GHILARDI, a Notary Public, Certified

15      Shorthand Reporter of the State of New Jersey and

16      Registered Professional Reporter, taken at the offices

17      of STARK & STARK, P.C., 993 Lenox Drive,

18      Lawrenceville, New Jersey, on Friday, January 14,

19      2005, commencing at 9:20 a.m.

20

21

22                  GUY J. RENZI & ASSOCIATES

                    824 West State Street

23                  Trenton, New Jersey  08618

             (609) 989-9199  1-800-368-7652  (TOLL FREE)

24                  www.renziassociates.com

25

Page 113

1  something was going to happen and he was sorry that it

2  got to this point and him and Henry both felt that

3  this was the right thing to do.

4          Q       Did he tell you anything else?

5          A       No.

6          Q       After the Complaint was filed, did you

7  have any conversations with Dave Williams?

8          A       No.

9          Q       Have you had any communication with him

10 whatsoever?

11         A       No.

12         Q       All right.  During the same time period

13 between your first conversation with Don Randall after

14 support ended and the time Century filed its

15 Complaint, did you have any conversations with Henry

16 Stuckey?

17         A       No.

18         Q       Did you ever tell anyone that you had

19 conversations with Henry Stuckey, whether it is true

20 or not?

21         A       No.

22         Q       Whose idea was it to tape Dave Williams

23 or record Dave Williams?

24                 MR. SCHRAMA:  I'm just going to make an

25 objection on the record.  As I said before, any

Page 114

1   conversations you had with attorneys is privileged and

2   you won't be talking about the substantive parts of

3   those conversations.

4        Q        Just to make this go more smoothly, for

5   the rest of the afternoon I don't ever want you to

6   tell me about your conversations with your attorney.

7   Okay.

8        A        Okay.

9        Q        That way your attorney won't need to

10  keep objecting and you know the ground rules and let's

11  just have that be a rule.  And if you can't answer a

12  question, tell me that you can't answer it because of

13  what we discussed.  Okay?

14       A        Okay.  It was a mutual decision between

15  Joe Shearn, Joe LaMantia and myself.

16       Q        Who first suggested it?

17       A        Joe Shearn.

18       Q        Did you have any discussions with your

19  superiors, i.e. Joe Shearn and Joe LaMantia, regarding

20  the legality of making such a recording?

21       A        No.

22       Q        Did you have any concerns about the

23  legality of making that recording?

24       A        I did not have any concerns.

25       Q        Did you conduct or do any research

1    regarding whether recording those telephone

2    conversations would be appropriate or legal?

3         A       I did not, no.

4         Q       Do you have or at the time you made the

5    recordings, did you have an understanding regarding

6    whether recording those calls would be legal or not?

7         A       No.  They had told me that we should

8    tape the conversation, they being Joe Shearn and Joe

9    LaMantia, so I'm assuming they did any research.

10        Q       Did you ever tell Dave Williams that you

11   taped the conversations?

12        A       No.

13        Q       Did he ever ask you if you taped the

14   conversations?

15        A       No.

16        Q       What other investigation was done by

17   Century between the time Mr. Randall first contacted

18   you after support ended and the time the Complaint was

19   filed in this matter?

20        A       The obligation that we did was based on

21   the information that was sent to us by Dave, so as I

22   said in the beginning, we reviewed the data base

23   structures that were sent us to and then we reviewed

24   the piece of the scheduling code that was sent to us.

25        Q       Are you aware of any investigation,

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 41**

Page 1

1

2                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF ILLINOIS
                     SPRINGFIELD DIVISION
3                    NO. 2003-CV-3105
4     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
5     CENTURY CONSULTANTS, LTD.,
6                    Plaintiff,              DEPOSITION OF:
            vs.
7                                    ROBERT MAGAN
      THE MILLER GROUP, INC., JOHN G.
8     MILLER and the SPRINGFIELD
      PUBLIC SCHOOL DISTRICT NO. 186,
9
             Defendants.             ORIGINAL
10
      _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
11
12
13              TRANSCRIPT OF PROCEEDINGS, taken by
14    and before KIM A. GHILARDI, a Notary Public, Certified
15    Shorthand Reporter of the State of New Jersey and
16    Registered Professional Reporter, taken at the offices
17    of STARK & STARK, P.C., 993 Lenox Drive,
18    Lawrenceville, New Jersey, on Friday, January 14,
19    2005, commencing at 9:20 a.m.
20
21
22              GUY J. RENZI & ASSOCIATES
                824 West State Street
23              Trenton, New Jersey  08618
           (609) 989-9199  1-800-368-7652  (TOLL FREE)
24                 www.renziassociates.com
25

Page 113

1    something was going to happen and he was sorry that it

2    got to this point and him and Henry both felt that

3    this was the right thing to do.

4           Q        Did he tell you anything else?

5           A        No.

6           Q        After the Complaint was filed, did you

7    have any conversations with Dave Williams?

8           A        No.

9           Q        Have you had any communication with him

10   whatsoever?

11          A        No.

12          Q        All right.  During the same time period

13   between your first conversation with Don Randall after

14   support ended and the time Century filed its

15   Complaint, did you have any conversations with Henry

16   Stuckey?

17          A        No.

18          Q        Did you ever tell anyone that you had

19   conversations with Henry Stuckey, whether it is true

20   or not?

21          A        No.

22          Q        Whose idea was it to tape Dave Williams

23   or record Dave Williams?

24                   MR. SCHRAMA:  I'm just going to make an

25   objection on the record.  As I said before, any

```
Page 114
```

1   conversations you had with attorneys is privileged and

2   you won't be talking about the substantive parts of

3   those conversations.

4        Q       Just to make this go more smoothly, for

5   the rest of the afternoon I don't ever want you to

6   tell me about your conversations with your attorney.

7   Okay.

8        A       Okay.

9        Q       That way your attorney won't need to

10  keep objecting and you know the ground rules and let's

11  just have that be a rule.  And if you can't answer a

12  question, tell me that you can't answer it because of

13  what we discussed.  Okay?

14       A       Okay.  It was a mutual decision between

15  Joe Shearn, Joe LaMantia and myself.

16       Q       Who first suggested it?

17       A       Joe Shearn.

18       Q       Did you have any discussions with your

19  superiors, i.e. Joe Shearn and Joe LaMantia, regarding

20  the legality of making such a recording?

21       A       No.

22       Q       Did you have any concerns about the

23  legality of making that recording?

24       A       I did not have any concerns.

25       Q       Did you conduct or do any research

Page 115

1    regarding whether recording those telephone

2    conversations would be appropriate or legal?

3        A        I did not, no.

4        Q        Do you have or at the time you made the

5    recordings, did you have an understanding regarding

6    whether recording those calls would be legal or not?

7        A        No.  They had told me that we should

8    tape the conversation, they being Joe Shearn and Joe

9    LaMantia, so I'm assuming they did any research.

10       Q        Did you ever tell Dave Williams that you

11   taped the conversations?

12       A        No.

13       Q        Did he ever ask you if you taped the

14   conversations?

15       A        No.

16       Q        What other investigation was done by

17   Century between the time Mr. Randall first contacted

18   you after support ended and the time the Complaint was

19   filed in this matter?

20       A        The obligation that we did was based on

21   the information that was sent to us by Dave, so as I

22   said in the beginning, we reviewed the data base

23   structures that were sent us to and then we reviewed

24   the piece of the scheduling code that was sent to us.

25       Q        Are you aware of any investigation,

<u>**AFFIDAVIT OF DAVID WILLIAMS**</u>

STATE OF ILLINOIS            )
                                     )    ss.

COUNTY OF SANGAMON     )

DAVID WILLIAMS, being duly sworn, hereby deposes and states as follows:

1.    I am over age 18, under no legal disability, and am able to truthfully testify regarding the facts and matters set forth herein.

2.    I was employed by Springfield Public School District 186 ("District 186") from 1970 until I voluntarily retired in 2004.

3.    When my employment with District 186 began, I was a computer programmer. When I retired, I was District 186's lead systems analyst.

4.    In the course of my employment with District 186, I became familiar with a computer software product known as Star_Base, which is a student information system. It is my understanding that District 186 obtained Star_Base from Century Consultants, Ltd. ("Century").

5.    At some point in the mid 1990's, District 186 submitted a Request for Proposal ("RFP") to several vendors for the purpose of obtaining computer software that would enable District 186 to switch from a mainframe information system to a database system.

6.    In the course of my employment with District 186, I attended meetings wherein vendors demonstrated their software products in response to District 186's RFP. I did not, however, participate in District 186's decision to enter into any agreement with Century, and was unaware of the terms of any contracts between District 186 and Century.

7.    Star_Base software was installed at District 186 in or around 1996. In the course of my employment, I routinely worked with Star_Base and interacted with employees of Century for the purpose of District 186's implementation and use of Star_Base.

8.    The Star_Base software installed at District 186 operated in conjunction with an Oracle database.

9.    The Star_Base software installed at District 186 could be modified in a manner so that District 186 could develop or purchase other programs that could interact with the Oracle database. This enabled District 186 to add functions to its system that could not be performed by Star_Base, without the necessity of recreating a separate database to perform such functions.

Initials: _D W/_

10.    When requested, Century employees assisted me in making substantial modifications and additions to the Star_Base software, and Century was well aware that District 186 made such modifications and additions. In fact, Century supplied District 186 with the source code for Star_Base so that District 186 could make modifications and additions to Star_Base to suit its needs.

11.    A few years after Star_Base was installed at District 186, I learned that District 186 wanted to convert its existing student information system, which consisted of Star_Base and several other components, to a web based system that would be compatible with the Apple Macintosh computers utilized by District 186. It is my understanding that no such product was commercially available when District 186 decided to convert to a web based system.

12.    I was not involved in District 186's decision to convert to a web based system, and did not know that such a conversion was contemplated until after a decision had already been reached. At the same time, I learned that The Miller Group was hired by District 186 to assist in the development of District 186's new student information system.

13.    Upon learning of the decision to convert to a web based system, I assumed that the new system would replace the Star_Base software that was installed at District 186, but I did not know that to be true.

14.    When work first began on development of District 186's new web based student information system, I had no role in its development. Eventually, however, I wrote a substantial amount of source code for District 186's new system.

15.    In the course of my employment with District 186, learned the new programming language being utilized in the source code for District 186's new student information system, which is very different from the programming language used in District 186's version of Star_Base.

16.    While I am aware that The Miller Group participated in the development of District 186's new student information system, I did not have substantive interaction with anyone from The Miller Group regarding the nature of its involvement.

17.    Both during and after development of District 186's new student information system, I assumed that The Miller Group intended to market and sell the same student information system to other school districts, although no one told me that would be the case.

18.    My assumption that The Miller Group intended to market and sell copies of District 186's student information system was strengthened when I discovered that The Miller Group was marketing a student information system named InfoSystems 3 through a web page on the internet. I assumed that InfoSystems 3 was the same student information system that was being developed at District 186.

2                                    Initials: _Ɋ w_

19.    I have never had any basis, other than my own assumption, for believing that InfoSystems 3 is the same student information system that The Miller Group helped to develop for District 186. Still, I assumed that to be the case.

20.    At the time I discovered that The Miller Group was marketing a student information system to other school districts, District 186 was still utilizing elements of Star_Base. As a result, I assumed that InfoSystems 3 also utilized elements of Star_Base, which I thought was improper.

21.    In February 2003, I had conversations with Robert Magan ("Magan"), who was a Century employee with whom I had frequent contact prior to that time. During the conversations, Magan and I discussed concerns I had regarding District 186's continued use of Star_Base, as well as The Miller Group's marketing and sale of InfoSystems 3, among other things. While I did not know it at the time, I later learned that Magan was recording some of our conversations.

22.    On October 21, 2004, I appeared for deposition in the matter of "Century Consultants, Ltd. v. The Miller Group, Inc., John G. Miller and Springfield Public School District 186," United States District Court, Central District of Illinois case number 2003-CV-3105 ("the lawsuit"). I heard the recording of that conversation for the first time at the deposition. I believe that the transcript attached hereto as Exhibit A truly and accurately reflects the contents of this recording.

23.    The statements made by me to Magan were not made under oath. In fact, I did not and do not have sufficient knowledge to swear to the accuracy of the statements made therein. Instead, I merely conveyed certain assumptions to Magan. My remarks to Magan were made in confidence, and I had no idea that Magan or Century would use these remarks as the basis for a lawsuit.

24.    I have reviewed a document in the lawsuit titled "DECLARATION OF ROBERT MAGAN" ("Magan's Declaration"), together with attachments, and I recognize the attachments attached as Exhibit C as being documents I sent to Magan.

25.    I represented to Magan that the documents I sent to him were obtained and printed from District 186's student information system. I have neither seen nor had access to any student information system other than the student information system at District 186, other than during demonstrations of competing products in the course of my employment with District 186.

26.    I have never had actual knowledge of any elements, components, structures, source code, object code, data structures, field names, logic, or anything else from Star_Base that was used by The Miller Group to develop InfoSystems 3.

3                        Initials: _D W_

27.    I sent Magan table definitions attached to his Declaration.  I obtained these table definitions from District 186's student information system.  I did not obtain these table definitions from InfoSystems 3.

28.    I sent Magan the program listing referenced in Magan's Declaration and attached thereto as Exhibit D.  I obtained the program listing from District 186's student information system.  I did not obtain the program listing from InfoSystems 3.

29.    In light of the fact that I obtained the materials I sent to Magan from District 186's student information system, the similarities discovered by Magan exist because Magan compared the Star_Base program listing and table definitions to District 186's program listing and table definitions, taken from a portion of District 186's student information system that continued to use elements of Star_Base.

30.    If Magan's belief that InfoSystems 3 contains elements of Star_Base is based on my representations to him, Magan's belief is incorrect.  I merely conveyed assumptions to him that I had no basis to believe were true.

31.    While I regret the fact that this lawsuit is based upon the fact that I conveyed erroneous assumptions to Magan, I assumed that Magan and Century would undertake an investigation for the purpose of ensuring my assumptions were correct prior to filing a lawsuit.  No one from Century told me that Century would file a lawsuit based on my unverified assumption that The Miller Group was marketing the same student information system that was developed for District 186.

32.    While I assumed it to be true at the time I spoke with Magan, I did not have any first-hand knowledge or basis for any belief that The Miller Group's InfoSystems 3 product incorporates any element of Star_Base whatsoever.  To this day, I still do not have such knowledge.

_____
DAVID WILLIAMS

Signed and sworn before me this 28th day of January, 2005.

_____
Notary Public

OFFICIAL SEAL
CINDY STOCKER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-3-2005

January 28, 2005\crs\I:\CRAPP\WORD\LIT\RMS\CENTURY\WILLIAMS AFFIDAVIT.DOC

4                                    Initials: _____

<u>CENTURY V. DISTRICT 186</u>

RECORDED CONVERSATION BETWEEN DAVE
WILLIAMS  ("Williams') AND ROBERT MAGAN ("Magan")

Magan:       Dave.

Williams:    Yeah.

Magan:       Hey, what are you doin?

Williams:    Inaudible

Magan:       Yeah . . . .

Williams:    Inaudible

Magan:       (laughing)

Williams:    Inaudible

Magan:       Well, yeah, that's why I didn't put too much detail in the email.  Well, we
             got your stuff, um, I was wondering if you could um . . .you said they
             wrote everything in – what – php?

Williams:    Php, yeah.

Magan:       Do you have any access to, to their code so we can, like, see. . .

Williams:    Well, I mean, there are, uh…(inaudible)

Magan:       Well, we want to actually see them, I guess some of their codes that
             accesses our tables, and you said the scheduler was definitely something
             that they, they stole.

Williams:    (inaudible)

Magan:       Right.

Williams:    (inaudible)

**EXHIBIT A**

Initials: D W

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 42

<u>AFFIDAVIT OF DAVID WILLIAMS</u>

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | |
| | ) | ss. |
| COUNTY OF SANGAMON | ) | |

DAVID WILLIAMS, being duly sworn, hereby deposes and states as follows:

1.    I am over age 18, under no legal disability, and am able to truthfully testify regarding the facts and matters set forth herein.

2.    I was employed by Springfield Public School District 186 ("District 186") from 1970 until I voluntarily retired in 2004.

3.    When my employment with District 186 began, I was a computer programmer. When I retired, I was District 186's lead systems analyst.

4.    In the course of my employment with District 186, I became familiar with a computer software product known as Star_Base, which is a student information system. It is my understanding that District 186 obtained Star_Base from Century Consultants, Ltd. ("Century").

5.    At some point in the mid 1990's, District 186 submitted a Request for Proposal ("RFP") to several vendors for the purpose of obtaining computer software that would enable District 186 to switch from a mainframe information system to a database system.

6.    In the course of my employment with District 186, I attended meetings wherein vendors demonstrated their software products in response to District 186's RFP. I did not, however, participate in District 186's decision to enter into any agreement with Century, and was unaware of the terms of any contracts between District 186 and Century.

7.    Star_Base software was installed at District 186 in or around 1996. In the course of my employment, I routinely worked with Star_Base and interacted with employees of Century for the purpose of District 186's implementation and use of Star_Base.

8.    The Star_Base software installed at District 186 operated in conjunction with an Oracle database.

9.    The Star_Base software installed at District 186 could be modified in a manner so that District 186 could develop or purchase other programs that could interact with the Oracle database. This enabled District 186 to add functions to its system that could not be performed by Star_Base, without the necessity of recreating a separate database to perform such functions.

Initials: D W

10.    When requested, Century employees assisted me in making substantial modifications and additions to the Star_Base software, and Century was well aware that District 186 made such modifications and additions. In fact, Century supplied District 186 with the source code for Star_Base so that District 186 could make modifications and additions to Star_Base to suit its needs.

11.    A few years after Star_Base was installed at District 186, I learned that District 186 wanted to convert its existing student information system, which consisted of Star_Base and several other components, to a web based system that would be compatible with the Apple Macintosh computers utilized by District 186. It is my understanding that no such product was commercially available when District 186 decided to convert to a web based system.

12.    I was not involved in District 186's decision to convert to a web based system, and did not know that such a conversion was contemplated until after a decision had already been reached. At the same time, I learned that The Miller Group was hired by District 186 to assist in the development of District 186's new student information system.

13.    Upon learning of the decision to convert to a web based system, I assumed that the new system would replace the Star_Base software that was installed at District 186, but I did not know that to be true.

14.    When work first began on development of District 186's new web based student information system, I had no role in its development. Eventually, however, I wrote a substantial amount of source code for District 186's new system.

15.    In the course of my employment with District 186, learned the new programming language being utilized in the source code for District 186's new student information system, which is very different from the programming language used in District 186's version of Star_Base.

16.    While I am aware that The Miller Group participated in the development of District 186's new student information system, I did not have substantive interaction with anyone from The Miller Group regarding the nature of its involvement.

17.    Both during and after development of District 186's new student information system, I assumed that The Miller Group intended to market and sell the same student information system to other school districts, although no one told me that would be the case.

18.    My assumption that The Miller Group intended to market and sell copies of District 186's student information system was strengthened when I discovered that The Miller Group was marketing a student information system named InfoSystems 3 through a web page on the internet. I assumed that InfoSystems 3 was the same student information system that was being developed at District 186.

2                    Initials: _D W_

19.    I have never had any basis, other than my own assumption, for believing that InfoSystems 3 is the same student information system that The Miller Group helped to develop for District 186. Still, I assumed that to be the case.

20.    At the time I discovered that The Miller Group was marketing a student information system to other school districts, District 186 was still utilizing elements of Star_Base. As a result, I assumed that InfoSystems 3 also utilized elements of Star_Base, which I thought was improper.

21.    In February 2003, I had conversations with Robert Magan ("Magan"), who was a Century employee with whom I had frequent contact prior to that time. During the conversations, Magan and I discussed concerns I had regarding District 186's continued use of Star_Base, as well as The Miller Group's marketing and sale of InfoSystems 3, among other things. While I did not know it at the time, I later learned that Magan was recording some of our conversations.

22.    On October 21, 2004, I appeared for deposition in the matter of "Century Consultants, Ltd. v. The Miller Group, Inc., John G. Miller and Springfield Public School District 186," United States District Court, Central District of Illinois case number 2003-CV-3105 ("the lawsuit"). I heard the recording of that conversation for the first time at the deposition. I believe that the transcript attached hereto as Exhibit A truly and accurately reflects the contents of this recording.

23.    The statements made by me to Magan were not made under oath. In fact, I did not and do not have sufficient knowledge to swear to the accuracy of the statements made therein. Instead, I merely conveyed certain assumptions to Magan. My remarks to Magan were made in confidence, and I had no idea that Magan or Century would use these remarks as the basis for a lawsuit.

24.    I have reviewed a document in the lawsuit titled "DECLARATION OF ROBERT MAGAN" ("Magan's Declaration"), together with attachments, and I recognize the attachments attached as Exhibit C as being documents I sent to Magan.

25.    I represented to Magan that the documents I sent to him were obtained and printed from District 186's student information system. I have neither seen nor had access to any student information system other than the student information system at District 186, other than during demonstrations of competing products in the course of my employment with District 186.

26.    I have never had actual knowledge of any elements, components, structures, source code, object code, data structures, field names, logic, or anything else from Star_Base that was used by The Miller Group to develop InfoSystems 3.

Initials: ___ O W ___

27.    I sent Magan table definitions attached to his Declaration.  I obtained these table definitions from District 186's student information system.  I did not obtain these table definitions from InfoSystems 3.

28.    I sent Magan the program listing referenced in Magan's Declaration and attached thereto as Exhibit D.  I obtained the program listing from District 186's student information system.  I did not obtain the program listing from InfoSystems 3.

29.    In light of the fact that I obtained the materials I sent to Magan from District 186's student information system, the similarities discovered by Magan exist because Magan compared the Star_Base program listing and table definitions to District 186's program listing and table definitions, taken from a portion of District 186's student information system that continued to use elements of Star_Base.

30.    If Magan's belief that InfoSystems 3 contains elements of Star_Base is based on my representations to him, Magan's belief is incorrect.  I merely conveyed assumptions to him that I had no basis to believe were true.

31.    While I regret the fact that this lawsuit is based upon the fact that I conveyed erroneous assumptions to Magan, I assumed that Magan and Century would undertake an investigation for the purpose of ensuring my assumptions were correct prior to filing a lawsuit.  No one from Century told me that Century would file a lawsuit based on my unverified assumption that The Miller Group was marketing the same student information system that was developed for District 186.

32.    While I assumed it to be true at the time I spoke with Magan, I did not have any first-hand knowledge or basis for any belief that The Miller Group's InfoSystems 3 product incorporates any element of Star_Base whatsoever.  To this day, I still do not have such knowledge.

_____
DAVID WILLIAMS

Signed and sworn before me this 28th day of January, 2005.

_____
Notary Public

OFFICIAL SEAL
CINDY STOCKER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-3-2005

4                         Initials: _____

## CENTURY V. DISTRICT 186

RECORDED CONVERSATION BETWEEN DAVE
WILLIAMS  ("Williams') AND ROBERT MAGAN ("Magan")

---

Magan:        Dave.

Williams:     Yeah.

Magan:        Hey, what are you doin?

Williams:     Inaudible

Magan:        Yeah . . . .

Williams:     Inaudible

Magan:        (laughing)

Williams:     Inaudible

Magan:        Well, yeah, that's why I didn't put too much detail in the email.  Well, we
              got your stuff, um, I was wondering if you could um . . .you said they
              wrote everything in – what – php?

Williams:     Php, yeah.

Magan:        Do you have any access to, to their code so we can, like, see. . .

Williams:     Well, I mean, there are, uh…(inaudible)

Magan:        Well, we want to actually see them, I guess some of their codes that
              accesses our tables, and you said the scheduler was definitely something
              that they, they stole.

Williams:     (inaudible)

Magan:        Right.

Williams:     (inaudible)

### EXHIBIT A

Initials: D W

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 43**

availability to potential customers.   Upon information and belief, the "demonstration program"

is also displayed at trade shows.  This "demonstration program" embodies and reflects elements

of the Star_Base software which, as alleged throughout this Complaint, was and is an

infringement of Century's copyrights.  The mere display of this "demonstration program" to the

general public as a tool to advertise the availability of the InfoSystems 3 product is itself an

infringing act under federal copyright laws.

     21.     In early February 2003, a Century employee received an unsolicited phone call

from Don Randle, a former information technology employee of the School District.  Randle

informed Century that he was aware that the School District had retained MGI to write some

front-end programs to interface with the Star_Base database, that he "knew for sure" that MGI

was using Century's database structures, and that he was fairly certain that MGI was also using

Century's scheduler program (a component of the Star_Base software).

     22.     Century also received an unsolicited phone call in February 2003 from Dave

Williams, a current employee of the School District, who advised Century that MGI "stole"

Century's software, and that MGI was well aware that Century's software was copyrighted.

     23.     Following these conversations, Mr. Williams mailed to Century a list of the table

definitions from MGI's InfoSystems 3 product.  Upon comparing these definitions with

Star_Base, Century has discovered that virtually all of the definitions were identical.

     24.     Mr. Williams also mailed to Century the program listing from a portion of MGI's

product – the "student scheduler".  Once again, in comparing this to Star_Base, Century has

discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base

tables.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-6-

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBERS
44-45**

## AFFIDAVIT OF DAVID WILLIAMS

STATE OF ILLINOIS            )
                            )    ss.
COUNTY OF SANGAMON           )

DAVID WILLIAMS, being duly sworn, hereby deposes and states as follows:

1.    I am over age 18, under no legal disability, and am able to truthfully testify regarding the facts and matters set forth herein.

2.    I was employed by Springfield Public School District 186 ("District 186") from 1970 until I voluntarily retired in 2004.

3.    When my employment with District 186 began, I was a computer programmer. When I retired, I was District 186's lead systems analyst.

4.    In the course of my employment with District 186, I became familiar with a computer software product known as Star_Base, which is a student information system. It is my understanding that District 186 obtained Star_Base from Century Consultants, Ltd. ("Century").

5.    At some point in the mid 1990's, District 186 submitted a Request for Proposal ("RFP") to several vendors for the purpose of obtaining computer software that would enable District 186 to switch from a mainframe information system to a database system.

6.    In the course of my employment with District 186, I attended meetings wherein vendors demonstrated their software products in response to District 186's RFP. I did not, however, participate in District 186's decision to enter into any agreement with Century, and was unaware of the terms of any contracts between District 186 and Century.

7.    Star_Base software was installed at District 186 in or around 1996. In the course of my employment, I routinely worked with Star_Base and interacted with employees of Century for the purpose of District 186's implementation and use of Star_Base.

8.    The Star_Base software installed at District 186 operated in conjunction with an Oracle database.

9.    The Star_Base software installed at District 186 could be modified in a manner so that District 186 could develop or purchase other programs that could interact with the Oracle database. This enabled District 186 to add functions to its system that could not be performed by Star_Base, without the necessity of recreating a separate database to perform such functions.

Initials: _N w/_

10.    When requested, Century employees assisted me in making substantial modifications and additions to the Star_Base software, and Century was well aware that District 186 made such modifications and additions. In fact, Century supplied District 186 with the source code for Star_Base so that District 186 could make modifications and additions to Star_Base to suit its needs.

11.    A few years after Star_Base was installed at District 186, I learned that District 186 wanted to convert its existing student information system, which consisted of Star_Base and several other components, to a web based system that would be compatible with the Apple Macintosh computers utilized by District 186. It is my understanding that no such product was commercially available when District 186 decided to convert to a web based system.

12.    I was not involved in District 186's decision to convert to a web based system, and did not know that such a conversion was contemplated until after a decision had already been reached. At the same time, I learned that The Miller Group was hired by District 186 to assist in the development of District 186's new student information system.

13.    Upon learning of the decision to convert to a web based system, I assumed that the new system would replace the Star_Base software that was installed at District 186, but I did not know that to be true.

14.    When work first began on development of District 186's new web based student information system, I had no role in its development. Eventually, however, I wrote a substantial amount of source code for District 186's new system.

15.    In the course of my employment with District 186, learned the new programming language being utilized in the source code for District 186's new student information system, which is very different from the programming language used in District 186's version of Star_Base.

16.    While I am aware that The Miller Group participated in the development of District 186's new student information system, I did not have substantive interaction with anyone from The Miller Group regarding the nature of its involvement.

17.    Both during and after development of District 186's new student information system, I assumed that The Miller Group intended to market and sell the same student information system to other school districts, although no one told me that would be the case.

18.    My assumption that The Miller Group intended to market and sell copies of District 186's student information system was strengthened when I discovered that The Miller Group was marketing a student information system named InfoSystems 3 through a web page on the internet. I assumed that InfoSystems 3 was the same student information system that was being developed at District 186.

2                                    Initials: _Ŋ ŵ____

19.    I have never had any basis, other than my own assumption, for believing that InfoSystems 3 is the same student information system that The Miller Group helped to develop for District 186. Still, I assumed that to be the case.

20.    At the time I discovered that The Miller Group was marketing a student information system to other school districts, District 186 was still utilizing elements of Star_Base. As a result, I assumed that InfoSystems 3 also utilized elements of Star_Base, which I thought was improper.

21.    In February 2003, I had conversations with Robert Magan ("Magan"), who was a Century employee with whom I had frequent contact prior to that time. During the conversations, Magan and I discussed concerns I had regarding District 186's continued use of Star_Base, as well as The Miller Group's marketing and sale of InfoSystems 3, among other things. While I did not know it at the time, I later learned that Magan was recording some of our conversations.

22.    On October 21, 2004, I appeared for deposition in the matter of "Century Consultants, Ltd. v. The Miller Group, Inc., John G. Miller and Springfield Public School District 186," United States District Court, Central District of Illinois case number 2003-CV-3105 ("the lawsuit"). I heard the recording of that conversation for the first time at the deposition. I believe that the transcript attached hereto as Exhibit A truly and accurately reflects the contents of this recording.

23.    The statements made by me to Magan were not made under oath. In fact, I did not and do not have sufficient knowledge to swear to the accuracy of the statements made therein. Instead, I merely conveyed certain assumptions to Magan. My remarks to Magan were made in confidence, and I had no idea that Magan or Century would use these remarks as the basis for a lawsuit.

24.    I have reviewed a document in the lawsuit titled "DECLARATION OF ROBERT MAGAN" ("Magan's Declaration"), together with attachments, and I recognize the attachments attached as Exhibit C as being documents I sent to Magan.

25.    I represented to Magan that the documents I sent to him were obtained and printed from District 186's student information system. I have neither seen nor had access to any student information system other than the student information system at District 186, other than during demonstrations of competing products in the course of my employment with District 186.

26.    I have never had actual knowledge of any elements, components, structures, source code, object code, data structures, field names, logic, or anything else from Star_Base that was used by The Miller Group to develop InfoSystems 3.

3                    Initials: _O W_

27.    I sent Magan table definitions attached to his Declaration. I obtained these table definitions from District 186's student information system. I did not obtain these table definitions from InfoSystems 3.

28.    I sent Magan the program listing referenced in Magan's Declaration and attached thereto as Exhibit D. I obtained the program listing from District 186's student information system. I did not obtain the program listing from InfoSystems 3.

29.    In light of the fact that I obtained the materials I sent to Magan from District 186's student information system, the similarities discovered by Magan exist because Magan compared the Star_Base program listing and table definitions to District 186's program listing and table definitions, taken from a portion of District 186's student information system that continued to use elements of Star_Base.

30.    If Magan's belief that InfoSystems 3 contains elements of Star_Base is based on my representations to him, Magan's belief is incorrect. I merely conveyed assumptions to him that I had no basis to believe were true.

31.    While I regret the fact that this lawsuit is based upon the fact that I conveyed erroneous assumptions to Magan, I assumed that Magan and Century would undertake an investigation for the purpose of ensuring my assumptions were correct prior to filing a lawsuit. No one from Century told me that Century would file a lawsuit based on my unverified assumption that The Miller Group was marketing the same student information system that was developed for District 186.

32.    While I assumed it to be true at the time I spoke with Magan, I did not have any first-hand knowledge or basis for any belief that The Miller Group's InfoSystems 3 product incorporates any element of Star_Base whatsoever. To this day, I still do not have such knowledge.

_____
DAVID WILLIAMS

Signed and sworn before me this 28th day of January, 2005.

_____
Notary Public

OFFICIAL SEAL
CINDY STOCKER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-3-2005

4

Initials: _____

## CENTURY V. DISTRICT 186

RECORDED CONVERSATION BETWEEN DAVE
WILLIAMS ("Williams') AND ROBERT MAGAN ("Magan")

| | |
|---|---|
| Magan: | Dave. |
| Williams: | Yeah. |
| Magan: | Hey, what are you doin? |
| Williams: | Inaudible |
| Magan: | Yeah . . . . |
| Williams: | Inaudible |
| Magan: | (laughing) |
| Williams: | Inaudible |
| Magan: | Well, yeah, that's why I didn't put too much detail in the email.  Well, we got your stuff, um, I was wondering if you could um . . .you said they wrote everything in – what – php? |
| Williams: | Php, yeah. |
| Magan: | Do you have any access to, to their code so we can, like, see. . . |
| Williams: | Well, I mean, there are, uh…(inaudible) |
| Magan: | Well, we want to actually see them, I guess some of their codes that accesses our tables, and you said the scheduler was definitely something that they, they stole. |
| Williams: | (inaudible) |
| Magan: | Right. |
| Williams: | (inaudible) |

**EXHIBIT A**

Initials: Ꭰ W

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 46

availability to potential customers.   Upon information and belief, the "demonstration program" is also displayed at trade shows.  This "demonstration program" embodies and reflects elements of the Star_Base software which, as alleged throughout this Complaint, was and is an infringement of Century's copyrights.  The mere display of this "demonstration program" to the general public as a tool to advertise the availability of the InfoSystems 3 product is itself an infringing act under federal copyright laws.

21.       In early February 2003, a Century employee received an unsolicited phone call from Don Randle, a former information technology employee of the School District.  Randle informed Century that he was aware that the School District had retained MGI to write some front-end programs to interface with the Star_Base database, that he "knew for sure" that MGI was using Century's database structures, and that he was fairly certain that MGI was also using Century's scheduler program (a component of the Star_Base software).

22.       Century also received an unsolicited phone call in February 2003 from Dave Williams, a current employee of the School District, who advised Century that MGI "stole" Century's software, and that MGI was well aware that Century's software was copyrighted.

23.       Following these conversations, Mr. Williams mailed to Century a list of the table definitions from MGI's InfoSystems 3 product.  Upon comparing these definitions with Star_Base, Century has discovered that virtually all of the definitions were identical.

24.       Mr. Williams also mailed to Century the program listing from a portion of MGI's product – the "student scheduler".  Once again, in comparing this to Star_Base, Century has discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-6-

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 47**

<u>AFFIDAVIT OF DAVID WILLIAMS</u>

STATE OF ILLINOIS                )
                                 )    ss.
COUNTY OF SANGAMON               )

DAVID WILLIAMS, being duly sworn, hereby deposes and states as follows:

1.      I am over age 18, under no legal disability, and am able to truthfully testify regarding the facts and matters set forth herein.

2.      I was employed by Springfield Public School District 186 ("District 186") from 1970 until I voluntarily retired in 2004.

3.      When my employment with District 186 began, I was a computer programmer. When I retired, I was District 186's lead systems analyst.

4.      In the course of my employment with District 186, I became familiar with a computer software product known as Star_Base, which is a student information system. It is my understanding that District 186 obtained Star_Base from Century Consultants, Ltd. ("Century").

5.      At some point in the mid 1990's, District 186 submitted a Request for Proposal ("RFP") to several vendors for the purpose of obtaining computer software that would enable District 186 to switch from a mainframe information system to a database system.

6.      In the course of my employment with District 186, I attended meetings wherein vendors demonstrated their software products in response to District 186's RFP. I did not, however, participate in District 186's decision to enter into any agreement with Century, and was unaware of the terms of any contracts between District 186 and Century.

7.      Star_Base software was installed at District 186 in or around 1996. In the course of my employment, I routinely worked with Star_Base and interacted with employees of Century for the purpose of District 186's implementation and use of Star_Base.

8.      The Star_Base software installed at District 186 operated in conjunction with an Oracle database.

9.      The Star_Base software installed at District 186 could be modified in a manner so that District 186 could develop or purchase other programs that could interact with the Oracle database. This enabled District 186 to add functions to its system that could not be performed by Star_Base, without the necessity of recreating a separate database to perform such functions.

Initials: _D W_

10.     When requested, Century employees assisted me in making substantial modifications and additions to the Star_Base software, and Century was well aware that District 186 made such modifications and additions. In fact, Century supplied District 186 with the source code for Star_Base so that District 186 could make modifications and additions to Star_Base to suit its needs.

11.     A few years after Star_Base was installed at District 186, I learned that District 186 wanted to convert its existing student information system, which consisted of Star_Base and several other components, to a web based system that would be compatible with the Apple Macintosh computers utilized by District 186. It is my understanding that no such product was commercially available when District 186 decided to convert to a web based system.

12.     I was not involved in District 186's decision to convert to a web based system, and did not know that such a conversion was contemplated until after a decision had already been reached. At the same time, I learned that The Miller Group was hired by District 186 to assist in the development of District 186's new student information system.

13.     Upon learning of the decision to convert to a web based system, I assumed that the new system would replace the Star_Base software that was installed at District 186, but I did not know that to be true.

14.     When work first began on development of District 186's new web based student information system, I had no role in its development. Eventually, however, I wrote a substantial amount of source code for District 186's new system.

15.     In the course of my employment with District 186, learned the new programming language being utilized in the source code for District 186's new student information system, which is very different from the programming language used in District 186's version of Star_Base.

16.     While I am aware that The Miller Group participated in the development of District 186's new student information system, I did not have substantive interaction with anyone from The Miller Group regarding the nature of its involvement.

17.     Both during and after development of District 186's new student information system, I assumed that The Miller Group intended to market and sell the same student information system to other school districts, although no one told me that would be the case.

18.     My assumption that The Miller Group intended to market and sell copies of District 186's student information system was strengthened when I discovered that The Miller Group was marketing a student information system named InfoSystems 3 through a web page on the internet. I assumed that InfoSystems 3 was the same student information system that was being developed at District 186.

2                                           Initials: _Ɖ ω_

19.    I have never had any basis, other than my own assumption, for believing that InfoSystems 3 is the same student information system that The Miller Group helped to develop for District 186. Still, I assumed that to be the case.

20.    At the time I discovered that The Miller Group was marketing a student information system to other school districts, District 186 was still utilizing elements of Star_Base. As a result, I assumed that InfoSystems 3 also utilized elements of Star_Base, which I thought was improper.

21.    In February 2003, I had conversations with Robert Magan ("Magan"), who was a Century employee with whom I had frequent contact prior to that time. During the conversations, Magan and I discussed concerns I had regarding District 186's continued use of Star_Base, as well as The Miller Group's marketing and sale of InfoSystems 3, among other things. While I did not know it at the time, I later learned that Magan was recording some of our conversations.

22.    On October 21, 2004, I appeared for deposition in the matter of "Century Consultants, Ltd. v. The Miller Group, Inc., John G. Miller and Springfield Public School District 186," United States District Court, Central District of Illinois case number 2003-CV-3105 ("the lawsuit"). I heard the recording of that conversation for the first time at the deposition. I believe that the transcript attached hereto as Exhibit A truly and accurately reflects the contents of this recording.

23.    The statements made by me to Magan were not made under oath. In fact, I did not and do not have sufficient knowledge to swear to the accuracy of the statements made therein. Instead, I merely conveyed certain assumptions to Magan. My remarks to Magan were made in confidence, and I had no idea that Magan or Century would use these remarks as the basis for a lawsuit.

24.    I have reviewed a document in the lawsuit titled "DECLARATION OF ROBERT MAGAN" ("Magan's Declaration"), together with attachments, and I recognize the attachments attached as Exhibit C as being documents I sent to Magan.

25.    I represented to Magan that the documents I sent to him were obtained and printed from District 186's student information system. I have neither seen nor had access to any student information system other than the student information system at District 186, other than during demonstrations of competing products in the course of my employment with District 186.

26.    I have never had actual knowledge of any elements, components, structures, source code, object code, data structures, field names, logic, or anything else from Star_Base that was used by The Miller Group to develop InfoSystems 3.

Initials: _O W_

27.    I sent Magan table definitions attached to his Declaration.  I obtained these table definitions from District 186's student information system.  I did not obtain these table definitions from InfoSystems 3.

28.    I sent Magan the program listing referenced in Magan's Declaration and attached thereto as Exhibit D.  I obtained the program listing from District 186's student information system.  I did not obtain the program listing from InfoSystems 3.

29.    In light of the fact that I obtained the materials I sent to Magan from District 186's student information system, the similarities discovered by Magan exist because Magan compared the Star_Base program listing and table definitions to District 186's program listing and table definitions, taken from a portion of District 186's student information system that continued to use elements of Star_Base.

30.    If Magan's belief that InfoSystems 3 contains elements of Star_Base is based on my representations to him, Magan's belief is incorrect.  I merely conveyed assumptions to him that I had no basis to believe were true.

31.    While I regret the fact that this lawsuit is based upon the fact that I conveyed erroneous assumptions to Magan, I assumed that Magan and Century would undertake an investigation for the purpose of ensuring my assumptions were correct prior to filing a lawsuit.  No one from Century told me that Century would file a lawsuit based on my unverified assumption that The Miller Group was marketing the same student information system that was developed for District 186.

32.    While I assumed it to be true at the time I spoke with Magan, I did not have any first-hand knowledge or basis for any belief that The Miller Group's InfoSystems 3 product incorporates any element of Star_Base whatsoever.  To this day, I still do not have such knowledge.

_____
DAVID WILLIAMS

Signed and sworn before me this 28th day of January, 2005.

_____

OFFICIAL SEAL
CINDY STOCKER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-3-2005

January 28, 2005\crs\I:\CRAPP\WORD\LIT\RMS\CENTURY\WILLIAMS AFFIDAVIT.DOC

Initials: _____

## CENTURY V: DISTRICT 186

RECORDED CONVERSATION BETWEEN DAVE
WILLIAMS ("Williams') AND ROBERT MAGAN ("Magan")

---

Magan:        Dave.

Williams:     Yeah.

Magan:        Hey, what are you doin?

Williams:     Inaudible

Magan:        Yeah . . . .

Williams:     Inaudible

Magan:        (laughing)

Williams:     Inaudible

Magan:        Well, yeah, that's why I didn't put too much detail in the email. Well, we
              got your stuff, um, I was wondering if you could um . . .you said they
              wrote everything in – what – php?

Williams:     Php, yeah.

Magan:        Do you have any access to, to their code so we can, like, see. . .

Williams:     Well, I mean, there are, uh…(inaudible)

Magan:        Well, we want to actually see them, I guess some of their codes that
              accesses our tables, and you said the scheduler was definitely something
              that they, they stole.

Williams:     (inaudible)

Magan:        Right.

Williams:     (inaudible)

### EXHIBIT A

Initials: D W

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 48**

availability to potential customers.   Upon information and belief, the "demonstration program"

is also displayed at trade shows. This "demonstration program" embodies and reflects elements

of the Star_Base software which, as alleged throughout this Complaint, was and is an

infringement of Century's copyrights. The mere display of this "demonstration program" to the

general public as a tool to advertise the availability of the InfoSystems 3 product is itself an

infringing act under federal copyright laws.

      21.     In early February 2003, a Century employee received an unsolicited phone call

from Don Randle, a former information technology employee of the School District.  Randle

informed Century that he was aware that the School District had retained MGI to write some

front-end programs to interface with the Star_Base database, that he "knew for sure" that MGI

was using Century's database structures, and that he was fairly certain that MGI was also using

Century's scheduler program (a component of the Star_Base software).

      22.     Century also received an unsolicited phone call in February 2003 from Dave

Williams, a current employee of the School District, who advised Century that MGI "stole"

Century's software, and that MGI was well aware that Century's software was copyrighted.

      23.     Following these conversations, Mr. Williams mailed to Century a list of the table

definitions from MGI's InfoSystems 3 product.  Upon comparing these definitions with

Star_Base, Century has discovered that virtually all of the definitions were identical.

      24.    Mr. Williams also mailed to Century the program listing from a portion of MGI's

product – the "student scheduler". Once again, in comparing this to Star_Base, Century has

discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base

tables.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-6-

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBERS
50-53**



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

MAY 0 7 2003

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CENTURY CONSULTANTS, LTD.,                )
                                          )
                Plaintiff,                )
                                          )
        v.                                )    Civil Action No. 03-3105
                                          )
THE MILLER GROUP, INC., JOHN G.           )
MILLER, and THE SPRINGFIELD PUBLIC        )    JURY TRIAL DEMAND
SCHOOL DISTRICT 186,                      )


## COMPLAINT

Plaintiff, Century Consultants Ltd., with a principal place of business at 150 Airport Road,

Suite 1500, Lakewood, New Jersey 08701, through its attorneys, by way of Complaint against the

Defendants, The Miller Group, Inc., John G. Miller and The Springfield Public School District 186,

says:

## NATURE OF ACTION

1.      This is an action for copyright infringement under the Copyright Act of 1976, 17

U.S.C. §101 et seq., and for related claims for misappropriation of trade secrets, unfair competition

under state law, tortious interference with contractual relations, and breach of a software license

agreement. The claims arise out of Defendants' actions with respect to certain computer programs

and associated educational software developed, owned and copyrighted by Plaintiff and marketed

and sold under the unregistered trademark "Star_Base."

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.

§1331 and §1338(a) and (b), and exclusive jurisdiction pursuant to 28 U.S.C. §1338(a) with respect

to the claims for copyright infringement. This Court has jurisdiction over all remaining state law claims pursuant to 28 U.S.C. §1367(a).

3.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) and §1400(a).

## THE PARTIES

4.    Plaintiff, Century Consultants Ltd. ("Century"), is a corporation organized and existing under the laws of the State of New Jersey, and maintains a principal place of business at 150 Airport Road, Suite 1500, Lakewood, New Jersey 08701. Century is engaged in the business of developing and marketing computer programs and associated software under various trade names and/or trademarks, including but not limited to a set of educational software packages known as "Star_Base" and on which Century owns the copyrights.

5.    Defendant, The Miller Group, Inc. ("MGI"), is, upon information and belief, a corporation organized and existing under the laws of the State of Illinois, and which maintains a principal place of business at 1028 South 2nd Street, Springfield, Illinois. Upon information and belief, MGI is engaged in the business of developing, marketing and servicing computer programs and software.

.6.    Defendant, John G. Miller ("Miller") is, upon information and belief, a citizen and resident of the State of Illinois, and the president of MGI, a closely held corporation, and exercises supervision and control of MGI's activities, including those activities alleged in this Complaint.

7.    Defendant, The Springfield Public School District 186 (the "School District"), is the municipal school district serving the residents of Springfield, Illinois, with a business address of 530 West Reynolds Street, Springfield, Illinois.

## GENERAL ALLEGATIONS

8.    Century began as a sole proprietorship in 1976 and was incorporated in 1977.

2

9.     During the late 1970's and early 1980's, Century began the development of student administration computer software. The goal was to license the developed software to schools for their use in coordinating different aspects of student administration.

10.     The development of this software led to the creation of an initial set of computer programs known as S.T.A.R.S., an acronym for "Student Academic Records System." In 1983, the company applied for and received copyright registrations for the S.T.A.R.S. programs, including the source and object code of those programs. The programs were registered as <u>unpublished</u> works because they were considered trade secrets of Century and were disclosed only to school district customers that executed license agreements.

11.     In or around 1990, Century upgraded the S.T.A.R.S. student software platform, and renamed it "Star_Base." The Star_Base screens have been registered with the U.S. Copyright Office. The Star_Base source code has also been registered as an unpublished work. The effective date of the copyright registration is November 22, 1995.

12.     Star_Base consists of a main menu program, which allows the licensed user to select from a variety of available sub-programs. The sub-programs are grouped and licensed to school districts as "modules". The modules, which comprise Star_Base, include among others grade reporting, academic history, student scheduling, and class attendance modules.

13.     Over the years, Century has invested hundreds of thousands of dollars in the development of its student administration software.

14.     Century licenses the Star_Base copyrighted software to school districts under a standard license agreement, which contains strict confidentiality provisions. The license agreements prohibit the licensees from disclosing the source code of the Star_Base programs to any third party.

3

15.    The School District in Springfield is one of many school systems to which Century licenses the use of the Star_Base programs. The School District has been a customer of Century's for several years under a written license agreement (the "License Agreement"). Among other provisions, the License Agreement recites in clear terms that the software package is the trade secret of Century, and prohibits the School District from disclosing the package to any third party.

16.    Under the License Agreement, Century licensed Star_Base to the School District in exchange for an initial license fee and periodic maintenance fee payments.

17.    In or around March 2002, Century was contacted by the School District, which advised Century that the School District wanted to cease its maintenance contract with Century for Star_Base. Under the License Agreement, if the schools elect to go "off maintenance" (i.e. they elect to stop making periodic payments for support services), the School District can still continue to use the software package, but it is no longer entitled to any updates nor is it entitled to receive any support.

18.    Century thereafter learned that the School District had contracted with another company, MGI, to assist it in the design of a student software package.

19.    In early February 2003, a Century employee received an unsolicited phone call from Don Randle, a former information technology employee of the School District. Randle informed Century that he was aware that the School District had retained MGI to write some front-end programs to interface with the Star_Base database, that he "knew for sure" that MGI was using Century's database structures, and that he was fairly certain that MGI was also using Century's scheduler program (a component of the Star_Base software).

4

20.     MGI's website, www.miller-group.net, describes a product called InfoSystems 3. The InfoSystems 3 product is marketed on the website as an "online student information system", which is precisely the type of system Century licenses to the School District.

21.     Century also received an unsolicited phone call in February 2003 from Dave Williams, a current employee of the School District, who advised Century that MGI "stole" Century's software, and that MGI was well aware that Century's software was copyrighted.

22.     Following these conversations, Mr. Williams mailed to Century a list of the table definitions from MGI's InfoSystems 3 product. Upon comparing these definitions with Star_Base, Century has discovered that virtually all of the definitions were identical.

23.     Mr. Williams also mailed to Century the program listing from a portion of MGI's product – the "student scheduler". Once again, in comparing this to Star_Base, Century has discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables.

24.     Upon information and belief, in the course of copying substantial portions of the copyrighted source code, MGI and Miller have not only gained access to the source code, they have physically removed copies of the programs from the licensee's premises for editing off-site. This is not only a violation of the License Agreement, it creates an imminent danger that the source code, which is a trade secret, will be disclosed to third parties who do not know the trade secret and who might be given a competitive advantage by learning it.

### COUNT I
### (Copyright Infringement)

25.     Plaintiff repeats the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

26.     As hereinabove alleged, Century is the owner of the copyrights to the Star_Base programs. The programs are covered by valid registrations, and the main menu screens for all of the modules bear a notice of copyright.

27.     Defendants, MGI and Miller, had access to the Star_Base copyrighted programs, including the source code and object code of those programs.

28.     Defendants, MGI and Miller, have knowingly and willfully copied the copyrighted Star_Base programs, and have thereby created unauthorized derivative works.

29.     The derivative works, including MGI's "InfoSystems 3" product, are based on the copyrighted Star_Base programs, and are identical or substantially similar to the copyrighted programs in their literal code, in their structure, sequence and organization, and in various other respects.

30.     Century has lost and will lose license revenues for the Star_Base programs, and has sustained and will sustain damages as a result of Defendants' aforesaid wrongful conduct and their marketing of any infringing products. The Defendants' aforesaid wrongful conduct has also deprived and will continue to deprive Century of opportunities for expanding its goodwill.

WHEREFORE, Plaintiff, Century Consultants Ltd., demands judgment against the Defendants, MGI and Miller, as follows:

A.     Preliminarily and permanently enjoining Defendants, their officers, agents, servants and employees, and those persons in active concert or participation with them, from infringing or contributorily infringing the Star_Base software or programs in any manner, directly or indirectly;

B.     Preliminarily and permanently enjoining Defendants, their officers, agents, servants and employees, and those persons in active concert or participation with them, from copying, selling, marketing, distributing or placing in interstate commerce any versions, revisions or modifications of the Star_Base software or programs or any derivative works based thereon, including, but not limited to, the "InfoSystems 3" product;

6

C.     Entering judgment in favor of Plaintiff and against Defendants declaring that Defendants are infringing and have infringed the Star_Base software and programs;

D.     Ordering Defendants to account for all gains, profits and advantage derived from their infringement of Plaintiff's copyrights;

E.     Entering judgment in favor of Plaintiff and against Defendants jointly and severally in an amount equal to the damages sustained by Plaintiff and the profits earned by Defendants from the infringements alleged herein, pursuant to 17 U.S.C. §504(b);

F.     Entering judgment in favor of Plaintiff and against Defendants jointly and severally for statutory damages, pursuant to 17 U.S.C. §504(c)(1) and (c)(2);

G.     Entering judgment in favor of Plaintiff and against Defendants jointly and severally ordering the impounding and destruction of all infringing works;

H.     Entering judgment in favor of Plaintiff and against Defendants for attorneys' fees pursuant to 17 U.S.C. §505, and for costs; and

I.     For such other and further relief as the Court deems equitable and just.

## COUNT II
### (Contributory Infringement)

31.     Plaintiff realleges all of the foregoing allegations of the Complaint as if repeated herein verbatim.

32.     The School District knew, or should have known, of the continuing acts of infringement of MGI and Miller alleged above in the Complaint.

33.     The School District has induced, caused and/or materially contributed to the infringing conduct of MGI and Miller, and is therefore liable as a contributory infringer.

WHEREFORE, Plaintiff, Century Consultants, Ltd., demands judgment against Defendant, Springfield Public School District 186, as follows:

A.     Declaring and adjudging that the School District has infringed Century's copyrighted works;

B.    Awarding actual damages to Plaintiff under 17 U.S.C. §504(b);

C.    Awarding statutory damages to Plaintiff under 17 U.S.C. §504(c);

D.    Awarding damages for willful infringement;

E.    Awarding attorneys' fees and costs to Plaintiff under 17 U.S.C. §505;

F.    Awarding, in favor of Plaintiff, preliminary injunctive relief under 17 U.S.C. §502(a) and permanent injunctive relief under 17 U.S.C. §502(b) against any and all further acts of infringement; and/or

G.    Awarding costs of suit and such other and further relief as this Court may deem equitable and just.

## COUNT III
### (Misappropriation of Trade Secrets)

34.    Plaintiff repeats the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

35.    The copyrighted Star_Base software is a trade secret of Century because it contains information, including source and object code, which is not generally known to the public or to other persons who can obtain economic value from its disclosure or use, is the subject of efforts by Century to maintain its secrecy, and derives independent economic value from not being generally known to the public or to the computer software industry.

36.    Defendants knew or should have known that the information was a trade secret of Century, and that Century took steps to maintain that secrecy through its license agreements with customers.

37.    Defendants, MGI and Miller, misappropriated Century's trade secrets in its copyrighted Star_Base software by acquiring those trade secrets when they knew or should have known that the trade secrets were being acquired from individuals or entities -- specifically, the

8

School District -- who owed a contractual duty to Century to maintain the secrecy of its trade secrets or to limit their use, and by disclosing or using Century's trade secrets without its express or implied consent.

38.    The School District misappropriated Century's trade secrets by knowingly disclosing them to third parties - specifically, MGI and Miller – without the permission or authorization of Century.

39.    Defendants' conduct was knowing and willful and therefore justifies an award of punitive damages.

40.    By reason of the foregoing acts and conduct of defendants, Century will suffer irreparable harm and damage, which damage will be difficult or impossible to ascertain, and Century will be without an adequate remedy at law.

WHEREFORE, Plaintiff, Century Consultants Ltd., demands judgment against the Defendants, MGI, Miller and the School District, as follows:

A.    Preliminarily and permanently enjoining Defendants, their officers, agents, servants and employees, and those persons in active concert or participation with them, from using or disclosing any trade secret information of Century, including the Star_Base software or programs, in any manner, directly or indirectly;

B.    Entering judgment in favor of Plaintiff and against Defendants declaring that Defendants have unlawfully misappropriated trade secrets of Century;

C.    Ordering Defendants to account for all gains, profits and advantage derived from their use and/or disclosure of any trade secrets of Century;

D.    Entering judgment in favor of Plaintiff and against Defendants jointly and severally for compensatory and punitive damages, for attorneys' fees and costs of suit; and

E.    For such other and further relief as the Court deems equitable and just.

9

## COUNT IV
### (Intentional Interference With Contractual Relations)

41     Plaintiff repeats the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

42.     The License Agreement between Century and the School District is a valid and existing contract.

43.     MGI and Miller knew of the existence of the License Agreement and the confidentiality provisions thereof which prohibit the School District from disclosing the copyrighted source code of the Star_Base programs to any third parties.

44.     MGI and Miller wrongfully, intentionally and without justification caused and induced the School District to breach the License Agreement by inducing the School District to disclose or otherwise transfer to them the copyrighted source code of the Star_Base software. As a result of Defendants' conduct, Century has been damaged.

WHEREFORE, Plaintiff, Century Consultants Ltd., demands judgment against the Defendants, MGI and Miller, for compensatory and punitive damages, attorneys' fees, costs of suit, and such other and further relief as the Court deems equitable and just.

## COUNT V
### (Common Law Unfair Competition)

45     Plaintiff repeats the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

46.     The foregoing acts of Defendants constitute unfair competition under the common law.

WHEREFORE, Plaintiff, Century Consultants Ltd., demands judgment against Defendants, MGI, Miller and the School District, as follows:

10

A.   Preliminarily and permanently enjoining Defendants, their officers, agents, servants and employees, and those persons in active concert or participation with them, from continuing said acts of unfair competition;

B.   Entering judgment in favor of Plaintiff and against Defendants for damages, directly or indirectly caused by said acts of unfair competition;

C.   For costs of suit;

D.   For such other and further relief as the Court deems equitable and just.

## COUNT VI
### (Breach of License Agreement)

47    Plaintiff repeats the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

48.    By its actions and failures to act alleged above, the School District has breached the License Agreement, and Century has been damaged.

WHEREFORE, Plaintiff, Century Consultants Ltd., demands judgment against the Defendant, Springfield Public School District 186, for compensatory damages, costs of suit, and such other and further relief, as the Court deems equitable and just.

11

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby demands a jury trial on all issues triable

to a jury.

Respectfully submitted,

**CENTURY CONSULTANTS, LTD.,**
Plaintiff

By: _____
One of its Attorneys

Lead Counsel
Craig Hilliard (Admission Pending)
STARK & STARK
A Professional Corporation
P.O. Box 5315
Princeton, NJ 08543-5315
(603) 896-9060

Local Counsel
David A. Herman
GIFFIN, WINNING, COHEN & BODEWES, P.C.
One West Old State Capitol Plaza
Myers Building - Suite 600
P.O. Box 2117
Springfield, IL 62705
(217) 525-1571