**E-FILED**
Tuesday, 16 January, 2007  04:10:30 PM
Clerk, U.S. District Court, ILCD

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 54

STARK & STARK
A PROFESSIONAL CORPORATION
PO BOX 5315
PRINCETON, NJ 08543-5315
(609)896-9360
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CENTURY CONSULTANTS LTD., | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | DECLARATION OF ROBERT MAGAN |
| THE MILLER GROUP, INC., JOHN G. MILLER, and THE SPRINGFIELD PUBLIC SCHOOL DISTRICT 186, | |
| Defendants. | |

ROBERT MAGAN, of full age, upon his oath, deposes and says:

1.      I am employed by plaintiff, Century Consultants Ltd. ("Century"), as the Manager of Programming/Research & Development. In that capacity, I am fully familiar with the student software package owned by Century and licensed to its customers known as Star_Base. I make this affidavit in support of Century's application against defendants for a temporary restraining order and related relief.

2.      The Springfield Public School District 186 in Springfield, Illinois (the "School District") has been a customer of Century's for several years under a license agreement. A copy of the license agreement is attached hereto as Exhibit "A".

3.      Under the license agreement, Century licensed Star_Base to the School District in exchange for an initial license fee and periodic maintenance fee payments.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 1315
PRINCETON, NJ 08543-1315

DEFENDANT'S
EXHIBIT
11

4.  The School District employs several people who work in an information technology department and who are generally responsible for the day-to-day administration of Star_Base and other software applications which meet the needs of the schools. It is my understanding that Henry Stukey, David Williams and Brent Quarles are all employed by the School District in this capacity. I have had frequent communications with the School District over the last several years, because I am the employee of Century who is primarily responsible for addressing any questions or issues the School District may have concerning the support of the Star_Base package.

5.  About a year ago, I received a call from Mr. Stukey, who advised me that the School District wanted to cease its maintenance contract with Century for Star_Base. Under our license agreement with the School District, if the schools elect to go "off maintenance" (i.e. they elect to stop making periodic payments for support services), the district can still continue to use the software package, but they are no longer entitled to any updates nor are they entitled to receive any support.

6.  I thereafter learned that the School District had contracted with another company, The Miller Group, to assist them in the design of a student software package.

7.  A few weeks ago, in early February 2003, I received an unsolicited phone call from Don Randle, whom I recognized as a former information technology employee of the School District. Don said to me, "How would you feel if someone was stealing your software?" When I asked what he meant, he explained: 1) that he had left his employment at the School District about 6

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-2-

months earlier; 2) that while still employed, he was aware that the School District had retained The Miller Group to write some front-end programs to interface with the Star_Base database; and 3) that he "knew for sure" that The Miller Group was using Century's database structures, and that he was fairly certain that The Miller Group was also using Century's scheduler program (a component of the Star_Base software).   He further told me that Mr. Quarles had been "reassigned" within the School District to assist the The Miller Group in developing this new software (Mr. Quarles is one of the School District employees who I know is authorized to have access to the source code and object code of Century's Star_Base software).  Don went on to tell me that if I wanted further information, I should contact Dave Williams at the School District.

8.   Following this conversation with Don, I discovered that The Miller Group had posted information on its internet website concerning a product called InfoSystems 3.  The InfoSystems 3 product was marketed on the website as an "online student information system", which is precisely the type of system we licensed to the School District.  Attached hereto as Exhibit "B" are excerpts from the website describing the new product.

9.   I then received an unsolicited phone call from Dave Williams shortly after my conversation with Don.  Mr. Williams (a current employee of the School District) told me that The Miller Group "stole" Century's software, that employees of the School District (including Williams) had told The Miller Group that they didn't think that what they were doing was right, and that The Miller Group's response was: "we are here and [Century] is in New Jersey", and "they will never find out".

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-53 15

-3-

Mr. Williams further told me that he and others cautioned The Miller Group that Century's software was copyrighted.

10.   Following this last conversation, Dave Williams mailed to me a list of the table definitions from The Miller Group's InfoSystems 3 product. Upon comparing these definitions with Star_Base, I discovered that virtually all of the definitions were identical. Attached hereto as Exhibit "C" is the list I received from Mr. Williams and the corresponding printout of the Star_Base table definitions.

11.   Mr. Williams also mailed to me the program listing from a portion of The Miller Group's product – the "student scheduler". Once again, in comparing this to Star_Base, I discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables. Attached hereto as Exhibit "D" is the InfoSystems 3 program listing with the Star_Base table names highlighted.

12.   I declare under penalty of perjury that the foregoing is true and correct.


ROBERT MAGAN

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-4-

## AFFIDAVIT OF DAVID WILLIAMS

STATE OF ILLINOIS    )
          )   ss.
COUNTY OF SANGAMON  )

DAVID WILLIAMS, being duly sworn, hereby deposes and states as follows:

1.  I am over age 18, under no legal disability, and am able to truthfully testify regarding the facts and matters set forth herein.

2.  I was employed by Springfield Public School District 186 ("District 186") from 1970 until I voluntarily retired in 2004.

3.  When my employment with District 186 began, I was a computer programmer. When I retired, I was District 186's lead systems analyst.

4.  In the course of my employment with District 186, I became familiar with a computer software product known as Star_Base, which is a student information system. It is my understanding that District 186 obtained Star_Base from Century Consultants, Ltd. ("Century").

5.  At some point in the mid 1990's, District 186 submitted a Request for Proposal ("RFP") to several vendors for the purpose of obtaining computer software that would enable District 186 to switch from a mainframe information system to a database system.

6.  In the course of my employment with District 186, I attended meetings wherein vendors demonstrated their software products in response to District 186's RFP. I did not, however, participate in District 186's decision to enter into any agreement with Century, and was unaware of the terms of any contracts between District 186 and Century.

7.  Star_Base software was installed at District 186 in or around 1996. In the course of my employment, I routinely worked with Star_Base and interacted with employees of Century for the purpose of District 186's implementation and use of Star_Base.

8.  The Star_Base software installed at District 186 operated in conjunction with an Oracle database.

9.  The Star_Base software installed at District 186 could be modified in a manner so that District 186 could develop or purchase other programs that could interact with the Oracle database. This enabled District 186 to add functions to its system that could not be performed by Star_Base, without the necessity of recreating a separate database to perform such functions.

Initials: _N W_

10.    When requested, Century employees assisted me in making substantial modifications and additions to the Star_Base software, and Century was well aware that District 186 made such modifications and additions. In fact, Century supplied District 186 with the source code for Star_Base so that District 186 could make modifications and additions to Star_Base to suit its needs.

11.    A few years after Star_Base was installed at District 186, I learned that District 186 wanted to convert its existing student information system, which consisted of Star_Base and several other components, to a web based system that would be compatible with the Apple Macintosh computers utilized by District 186. It is my understanding that no such product was commercially available when District 186 decided to convert to a web based system.

12.    I was not involved in District 186's decision to convert to a web based system, and did not know that such a conversion was contemplated until after a decision had already been reached. At the same time, I learned that The Miller Group was hired by District 186 to assist in the development of District 186's new student information system.

13.    Upon learning of the decision to convert to a web based system, I assumed that the new system would replace the Star_Base software that was installed at District 186, but I did not know that to be true.

14.    When work first began on development of District 186's new web based student information system, I had no role in its development. Eventually, however, I wrote a substantial amount of source code for District 186's new system.

15.    In the course of my employment with District 186, learned the new programming language being utilized in the source code for District 186's new student information system, which is very different from the programming language used in District 186's version of Star_Base.

16.    While I am aware that The Miller Group participated in the development of District 186's new student information system, I did not have substantive interaction with anyone from The Miller Group regarding the nature of its involvement.

17.    Both during and after development of District 186's new student information system, I assumed that The Miller Group intended to market and sell the same student information system to other school districts, although no one told me that would be the case.

18.    My assumption that The Miller Group intended to market and sell copies of District 186's student information system was strengthened when I discovered that The Miller Group was marketing a student information system named InfoSystems 3 through a web page on the internet. I assumed that InfoSystems 3 was the same student information system that was being developed at District 186.

2                                    Initials:  _Q W_

19.     I have never had any basis, other than my own assumption, for believing that InfoSystems 3 is the same student information system that The Miller Group helped to develop for District 186. Still, I assumed that to be the case.

20.     At the time I discovered that The Miller Group was marketing a student information system to other school districts, District 186 was still utilizing elements of Star_Base. As a result, I assumed that InfoSystems 3 also utilized elements of Star_Base, which I thought was improper.

21.     In February 2003, I had conversations with Robert Magan ("Magan"), who was a Century employee with whom I had frequent contact prior to that time. During the conversations, Magan and I discussed concerns I had regarding District 186's continued use of Star_Base, as well as The Miller Group's marketing and sale of InfoSystems 3, among other things. While I did not know it at the time, I later learned that Magan was recording some of our conversations.

22.     On October 21, 2004, I appeared for deposition in the matter of "Century Consultants, Ltd. v. The Miller Group, Inc., John G. Miller and Springfield Public School District 186," United States District Court, Central District of Illinois case number 2003-CV-3105 ("the lawsuit"). I heard the recording of that conversation for the first time at the deposition. I believe that the transcript attached hereto as Exhibit A truly and accurately reflects the contents of this recording.

23.     The statements made by me to Magan were not made under oath. In fact, I did not and do not have sufficient knowledge to swear to the accuracy of the statements made therein. Instead, I merely conveyed certain assumptions to Magan. My remarks to Magan were made in confidence, and I had no idea that Magan or Century would use these remarks as the basis for a lawsuit.

24.     I have reviewed a document in the lawsuit titled "DECLARATION OF ROBERT MAGAN" ("Magan's Declaration"), together with attachments, and I recognize the attachments attached as Exhibit C as being documents I sent to Magan.

25.     I represented to Magan that the documents I sent to him were obtained and printed from District 186's student information system. I have neither seen nor had access to any student information system other than the student information system at District 186, other than during demonstrations of competing products in the course of my employment with District 186.

26.     I have never had actual knowledge of any elements, components, structures, source code, object code, data structures, field names, logic, or anything else from Star_Base that was used by The Miller Group to develop InfoSystems 3.

3                           Initials:  ⟨ẟ w⟩

27.    I sent Magan table definitions attached to his Declaration. I obtained these table definitions from District 186's student information system. I did not obtain these table definitions from InfoSystems 3.

28.    I sent Magan the program listing referenced in Magan's Declaration and attached thereto as Exhibit D. I obtained the program listing from District 186's student information system. I did not obtain the program listing from InfoSystems 3.

29.    In light of the fact that I obtained the materials I sent to Magan from District 186's student information system, the similarities discovered by Magan exist because Magan compared the Star_Base program listing and table definitions to District 186's program listing and table definitions, taken from a portion of District 186's student information system that continued to use elements of Star_Base.

30.    If Magan's belief that InfoSystems 3 contains elements of Star_Base is based on my representations to him, Magan's belief is incorrect. I merely conveyed assumptions to him that I had no basis to believe were true.

31.    While I regret the fact that this lawsuit is based upon the fact that I conveyed erroneous assumptions to Magan, I assumed that Magan and Century would undertake an investigation for the purpose of ensuring my assumptions were correct prior to filing a lawsuit. No one from Century told me that Century would file a lawsuit based on my unverified assumption that The Miller Group was marketing the same student information system that was developed for District 186.

32.    While I assumed it to be true at the time I spoke with Magan, I did not have any first-hand knowledge or basis for any belief that The Miller Group's InfoSystems 3 product incorporates any element of Star_Base whatsoever. To this day, I still do not have such knowledge.

DAVID WILLIAMS

Signed and sworn before me this 28th day of January, 2005.

OFFICIAL SEAL
CINDY STOCKER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-3-2005

January 28, 2005\crs\I:\CRAPP\WORD\LIT\RMS\CENTURY\WILLIAMS AFFIDAVIT.DOC

4                                              Initials: DW

## CENTURY V. DISTRICT 186

RECORDED CONVERSATION BETWEEN DAVE
WILLIAMS ("Williams') AND ROBERT MAGAN ("Magan")

| | |
|---|---|
| Magan: | Dave. |
| Williams: | Yeah. |
| Magan: | Hey, what are you doin? |
| Williams: | Inaudible |
| Magan: | Yeah . . . . |
| Williams: | Inaudible |
| Magan: | (laughing) |
| Williams: | Inaudible |
| Magan: | Well, yeah, that's why I didn't put too much detail in the email. Well, we got your stuff, um, I was wondering if you could um . . .you said they wrote everything in – what – php? |
| Williams: | Php, yeah. |
| Magan: | Do you have any access to, to their code so we can, like, see. . . |
| Williams: | Well, I mean, there are, uh...(inaudible) |
| Magan: | Well, we want to actually see them, I guess some of their codes that accesses our tables, and you said the scheduler was definitely something that they, they stole. |
| Williams: | (inaudible) |
| Magan: | Right. |
| Williams: | (inaudible) |

### EXHIBIT A

Initials: D W

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 55

STARK & STARK
A PROFESSIONAL CORPORATION
PO BOX 5315
PRINCETON, NJ 08543-5315
(609)896-9060
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

---

CENTURY CONSULTANTS LTD.,

        Plaintiff,

v.

THE MILLER GROUP, INC., JOHN
G. MILLER, and THE
SPRINGFIELD PUBLIC SCHOOL
DISTRICT 186,

        Defendants.

CIVIL ACTION NO.

### DECLARATION OF ROBERT MAGAN

---

    ROBERT MAGAN, of full age, upon his oath, deposes and says:

1.    I am employed by plaintiff, Century Consultants Ltd. ("Century"), as the Manager of Programming/Research & Development. In that capacity, I am fully familiar with the student software package owned by Century and licensed to its customers known as Star_Base. I make this affidavit in support of Century's application against defendants for a temporary restraining order and related relief.

2.    The Springfield Public School District 186 in Springfield, Illinois (the "School District") has been a customer of Century's for several years under a license agreement. A copy of the license agreement is attached hereto as Exhibit "A".

3.    Under the license agreement, Century licensed Star_Base to the School District in exchange for an initial license fee and periodic maintenance fee payments.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 1315
PRINCETON, NJ 08543-1315

DEFENDANT'S
EXHIBIT
11

4.   The School District employs several people who work in an information technology department and who are generally responsible for the day-to-day administration of Star_Base and other software applications which meet the needs of the schools. It is my understanding that Henry Stukey, David Williams and Brent Quarles are all employed by the School District in this capacity. I have had frequent communications with the School District over the last several years, because I am the employee of Century who is primarily responsible for addressing any questions or issues the School District may have concerning the support of the Star_Base package.

5.   About a year ago, I received a call from Mr. Stukey, who advised me that the School District wanted to cease its maintenance contract with Century for Star_Base. Under our license agreement with the School District, if the schools elect to go "off maintenance" (i.e. they elect to stop making periodic payments for support services), the district can still continue to use the software package, but they are no longer entitled to any updates nor are they entitled to receive any support.

6.   I thereafter learned that the School District had contracted with another company, The Miller Group, to assist them in the design of a student software package.

7.   A few weeks ago, in early February 2003, I received an unsolicited phone call from Don Randle, whom I recognized as a former information technology employee of the School District. Don said to me, "How would you feel if someone was stealing your software?" When I asked what he meant, he explained: 1) that he had left his employment at the School District about 6

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-2-

months earlier; 2) that while still employed, he was aware that the School District had retained The Miller Group to write some front-end programs to interface with the Star_Base database; and 3) that he "knew for sure" that The Miller Group was using Century's database structures, and that he was fairly certain that The Miller Group was also using Century's scheduler program (a component of the Star_Base software). He further told me that Mr. Quarles had been "reassigned" within the School District to assist the The Miller Group in developing this new software (Mr. Quarles is one of the School District employees who I know is authorized to have access to the source code and object code of Century's Star_Base software). Don went on to tell me that if I wanted further information, I should contact Dave Williams at the School District.

8.    Following this conversation with Don, I discovered that The Miller Group had posted information on its internet website concerning a product called InfoSystems 3. The InfoSystems 3 product was marketed on the website as an "online student information system", which is precisely the type of system we licensed to the School District. Attached hereto as Exhibit "B" are excerpts from the website describing the new product.

9.    I then received an unsolicited phone call from Dave Williams shortly after my conversation with Don. Mr. Williams (a current employee of the School District) told me that The Miller Group "stole" Century's software, that employees of the School District (including Williams) had told The Miller Group that they didn't think that what they were doing was right, and that The Miller Group's response was: "we are here and [Century] is in New Jersey", and "they will never find out".

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-3-

Mr. Williams further told me that he and others cautioned The Miller Group that Century's software was copyrighted.

10. Following this last conversation, Dave Williams mailed to me a list of the table definitions from The Miller Group's InfoSystems 3 product. Upon comparing these definitions with Star_Base, I discovered that virtually all of the definitions were identical. Attached hereto as Exhibit "C" is the list I received from Mr. Williams and the corresponding printout of the Star_Base table definitions.

11. Mr. Williams also mailed to me the program listing from a portion of The Miller Group's product – the "student scheduler". Once again, in comparing this to Star_Base, I discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables. Attached hereto as Exhibit "D" is the InfoSystems 3 program listing with the Star_Base table names highlighted.

12. I declare under penalty of perjury that the foregoing is true and correct.

ROBERT MAGAN

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 1215
PRINCETON, NJ 08543-5315

-4-

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBERS 56-58

Page 1

1

                    UNITED STATES DISTRICT COURT
2                   CENTRAL DISTRICT OF ILLINOIS
                    SPRINGFIELD DIVISION
3                      NO. 2003-CV-3105
4     _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
5     CENTURY CONSULTANTS, LTD.,
6                  Plaintiff,          DEPOSITION OF:
            vs.
7                                    ROBERT MAGAN
      THE MILLER GROUP, INC., JOHN G.
8     MILLER and the SPRINGFIELD
      PUBLIC SCHOOL DISTRICT NO. 186,
9
                  Defendants.         ORIGINAL
10

11    _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
12
13             TRANSCRIPT OF PROCEEDINGS, taken by
14    and before KIM A. GHILARDI, a Notary Public, Certified
15    Shorthand Reporter of the State of New Jersey and
16    Registered Professional Reporter, taken at the offices
17    of STARK & STARK, P.C., 993 Lenox Drive,
18    Lawrenceville, New Jersey, on Friday, January 14,
19    2005, commencing at 9:20 a.m.
20
21
22               GUY J. RENZI & ASSOCIATES
                    824 West State Street
23                 Trenton, New Jersey  08618
            (609) 989-9199  1-800-368-7652  (TOLL FREE)
24                 www.renziassociates.com
25

Page 110

1    conversation.

2        Q      Okay.  And I asked you to review Exhibit

3    16, I believe, and I asked you to make any additions

4    or changes on the transcript and you showed me

5    mistakes and you made those changes in red ink,

6    correct?

7        A      Correct.

8        Q      Okay.  Besides the changes that you

9    made, is the transcript that is Defendant's Exhibit 16

10   a true and accurate conversation or a true and

11   accurate transcript of the conversation we discussed

12   between Williams and you?

13               MR. SCHRAMA:  Objection to form.  You

14   can answer the question, if you understand it, but I

15   don't believe you can testify as to true and accurate.

16       Q      Go ahead.

17       A      It sounded like the conversation I had

18   with Dave.

19       Q      Okay.  Is there any part of this

20   transcript as written that does not sound like the

21   conversation you had with Dave or is there any part

22   that appears to be inaccurate as far as the

23   transcription goes?

24       A      No.

25       Q      Okay.  As far as the representations

Page 148

1          A        Yes, because that's the only version we
2     ever sold.
3          Q        Okay.   Besides the one that's outlined
4     in the first licensing agreement, right?
5          A        The character mode version?
6          Q        Right.
7          A        Yes.
8          Q        Well, look at paragraph eleven of your
9     declaration.  The second sentence says:   Once again,
10    in comparing this -- meaning the program listing -- to
11    Star_Base, I discovered that the code used in Info
12    System 3 has verbatim reference to Star_Base tables.
13               Do you see that?
14         A        Yes, I do.
15         Q        From where did you obtain the codes used
16    in Info System 3?
17         A        I was relying on the code that Dave had
18    sent me.
19         Q        And the same thing with respect to your
20    representation in paragraph ten?
21         A        Yes.
22         Q        Okay.   Do you know that what Dave
23    Williams sent you is from Info System 3?
24         A        I only know based on what he told me.
25    So I have no way to confirm that.   I was basing it on

Page 149

1    what Dave had told me.

2        Q       Okay.  Do you know whether District 186

3    has ever used Info System 3?

4        A       No.

5        Q       Well, if you look at paragraph 12, would

6    you still state that under penalty of perjury, that

7    these are Info System 3 table definitions that are

8    attached as Exhibit D?

9                MR. SCHRAMA:  Objection to form.

10       Q       Go ahead and answer.

11       A       To the best of my knowledge, I would say

12   that what was sent to me was sent to me from Dave with

13   that knowledge.

14       Q       Well, you would agree it's one thing for

15   Dave Williams to tell the court that those materials

16   came from Info System 3 and it is a much different

17   thing for you to tell the court that you know they are

18   from Info System 3, correct?

19               MR. SCHRAMA:  Objection.  That calls for

20   a legal conclusion.

21       Q       Okay.  You can answer the question.

22       A       Yes.  If Dave sent me something that was

23   not being used and I'm basing my conclusions on what

24   he said and he's wrong, that would make me wrong as

25   well.

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 59

STARK & STARK
A PROFESSIONAL CORPORATION
PO BOX 5315
PRINCETON, NJ 08543-5315
(609)896-9360
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

CENTURY CONSULTANTS LTD.,

           Plaintiff,

v.

THE MILLER GROUP, INC., JOHN
G. MILLER, and THE
SPRINGFIELD PUBLIC SCHOOL
DISTRICT 186,

           Defendants.

CIVIL ACTION NO.

DECLARATION OF ROBERT MAGAN

ROBERT MAGAN, of full age, upon his oath, deposes and says:

1.    I am employed by plaintiff, Century Consultants Ltd. ("Century"), as the Manager

of Programming/Research & Development. In that capacity, I am fully familiar

with the student software package owned by Century and licensed to its customers

known as Star_Base. I make this affidavit in support of Century's application

against defendants for a temporary restraining order and related relief.

2.    The Springfield Public School District 186 in Springfield, Illinois (the "School

District") has been a customer of Century's for several years under a license

agreement. A copy of the license agreement is attached hereto as Exhibit "A".

3.    Under the license agreement, Century licensed Star_Base to the School District in

exchange for an initial license fee and periodic maintenance fee payments.

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 1315
PRINCETON, NJ 08543-1315

DEFENDANT'S
EXHIBIT
11

4.    The School District employs several people who work in an information technology department and who are generally responsible for the day-to-day administration of Star_Base and other software applications which meet the needs of the schools.   It is my understanding that Henry Stukey, David Williams and Brent Quarles are all employed by the School District in this capacity.   I have had frequent communications with the School District over the last several years, because I am the employee of Century who is primarily responsible for addressing any questions or issues the School District may have concerning the support of the Star_Base package.

5.    About a year ago, I received a call from Mr. Stukey, who advised me that the School District wanted to cease its maintenance contract with Century for Star_Base.   Under our license agreement with the School District, if the schools elect to go "off maintenance" (i.e. they elect to stop making periodic payments for support services), the district can still continue to use the software package, but they are no longer entitled to any updates nor are they entitled to receive any support.

6.    I thereafter learned that the School District had contracted with another company, The Miller Group, to assist them in the design of a student software package.

7.    A few weeks ago, in early February 2003, I received an unsolicited phone call from Don Randle, whom I recognized as a former information technology employee of the School District. Don said to me, "How would you feel if someone was stealing your software?" When I asked what he meant, he explained: 1) that he had left his employment at the School District about 6

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-2-

3:03-cv-03105-RM BGC   # 172-4   Page 24 of 80

months earlier; 2) that while still employed, he was aware that the School District had retained The Miller Group to write some front-end programs to interface with the Star_Base database; and 3) that he "knew for sure" that The Miller Group was using Century's database structures, and that he was fairly certain that The Miller Group was also using Century's scheduler program (a component of the Star_Base software). He further told me that Mr. Quarles had been "reassigned" within the School District to assist the The Miller Group in developing this new software (Mr. Quarles is one of the School District employees who I know is authorized to have access to the source code and object code of Century's Star_Base software). Don went on to tell me that if I wanted further information, I should contact Dave Williams at the School District.

8.   Following this conversation with Don, I discovered that The Miller Group had posted information on its internet website concerning a product called InfoSystems 3. The InfoSystems 3 product was marketed on the website as an "online student information system", which is precisely the type of system we licensed to the School District. Attached hereto as Exhibit "B" are excerpts from the website describing the new product.

9.   I then received an unsolicited phone call from Dave Williams shortly after my conversation with Don. Mr. Williams (a current employee of the School District) told me that The Miller Group "stole" Century's software, that employees of the School District (including Williams) had told The Miller Group that they didn't think that what they were doing was right, and that The Miller Group's response was: "we are here and [Century] is in New Jersey", and "they will never find out".

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 08543-5315

-3-

Mr. Williams further told me that he and others cautioned The Miller Group that Century's software was copyrighted.

10.     Following this last conversation, Dave Williams mailed to me a list of the table definitions from The Miller Group's InfoSystems 3 product. Upon comparing these definitions with Star_Base, I discovered that virtually all of the definitions were identical. Attached hereto as Exhibit "C" is the list I received from Mr. Williams and the corresponding printout of the Star_Base table definitions.

11.     Mr. Williams also mailed to me the program listing from a portion of The Miller Group's product – the "student scheduler". Once again, in comparing this to Star_Base, I discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables. Attached hereto as Exhibit "D" is the InfoSystems 3 program listing with the Star_Base table names highlighted.

12.     I declare under penalty of perjury that the foregoing is true and correct.

ROBERT MAGAN

STARK & STARK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
MAILING ADDRESS
PO BOX 5315
PRINCETON, NJ 01543-5315

## STATEMENT OF UNDISPUTED MATERIAL FACT NUMBERS
## 60-67

Page 1

1

UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF ILLINOIS
                     SPRINGFIELD DIVISION

3                    NO. 2003-CV-3105

4       _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

5       CENTURY CONSULTANTS, LTD.,

6                    Plaintiff,            DEPOSITION OF:

                vs.

7                                          ROBERT MAGAN

        THE MILLER GROUP, INC., JOHN G.

8       MILLER and the SPRINGFIELD
        PUBLIC SCHOOL DISTRICT NO. 186,

9
                     Defendants.          ORIGINAL

10

        _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

11

12

13                  TRANSCRIPT OF PROCEEDINGS, taken by

14      and before KIM A. GHILARDI, a Notary Public, Certified

15      Shorthand Reporter of the State of New Jersey and

16      Registered Professional Reporter, taken at the offices

17      of STARK & STARK, P.C., 993 Lenox Drive,

18      Lawrenceville, New Jersey, on Friday, January 14,

19      2005, commencing at 9:20 a.m.

20

21

22                  GUY J. RENZI & ASSOCIATES
                     824 West State Street

23                  Trenton, New Jersey 08618
                 (609) 989-9199  1-800-368-7652  (TOLL FREE)

24                  www.renziassociates.com

25

Page 129

1    certain that The Miller Group was using Century's
2    scheduler program.  Again, what is meant by the word
3    "using" in this context?
4         A        Currently using.  Using it to perform
5    scheduling on their system.
6         Q        On whose system?
7         A        On the system The Miller Group recreated
8    for Springfield.
9         Q        Okay.  Now, did Randall tell you that
10   Brent Qualls was reassigned as stated in paragraph
11   seven?
12        A        I believe he did tell me that, yes.
13        Q        And that's Randall's exact word that he
14   used?
15        A        Yes.
16        Q        And in the following line, when you
17   refer to this new software, are you referring to
18   District 186's software or the software being used at
19   District 186?
20        A        No.  At that point, he is referring to
21   the software that The Miller Group created.  Now, he
22   is not being specific to Springfield or District 186
23   in that line.  So I got the impression that this was
24   something that The Miller Group was using and
25   marketing outside of District 186.

Page 130

1       Q       But Randall didn't tell you that, right?

2       A       No, he didn't.

3       Q       Right? He didn't?

4       A       Right, he didn't.

5       Q       And Don told you if you wanted more

6    information, you could contact Dave Williams, right?

7       A       Correct.

8       Q       But you didn't have to do that?

9       A       I did not call Dave, no.

10      Q       Because Dave called you, right?

11      A       Right.

12      Q       In fact, you don't identify anything

13   that Don Randall said that he would indicate that The

14   Miller Group was using Century's software in the

15   software that Miller was selling to others, correct?

16      A       Don could not provide any example.

17      Q       Well, I appreciate your candor but I'm

18   asking -- I'm not asking for example. For instance,

19   did Don Randall say to you that The Miller Group was

20   using Century's Star_Base system in the programs

21   wherein the software was selling to other school

22   districts?

23      A       No, they did not tell me that.

24      Q       All right. Paragraph eight, you state

25   that you discovered that The Miller Group had posted

Guy J. Renzi & Associates    (609) 989-9199
www.renziassociates.com

Page 154

1          Q          Go ahead.

2          A          Only what Dave had told me about Brent

3     working at The Miller Group while being employed at

4     Springfield.

5          Q          Okay.  Have you ever seen a

6     demonstration of Info System 3?

7          A          No.

8          Q          Do you know of anyone at Century who has

9     seen a demonstration of Info System 3?

10          A          I'm not sure if any marketing people had

11     seen demonstrations at trade shows.

12          Q          Are you aware of any differences between

13     Info System 3 and Version 6i of Star_Base?

14          A          I have never seen it, so I wouldn't be

15     able to comment on that.

16          Q          Have you had discussions or any

17     communication with anyone at Century who claims to be

18     aware of such differences?

19          A          No.

20          Q          How about similarities, is there anyone

21     at Century who has seen Info System 3 used or

22     demonstrated, to your knowledge?

23          A          Not to my knowledge, no.

24          Q          Are you aware of any financial damage or

25     any damage caused to Century because of any action on

Page 157

1   answer it.

2        Q        Go ahead and answer.

3        A        I'm not privy to any of the financial

4   information, so I wouldn't know what damages one

5   incurred.

6        Q        Are you aware of any clients or

7   potential customers that Century lost as a result of

8   Info System 3?

9        A        No, I'm not aware of any.

10       Q        Are you aware of anyone at Century who

11  would know whether The Miller Group beat Century in a

12  competition to get a certain client's business?

13       A        That would probably be Joe Shearn since

14  he's involved with the marketing staff.

15       Q        Have you ever talked to Joe Shearn about

16  whether Century has suffered those kind of damages?

17       A        No, I have not.

18       Q        If the data base structures of Star_Base

19  are released to a competitor, do you believe that the

20  competitor could gain an advantage over Century with

21  respect to their own computer program?

22       A        Yes.  I don't think anything would be

23  released to a competitor without a nondisclosure

24  document being signed.

25       Q        And do you understand that to be the

Page 65

1    data base can run on character mode, client server,

2    and 6i.  The data base did not change.

3        Q        So not only does it not need to change

4    but it didn't change?

5        A        It didn't change.

6        Q        Did it get a little bigger again?

7        A        Of course, tables were added, columns

8    were added.

9        Q        And is that still true today?

10       A        Yes.

11       Q        That you have basically the same data

12   base tables that were created for the first version of

13   Star_Base still being used now?

14       A        Yes.  Yes.

15       Q        Okay.  And would that include field or

16   variable names?

17       A        Yes.

18       Q        All right.  Did you ever have any

19   conversations with anyone at District 186 regarding

20   District 186's use of a consultant to make

21   modifications to Star_Base?

22       A        Yes.

23       Q        With whom did you speak?  Let's get the

24   people and then we will get the dates.

25       A        Well, while they were still on support

Page 66

1    with us, I had spoken to Henry Stuckey, Dave Williams

2    and Brent Qualls about this system they were trying to

3    integrate.

4         Q        What system were they trying to

5    integrate while they were still on support?

6         A        They didn't tell me the name of the

7    system.   They just said it was a system they were

8    trying to integrate with ours.

9         Q        What characteristics did this new system

10   have?

11        A        The only characteristics that I was told

12   was that it used an Oracle data base and they were

13   using PHP, which is a programming language.

14        Q        Okay.  So you don't know when the

15   support ended but you do know that these conversations

16   took place while support was going on?

17        A        Yes.

18        Q        Do you know why District 186 was

19   developing a new system?

20        A        They did not say why they were doing it.

21        Q        Did they tell you, did any of these

22   people tell you about any capabilities they wanted to

23   have that Star_Base couldn't offer them or didn't

24   offer them?

25        A        No, they did not.

1          Q          Did you ask?

2          A          I'm sure I asked them why they needed to

3    have a system linked in when our system probably did

4    everything they needed it to do.

5          Q          And they wouldn't tell you?

6          A          If they told me, they told me that it

7    probably wasn't their decision to do this.

8          Q          Okay.  And don't guess.  Okay.  I mean,

9    do you know that to have occurred or do you just

10    believe it?

11          A          I know for a fact that Henry Stuckey was

12    in charge of the programming staff and it was not his

13    decision to bring in another company to integrate in

14    with our application.

15          Q          And when did you learn that?

16          A          Sometime during the supported time

17    frame, so before they went off support, while they

18    were running the 6i version of Star_Base.

19          Q          You learned that Henry didn't want

20    changes?

21          A          I learned that Henry had told me they

22    liked our system and he didn't see a need to go and

23    bring in another.

24          Q          Did he say that they liked your system

25    or that he liked your system?

Page 69

1    needed to do that but I couldn't recall the exact

2    conversation.

3         Q    Okay.  And I certainly don't want you to

4    think that that's what I'm asking because I'm

5    realistic here.  So you probably asked him a question

6    about it, which makes sense.  Did you say anything

7    else to Henry?

8         A    Not that I recall, no.

9         Q    Okay.  After you learned this

10   information, what, if anything, did you do with it?

11   Did you convey it to someone else?

12        A    I'm sure I must have told their

13   marketing person that they were integrating it to a

14   third party product.

15        Q    Their marketing person or your marketing

16   person?

17        A    Our marketing person, who would be in

18   charge of Springfield.

19        Q    I see what you mean.  Upon learning this

20   information, did you have any conversations with

21   Mr. LaMantia regarding that topic?

22        A    I'm sure I told Joe as well or the

23   marketing person told Joe.  Joe found out one way or

24   the other.

25        Q    And did Joe find out while District 186

## STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 68

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

MAY 0 7 2003

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CENTURY CONSULTANTS, LTD., )
)
Plaintiff, )
)
v. )  Civil Action No. 03-CV-3105
)
THE MILLER GROUP, INC., JOHN G. )
MILLER, and THE SPRINGFIELD PUBLIC )  JURY TRIAL DEMAND
SCHOOL DISTRICT 186, )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS AND EXPEDITED DISCOVERY

Plaintiff, Century Consultants Ltd. ("Century") respectfully submits this Memorandum of

Law in support of its application for an Order: (1) directing all of the Defendants to show cause why

a preliminary injunction should not issue restraining and enjoining Defendants from infringing

Plaintiff's copyrights in certain computer programs known by the trademark "Star_Base" and from

disclosing trade secrets embodied in those programs; (2) granting a temporary restraining order

against Defendants, The Miller Group, Inc. and John G. Miller; and (3) permitting Century to

conduct expedited discovery of Defendants pending the return date of the application for preliminary

relief and states as follows:

## I.    BACKGROUND

The facts supporting this application are contained in the accompanying Declarations of

Joseph E. La Mantia (the "La Mantia Decl.") and Robert Magan (the "Magan Decl.") and are

repeated below for the Court's ease of reference.

## A.    Century's Star_Base Software

Century began as a sole proprietorship in 1976. In December 1977, Century was incorporated in New Jersey. Since that time, Century has been engaged in the business of developing and marketing computer programs and associated software, including educational software packages. See LaMantia Decl. ¶ 2.

Star_Base is the trade name for Century's flagship computer software product that is marketed to elementary and secondary schools (both public and private). Star_Base functions as an administrative tool to assist in all record keeping and reporting of student information in various areas including, but not limited to, student demographics, attendance, class schedules, grades, discipline and test scores. See LaMantia Decl. ¶ 3.

Each of these areas of information is referred to as a "module". Each module may be used by one or all schools within a school district. For example, the attendance module is normally used to track enrollment throughout an entire district, since that information is key to a district's funding from the State. The scheduling module, on the other hand, might only be used in a high school or middle school where a complex set of course offerings makes the use of a computer scheduler desirable and often necessary. See LaMantia Decl. ¶ 4.

A single module is selected by a user (an employee of the licensed school district) from a menu displayed on a screen. The menu is provided by an associated main computer program. Each module is comprised of many individual computer sub-programs. The attendance module, as an example, contains between 20 and 25 unique sub-programs accessed by a main menu program. One sub-program would provide the capability to perform a specific function on the computer. In other words, there are functions, i.e. sub-programs, to enable input of and updates to the school calendar, student entries and withdrawals, and student absences. Other sub-programs report on the

2

information that has been entered. These reports are designed to print detailed and/or summary information in the format and sequence that is required by school districts. See LaMantia Decl. ¶ 5.

The sub-programs that comprise Star_Base and are embodied in the copyright registration described below are written in a human-readable language. Many computer languages exist, so it is necessary for programmers to be trained and experienced in the language being used. The human-readable form of a program is referred to as the "source" program, or sometimes as the source code. In order for a computer to execute or run the programs, they must be translated into computer-readable form, usually called object code. This translation is accomplished through the use of another program known as an assembler or compiler. See LaMantia Decl. ¶ 6.

Although each program has a unique function, common elements must exist throughout all programs in the system in order for them all to work together accurately and efficiently. The common elements that all programs contain are the data files. Data files contain the records of information that are managed and processed by the programs. The structure of these records is vital to the functioning of the entire system. Much of the effort in designing a complex system goes into the layout, organization, composition and interrelationship of the records in the data files. Every record is composed of individual data elements, or fields. These fields must be organized and grouped both logically and functionally. Each field must be given a unique name. The size and type of each data element must be established. The resulting "record layout" or "file definition" becomes the basic component of every program in the system.

It is certainly possible for any other software developer to create or design independent programs that would achieve the same result as the Star_Base programs. By directly copying Century's tables and database programs for the purpose of making derivative works, however, another software developer would save enormous time and expense. Century spent years, thousands

3

of man-hours and hundreds of thousands of dollars developing and refining the Star_Base programs.

As of today, a majority of Century's revenues is based on the Star_Base programs.  See LaMantia Decl. ¶ 8.

The Star_Base source code and screen outputs are registered as copyrights with the U.S. Copyright Office. (Attached to the LaMantia Decl. as Exhibit "A" is a copy of the registration certificate effective as of November 22, 1995. The screen outputs for all of the Star_Base modules also bear a notice of copyright. When a Star_Base user at the school level accesses the main menu program for any of the modules, a copyright symbol appears on the screen. (Attached to the LaMantia Decl. as Exhibit "B" are examples of the main menu screen outputs for some of the modules bearing a notice of copyright.)

Century licenses individual Star_Base modules (often as a package of many modules) to school districts under a written license agreement. The Springfield School District 186 is one such licensee. (A copy of the license agreement for this district is attached to the Magan Declaration.) Although the form of license agreement has been modified slightly over the years, all of the form agreements (including Springfield's) contain confidentiality terms that severely restrict the licensee's right and ability to disclose the modules to unlicensed third parties, to ensure to the greatest extent possible that the trade secret protection for the modules is maintained.  See LaMantia Decl. ¶ 10.

The license agreement with Springfield, for example, provides as follows:

> Confidentiality - The [computer] package and any permitted copies contain valuable trade secrets of **CENTURY** and shall at all times remain the property of **CENTURY**; and Licensee, by this license, acquires no rights in and to the package except the right to use the package at the location indicated herein. Licensee shall not use the package for the benefit of any other party, whether or not for a consideration; shall not sell, rent, loan, disclose, or otherwise communicate or make available the package, or any part or modification thereof to any person, and shall maintain the

4

confidentiality of the package, unless otherwise agreed to by
**CENTURY** in writing.

See Magan Decl., Exhibit "A", at para. 8. As the underscored language above reflects, Century
considers the source and object code for the Star_Base programs to be protected trade secrets, and
was therefore careful in its licensing of the Star_Base software to bind its licensees to an obligation
of confidentiality. See LaMantia Decl. ¶ 11.

When a school or school district licenses one or more of the Star_Base modules, all of the
object code and most of the source code for the licensed modules are transferred to the school's
computer system. The source code for certain security programs is not delivered. These programs
contain key routines that are designed to protect the system as a whole, but not individual programs,
from being copied to another computer and used by an unlicensed customer. Nevertheless, the
source code and object code transferred to the licensees are protected from disclosure by the
provisions of the license agreement. See LaMantia Decl. ¶ 12.

**B.    The Evidence of Infringement of The Star_Base Software**

Under the license agreement between Century and The Springfield Public School District 186
(the "School District"), Century licensed Star_Base to the School District in exchange for an initial
license fee and periodic maintenance fee payments. See Magan Decl. ¶ 3.

The School District employs several people who work in an information technology
department and who are generally responsible for the day-to-day administration of Star_Base and
other software applications which meet the needs of the schools. Henry Stukey, David Williams and
Brent Quarles are all employed by the School District in this capacity. Century's Manager of
Programming/Research & Development, Bob Magan, has had frequent communications with the
School District over the last several years, because he is the employee of Century who is primarily

responsible for addressing any questions or issues the School District may have concerning the support of the Star_Base package. See Magan Decl. ¶ 4.

About a year ago, Magan received a call from Mr. Stukey, who advised him that the School District wanted to cease its maintenance contract with Century for Star_Base. Under Century's license agreement with the School District, if the schools elect to go "off maintenance" (i.e. they elect to stop making periodic payments for support services), the district can still continue to use the software package, but they are no longer entitled to any updates nor are they entitled to receive any support. See Magan Decl. ¶ 5.

Magan thereafter learned that the School District had contracted with another company, The Miller Group, to assist them in the design of a student software package. Id. ¶ 6. In early February 2003, Magan received an unsolicited phone call from Don Randle, whom he recognized as a former information technology employee of the School District. Randle said to Magan, "How would you feel if someone was stealing your software?" When Magan asked what he meant, Randle explained: (1) that he had left his employment at the School District about 6 months earlier; (2) that while still employed, he was aware that the School District had retained The Miller Group to write some front-end programs to interface with the Star_Base database; and (3) that he "knew for sure" that The Miller Group was using Century's database structures, and that he was fairly certain that The Miller Group was also using Century's scheduler program (a component of the Star_Base software). Randle further told Magan that Mr. Quarles had been "reassigned" within the School District to assist The Miller Group in developing this new software (Mr. Quarles is one of the School District employees who is authorized to have access to the source code and object code of Century's Star_Base software). Randle went on to tell Magan that if he wanted further information, he should contact Dave Williams at the School District. See Magan Decl. ¶ 7.

Following this conversation with Randle, Magan discovered that The Miller Group had posted information on its internet website concerning a product called InfoSystems 3. The InfoSystems 3 product was marketed on the website as an "online student information system", which is precisely the type of system Century licensed to the School District. (Attached to the Magan Decl. as Exhibit "B" are excerpts from the website describing the new product.)

Magan thereafter received an unsolicited phone call from Dave Williams shortly after his conversation with Randle. Mr. Williams (a current employee of the School District) told Magan that The Miller Group "stole" Century's software, that employees of the School District (including Williams) had told The Miller Group that they didn't think that what they were doing was right, and that The Miller Group's response was: "we are here and [Century] is in New Jersey", and "they will never find out". Mr. Williams further told Magan that he and others cautioned The Miller Group that Century's software was copyrighted. See Magan Decl. ¶ 9.

Following this last conversation, Dave Williams mailed to Magan a list of the table definitions from The Miller Group's InfoSystems 3 product. Upon comparing these definitions with Star_Base, Magan discovered that virtually all of the definitions were identical. (Attached to the Magan Decl. as Exhibit "C" is the list received from Mr. Williams and the corresponding printout of the Star_Base table definitions.)

Mr. Williams also mailed to Magan the program listing from a portion of The Miller Group's product – the "student scheduler". Once again, in comparing this to Star_Base, Magan discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables. (Attached to the Magan Decl. as Exhibit "D" is the InfoSystems 3 program listing with the Star_Base table names highlighted.) Based on this last piece of information showing verbatim references to

7

Century's code in the InfoSystems 3 program, Century has prepared this application for immediate injunctive relief.

## II. ARGUMENT

**POINT ONE: CENTURY IS ENTITLED TO A PRELIMINARY INJUNCTION AGAINST DEFENDANTS' FURTHER AND CONTINUED INFRINGEMENT OF CENTURY'S COPYRIGHTED COMPUTER PROGRAMS**

The Copyright Act, 17 U.S.C. §101 et seq., explicitly grants the district courts power to issue preliminary and permanent injunctive relief "to prevent or restrain infringement of a copyright." See 17 U.S.C. §502(a). To succeed in proving a claim of infringement under the Copyright Act, Century must demonstrate two basic elements: 1) ownership of the copyrights; and 2) copying by the Defendants. See, e.g., Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc., 797 F.2d 1222, 1231 (3d Cir. 1986); Wickham v. Knoxville Int'l Energy Exposition, 739 F. 2d 1094, 1097 (6th Cir. 1984); Sid & Marty Krofft Television v. McDonald's Corp. 562 F.2d 1157, 1162 (9th Cir. 1977); Theotokatos v. Sara Lee Personal Products, 971 F. Supp. 332, 338 (N.D. Ill. 1997). As demonstrated below, Century is the undisputed owner of the copyrights at issue on this application, and the copyright registration referenced in the Complaint is prima facie evidence of such ownership.

Moreover, Century will also demonstrate below that it will likely succeed at trial in proving that the Defendants copied the literal elements of the copyrighted programs. In addressing the proof necessary to establish unlawful copying, the courts have found that because "it is rarely possible to prove copying through direct evidence, ... copying may be proved inferentially by showing that the Defendant had access to the allegedly infringed copyrighted work and that the allegedly infringing work is substantially similar to the copyrighted work." Whelan Associates, 797 F.2d at 1231-32 (citation omitted) (emphasis added). See also, Atari, Inc. v. North Am. Philips Consumer Elecs. Corp., 672 F. 2d 607, 614 (7th Cir. 1982). Century has submitted competent proof on this

8

application that Defendants had access to Century's computer programs, including the source code, and that elements of The Miller Group's InfoSystems 3 product are substantially similar to Century's copyrighted works. Indeed, this is the rare case where there is direct evidence of copying. As noted above, an employee and former employee of one of the Defendants -- the School District -- has provided direct evidence of copying to Century. Coupled with the other evidence submitted on this application, Century submits that it is unnecessary for the Court to engage in any detailed examination of the "access" and "substantial similarity" tests of copying, because of the existence of this direct evidence. Nevertheless, Century will demonstrate below that it has submitted competent proof of "access" and "substantial similarity".

Because this is an application for injunctive relief[1], Century must demonstrate that it will likely succeed on the merits of its claims, and that it will suffer irreparable harm in the absence of injunctive relief. Sofinet v. I.N.S., 188 F. 3d 703, 707 (7th Cir. 1999); Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 523 (9th Cir. 1984).[2]   Against the backdrop of the foregoing elements of a copyright infringement action, Century will demonstrate below that it has satisfied the requirements for the issuance of preliminary injunctive relief.

---

[1] "In this circuit, the standards for a TRO and a preliminary injunction are functionally identical" Crue v. Aiken, 137 F.Supp.2d 1076, 1082-83 (C.D. Ill. 2001).

[2] The additional two elements traditionally considered on an application for interim relief -- the balance of hardships and the public interest -- are not significant issues in a copyright case. See E.F. Johnson co. v. Uniden Corp. of America, 623 F. Supp. 1485, 1491 (D. Minn. 1985) ("balancing of hardships is not usually regarded as significant in a copyright infringement action") (quoting Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 155 (3d Cir. 1983)). See also Apple Computer, 714 F.2d at 1255 ("[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.") Accordingly, Century will not address these elements in any detail.

A.    **Plaintiff is Likely to Succeed on the Merits of its Copyright Claim**

1.    **Computer Software is Copyrightable**

The availability of the federal copyright laws as a source of protection against the unauthorized copying of computer software is now settled.  In Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240 (3d Cir. 1983), for example, the Court reaffirmed the principles first espoused in an earlier decision[3] in holding that both the source and object code of a computer program are protectible forms of expression under the Copyright Act:

> Thus a computer program, whether in object code or source code, is a "literary work" and is protected from unauthorized copying, whether from its object or source code version.

See also NLFC, Inc. v. Devcom Mid-America, Inc., 45 F. 3d 231, 234 (7th Cir. 1995); Johnson Controls, Inc. v. Phoenix Control Systems, Inc., 886 F.2d 1173, 1175 (9th Cir. 1989)( noting that both source code and object code, the literal attributes of a computer program, are "consistently held protected by a copyright on the program."); Stern Electronics, Inc. v. Kaufman, 669 F.2d 852, 855 n.3 (2d Cir. 1982)(source code protected).

The scope of copyright protection for computer programs even extends to the  non-literal aspects of a computer program, such as the structure, sequence and organization of the program.  Whelan, 797 F. 2d at 1233-42.  Here, Century's copyright claims are based on both copying of the source code of the programs, and copying of the overall structure, sequence and organization of the programs.

---

[3] In Williams Electronics, Inc. v. Artic International, Inc., 685 F.2d 870 (3d Cir. 1982), the Third Circuit affirmed the issuance of an injunction restraining the infringement of a computer program, holding that the "copyrightability of computer programs is firmly established after the 1980 amendment to the Copyright Act." Id. at 875.

## 2.    Plaintiff Owns the Copyrights in the Computer Programs

The United States Copyright Office has issued a registration certificate for the Star_Base code at issue in this action. The registration certificate is attached to the LaMantia Decl. as Exhibit "A". That registration certificate constitutes prima facie evidence of the validity of the copyrights in the Star-Base programs. See 17 U.S.C. §410(c); Apple Computer, Inc. v. Formula Int'l, Inc., 725 F.2d 521, 523 (9th Cir. 1984); Balsamo/Olson Group v. Bradley Place Ltd. Partnership, 966 F. Supp. 757, 761 (C.D. Ill. 1996); Gallery House, Inc. v. Yi, 582 F. Supp. 1294, 1297 (N.D. Ill. 1984). Accordingly, Century has established on this application that it owns the copyrights to the Star_Base programs.

## 3.    Defendants had Access to the Computer Programs Including the Source Code

Defendants' access to the source code is easily demonstrated on the facts before this Court. First, as a licensee, the School District has possession of Century's source code. See La Mantia Decl., ¶ 12. Second, an employee of the School District with access to the source code worked directly with The Miller Group in developing the new product. See Magan Decl. ¶ 7. See, e.g., Kamar International v. Russ Berrie & Co., 657 F.2d 1059, 1062 (9th Cir. 1981) ("Proof of access requires only an opportunity to view or to copy Plaintiff's work"); Johnson Controls v. Phoenix Control Systems, 886 F.2d 1173, 1176 (9th Cir. 1989)(holding that access was "clear" because several employees of infringing company had worked for company holding copyrights and had been personally involved in authorship of the copyrighted work). Finally, the striking similarities -- indeed, verbatim identity -- between at least portions of the InfoSystems 3 program and Century's copyrighted programs obviates the need to show access. See, e.g., Testa v. Janssen, 492 F. Supp. 198, 202 (E.D. Pa. 1980). For these reasons, Century clearly has established on this application that it will likely prove access at trial as an element of its claim of copyright infringement.

11

### 4.    Defendants' Infringing Product is "Substantially Similar" to Plaintiff's Copyrighted Work

Having established ownership of the copyrights in the Star_Base. programs, as well as access by the Defendants to the copyrighted work, Century's only remaining burden is demonstrating a reasonable likelihood that it will prove at trial that The Miller Group's InfoSystems 3 product is "substantially similar" to the copyrighted Star_Base programs.    In this context, "substantial similarity" means sufficient similarity of the elements in the copyrighted programs to the elements in Defendants' program to "support a reasoned inference that more probably than not the elements were copied from the copyrighted work." See, e.g., Lotus Development Corp. v. Borland Int'l, Inc., 788 F. Supp. 78, 84 (D. Mass. 1992).    Here, there is substantial evidence in the record of substantial similarity:

(1)    A former  employee of the School District has told Century that he has personal knowledge that The Miller Group copied  Century's database structures.

(2)    A current employee of the School District has told Century that he too has personal knowledge that The Miller Group, with the assistance of another School District employee, copied Century's software.

(3)    This same School District employee provided documents to Century which demonstrate that The Miller Group's table definitions from their software product are identical to Century's.    The following chart, taken from the documents attached to the Magan Declaration, illustrate the striking similarities in names and even character limitations:

| *InfoSystems 3* | | *Star Base* | |
|---|---|---|---|
| Start_YY | VarChar2 (2) | Start_YY | VarChar2 (2) |
| School | VarChar2 (4) | School | VarChar2 (4) |
| Student_ID | VarChar2 (10) | Student_ID | VarChar2 (10) |
| PCC_Date | | PCC_Date | |
| PCC_Code | VarChar2 (3) | PCC_Code | VarChar2 (3) |
| Grade | VarChar2 (2) | Grade | VarChar2 (2) |
| Previous_School | VarChar2 (4) | Previous_School | VarChar2 (4) |
| Votech | VarChar2 (2) | Votech | VarChar2 (2) |
| Special_Ed | VarChar2 (3) | Special_Ed | VarChar2 (3) |

12

| Homeroom | VarChar2 (5) | | Homeroom | VarChar2 (5) |
|---|---|---|---|---|
| Tuition | VarChar2 (1) | | Tuition | VarChar 2 (1) |
| Home_Instr | VarChar2 (1) | | Home_Instr | VarChar2 (1) |
| District | VarChar2(4) | | District | VarChar2 (4) |
| Track_Code | VarChar2 (4) | | Track_Code | VarChar2 (4) |
| ProgCode | VarChar2 (2) | | ProgCode | VarChar2 (2) |

(4)     Century has also received source code documents from the InfoSystems 3 product which reveal verbatim references to Century's scheduler program, *see* Magan Decl. Exhibit "D".

For all of these reasons, Century has demonstrated a case for equitable relief based on the substantial similarity of the works.

## B.     Plaintiff Will Be Irreparably Harmed in the Absence of Injunctive Relief

The federal courts have long recognized the social and commercial importance of protecting the intangible rights inhering in copyrighted works. See Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3d Cir. 1983), cert. dismissed, 464 U.S. 1033 (1984) ("the public interest can only be served by upholding copyright protections"). As a result, it has become "the prevailing view that a showing of a prima facie case of copyright infringement or reasonable likelihood of success on the merits raises a presumption of irreparable harm." Apple Computer, 714 F.2d at 1254 (citing D. Nimmer & M. Nimmer, 3 Nimmer on Copyright §14.06(A).

As outlined above and in the accompanying Declaration of Joseph La Mantia, Century has established a prima facie case of copyright infringement and has shown a substantial likelihood that it will prevail on the merits at trial. Accordingly, Century "is entitled to a preliminary injunction without a detailed showing of irreparable harm." Apple Computer, 714 F.2d at 1254. See also Marco v. Accent Publishing Co., 969 F.2d 1547, 1553 (3d Cir. 1992)(holding that a copyright Plaintiff with prima facie case of infringement is entitled to preliminary injunction without detailed showing of irreparable harm).

13

**POINT TWO:  EXPEDITED DISCOVERY PRIOR TO THE RETURN DATE OF THE PRELIMINARY INJUNCTION WILL AID IN THE JUST DETERMINATION OF THE APPLICATION FOR PRELIMINARY RELIEF**

The Federal Rules of Civil Procedure give the district courts broad power to order expedited discovery. See Fed. R. Civ. P. 26 (d); Fed.R.Civ.P. 30(a)(2); Fed.R.Civ.P. 33(b)(3) (court may allow a "shorter ... time" for answers to interrogatories"); Fed.R.Civ.P. 34(b) (court may allow a "shorter ... time" for response to a request for production of documents).  Expedited discovery is a necessary tool to insure timely and just determination of complex factual issues when the pace of normal pretrial procedures will prejudice one of the parties.  See 4A J. Moore, Federal Practice ¶30.54[2] (1984). See also Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen, 548 F. Supp. 248, 250 (S.D. Fla. 1982)(expedited discovery should be granted when "unusual circumstances or conditions exist" that would prejudice a party if it were required to conduct discovery within the normal time limits of the Federal Rules).

Accordingly, courts will grant expedited discovery to aid in the determination of an application for a preliminary injunction. See, e.g., Chicago Stadium Corp. v. Scallen, 530 F.2d 204, 205 (8th Cir. 1976)(injunction issued after expedited discovery, upheld on appeal).  Here, because the underlying factual issues involve computer software and are inherently complex, and because of the presumption of irreparable harm flowing from copyright infringement, Century submits that expedited discovery will aid the Court in the just determination of this application for preliminary relief.  Accordingly, Century requests that the Court enter an Order providing for the following:

(1)    Responses to Requests for Admissions and Requests for Production of Documents within five (5) days of service thereof on Defendants;

(2)    Depositions on three (3) days' written notice; and

(3)    Century will serve written discovery requests within three (3) days of service of the Complaint.

14

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiff Century Consultants Ltd. respectfully requests that

the Court enter an Order: (1) directing the Defendants to show cause why a preliminary injunction

should not issue restraining and enjoining Defendants from infringing Plaintiff's copyrights in

certain computer programs known by the trademark "Star_Base" and from disclosing trade secrets

embodied in those programs; (2) granting a temporary restraining order against Defendants, The

Miller Group, Inc. and John G. Miller; and (3) permitting Century to conduct expedited discovery of

Defendants pending the return date of the application for preliminary relief and (4) granting such

other and further relief that this Honorable Court deems just and proper.

Respectfully submitted,

**CENTURY CONSULTANTS, LTD.,**
Plaintiff

By:

One of its Attorneys

Lead Counsel
Craig Hilliard (Admission Pending)
STARK & STARK
A Professional Corporation
P.O. Box 5315
Princeton, NJ 08543-5315
(603) 896-9060

Local Counsel
David A. Herman
GIFFIN, WINNING, COHEN & BODEWES, P.C.
One West Old State Capitol Plaza
Myers Building - Suite 600
P.O. Box 2117
Springfield, IL 62705
(217) 525-1571

15

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 69**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTURY CONSULTANTS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2003-CV-3105 |
| | ) | |
| v. | ) | |
| | ) | |
| THE MILLER GROUP, INC., JOHN G. MILLER, | ) | |
| and the SPRINGFIELD PUBLIC SCHOOL | ) | |
| DISTRICT NO. 186, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION

**TO:**   Corporate Representative for          Guy Renzi Court Reporting
Century Consultants, Ltd.          824 West State Street
c/o Craig Hilliard                Trenton, NJ 08618
Stark & Stark
P.O. Box 5315
Princeton, NJ 08543-5315


PLEASE TAKE NOTICE that the undersigned will take the deposition of Plaintiff Century Consultants, Ltd., on **Thursday, January 13, 2005 at 1:00 p.m**. at the offices of Stark & Stark, 993 Lenox Drive, Building Two, Lawrenceville, New Jersey, before a licensed court reporter, at which time testimony shall be recorded through stenographic means regarding the following topics listed in Exhibit A hereto, pursuant to Rule 30(b)(6) of the Code of Civil Procedure.


**SPRINGFIELD PUBLIC SCHOOL
DISTRICT NO. 186, Defendant**


By:    s/ Almon A. Manson, Jr.


**ALMON A. MANSON, JR.**
Registration No. 1756761
**ROBERT M. SHUPENUS**
Registration No. 6238096
BROWN, HAY & STEPHENS, LLP
205 South Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL 62705-2459
Telephone (217) 544-8491

## PROOF OF SERVICE

I, the undersigned, hereby certify that on December 29, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Plaintiff:

David A. Herman (dherman1@gifwinlaw.com)
Giffin, Winning, Cohen & Bodewes, P.C.
P.O. Box 2117
Springfield, IL  62705

Craig S. Hilliard (chilliard@stark-stark.com)
Stark & Stark
P.O. Box 5315
Princeton, NJ  08543-5315

Lance T. Jones (ltj@warpnet.net)
Law Office of Lance T. Jones
100 South Fifth Street
Springfield, IL  62703

_____s/Almon A. Manson, Jr._____

## EXHIBIT A

A.    All facts which support or relate in any manner to the allegations in the Amended Complaint, including the nature, extent, type and results of all investigations regarding or relating in any manner to the allegations contained therein;

B.    Plaintiff's calculation and amount of damages regarding each Count of the Amended Complaint;

C.    The development of the Star_Base software that is the subject of Plaintiff's Amended Complaint, including:

   (1)    The identity of each person who took part in the development of each part of Star_Base that constitutes Plaintiff's original copyrighted work, together with the substance of their involvement;

   (2)    The identity of each person or entity from whom non-original portions of Star_Base were obtained, together with identification and substance of each such portion;

   (3)    The identity of each person who took part in obtaining copyright protection for any portion of Star_Base, together with all actions undertaken by each person;

   (4)    The factual basis for the allegation in paragraph 13 of the Amended Complaint, which states: "Over the years, Century has invested hundreds of thousands of dollars in the development of its student administration software."

D.    The identity of each person who acted on behalf of Plaintiff with respect to Defendant Springfield Public School District No. 186's procurement and/or use of Star_Base, together with the nature and extent of each person's involvement;

E.    The identity of each person who communicated with District 186 on behalf of Plaintiff in any way that relates to the allegations in the Amended Complaint, together with the date and substance of each such communication;

F.    The identity of each person who communicated with anyone other than District 186, including but not limited to The Miller Group, Inc., John G. Miller and/or The Miller Group, on behalf of Plaintiff in any way that relates to the allegations in the Amended Complaint, together with the date, substance and participants of each such communication;

G.    All measures undertaken by Plaintiff to protect the secrecy or confidentiality of all trade secrets allegedly disclosed or used by any defendant.

H.     The location and substance of all written or computerized documents and other tangible evidence relating in any manner to Plaintiff's allegations and/or damages incurred resulting from any act or omission of any defendant herein.

I.     The location and substance of all written or computerized documents and other tangible evidence relating in any manner to any investigation conducted by or on behalf of Plaintiff regarding any of the allegations contained in the Amended Complaint.

J.     All facts supporting Plaintiff's allegation in paragraph 18 of the Amended Complaint, which states: "Century thereafter learned that the School District had contracted with another company, MGI, to assist in the design of a student software package," including but not limited to the date Plaintiff learned these facts, the person or entity who disclosed these facts to Plaintiff, the method of disclosure, and all actions taken by Plaintiff to discover these facts.

K.     All facts supporting Plaintiff's allegation in paragraph 19 of the Amended Complaint, which states: "Upon information and belief, this 'new' system became a product known as 'InfoSystems 3', and as alleged below, this product infringes Century's rights in and to the Star_Base programs."

L.     All facts supporting Plaintiff's allegation in paragraph 20 of the Amended Complaint that InfoSystems 3 "is precisely the type of system Century licenses to the School District."

M.     All facts supporting Plaintiff's allegation in paragraph 20 of the Amended Complaint that:

> "Upon information and belief, the 'demonstration program; is also displayed at trade shows. This 'demonstration program' embodies and reflects elements of the Star_Base software which, as alleged throughout this Complaint, was and is an infringement of Century's copyrights. The mere display of this 'demonstration program' to the general public as a tool to advertise the availability of the InfoSystems 3 product is itself an infringing act under federal copyright laws."

N.     All facts supporting Plaintiff's allegation in paragraph 23 of the Amended Complaint that:

> "Mr. Williams mailed to Century a list of the table definitions from MGI's InfoSystems 3 product. Upon comparing these definitions with Star_Base, Century has discovered that virtually all of the definitions were identical."

O.     All facts supporting Plaintiff's allegation in paragraph 24 of the Amended Complaint that:

> "Mr Williams also mailed to Century the program listing from a portion of MGI's product – the 'student scheduler'. Once again, in comparing this to Star_Base, Century has discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables."

P.      All facts supporting Plaintiff's allegation in paragraph 25 of the Amended Complaint that:

> "Upon information and belief, in the course of copying substantial portions of the copyrighted source code, MGI and Miller have not only gained access to the source code, they have physically removed copies of the programs from the licensee's premises for editing off-site."

Q.      All facts indicating the identity of any third party who learned any trade secret of Plaintiff as a result of any actions or omissions of any defendant, and/or any third party who received any competitive advantage by learning of each such trade secret, together with all damage incurred by Plaintiff as a result.

R.      All facts supporting Plaintiff's allegation in paragraph 43 of the Amended Complaint that: "Defendants' conduct was knowing and willful."

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 70**

# STARK & STARK
A PROFESSIONAL CORPORATION

CRAIG S. HILLIARD
DIRECT DIAL NUMBER
609-895-7346
DIRECT FAX NUMBER
609-895-7395
E-MAIL
chilliard@stark-stark.com

January 6, 2005

**ATTORNEYS AT LAW**

OFFICE:  993 LENOX DRIVE  LAWRENCEVILLE, NJ  08648-2389

MAILING:  PO BOX 5315  PRINCETON, NJ  08543-5315

609-896-9060 (PHONE)  609-896-0629 (FAX)

WWW.STARK-STARK.COM

## VIA TELEFAX AND REGULAR MAIL

Almon A. Manson, Jr., Esq.
Brown, Hay & Stephens
205 S. Fifth Street, Suite 700
P. O. Box 2459
Springfield, IL 62705-2459

JAN 1 0 2005

**Re:    Century Consultants, Ltd. v. The Miller Group, et al**
**Civil Action No. 2003-CV-3105**

Dear Mr. Manson:

Enclosed is a listing of Century's designations under Rule 30(b)(6) in response to your Rule 30(b) deposition notice.  I would appreciate it if you would provide me, at your earliest convenience, with Springfield's designations in response to my Rule 30(b) notice.

Very truly yours,

STARK & STARK
A Professional Corporation

By:_____
        CRAIG S. HILLIARD
CSH/blj
enclosures
cc:    David A. Herman, Esq.(w/enc.)
        Joseph Shearn (w/enc.)

Century - Rule 30(b)(6) designees:

A.  Joseph LaMantia/Robert Magan
B.  Joseph LaMantia
C.  Joseph LaMantia
D.  Joseph LaMantia
E.  Joseph LaMantia/Robert Magan
F.  Joseph LaMantia/Robert Magan
G.  Joseph LaMantia
H.  Joseph LaMantia
I.  Joseph LaMantia
J.  Robert Magan
K.  Joseph LaMantia/Robert Magan
L.  Joseph LaMantia/Robert Magan
M.  Joseph LaMantia/Robert Magan
N.  Robert Magan
O.  Robert Magan
P.  Robert Magan
Q.  Joseph LaMantia/Robert Magan
R.  Joseph LaMantia/Robert Magan

## STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 71

1                UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF ILLINOIS
2                  SPRINGFIELD DIVISION

3

CENTURY CONSULTANTS, LTD.,   )
4                        )
            Plaintiff,     )
5                        )
          -vs-          )  No. 2003-CV-3105
6                        )
THE MILLER GROUP, INC.,    )
7  JOHN G. MILLER, and      )
SPRINGFIELD PUBLIC SCHOOL  )
8  DISTRICT NO. 186,       )
                        )
9          Defendants.    )

10

11                      DEPOSITION

12                        OF

13               JOSEPH LAMANTIA

14

15

      Deposition of JOSEPH LAMANTIA, taken via video
16  conference at the instance of the Defendants, on the 25th
    day of April, 2006, at University of Illinois Springfield,
17  Brookens Library, Springfield, Illinois, before Karin
    Paisley, CSR.
18

19

20

21

22

23

24

1    information, test scores, you know.  It was a full fledged

2    system, and that's what Star_Base is.

3         Q.    Are you aware of any other software products that

4    perform the same functions with respect to attendance,

5    scheduling, grades, and test scores?

6         A.    Yes.

7         Q.    So, how many other systems are you aware of that

8    are precisely the type of system Century licensed to the

9    School District?

10        A.    I'm sure there are several dozen in the

11   marketplace.

12        Q.    Are you aware of the existence of any third party

13   who learned any trade secret of Century as a result of the

14   actions of any of the defendants?

15             MR. HILLIARD:  And by third party, you mean

16   someone other than The Miller Group itself and its

17   employees?

18        Q.    (Mr. Shupenus) Yes.

19        A.    Well, since IS 3 was licensed to other school

20   districts, I'm not sure the exact number, half a dozen or

21   so; and it contained our trade secrets.  So, now, the

22   employees of those school districts have access to our trade

23   secrets as well.

24        Q.    And what trade secrets are those?

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 72**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CENTURY CONSULTANTS, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2003-CV-3105 |
| | ) | |
| v. | ) | |
| | ) | |
| THE MILLER GROUP, INC., JOHN G. MILLER, | ) | |
| and the SPRINGFIELD PUBLIC SCHOOL | ) | |
| DISTRICT NO. 186, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION

**TO:**  Corporate Representative for
Century Consultants, Ltd.
c/o Craig Hilliard
Stark & Stark
P.O. Box 5315
Princeton, NJ  08543-5315

Guy Renzi Court Reporting
824 West State Street
Trenton, NJ  08618


PLEASE TAKE NOTICE that the undersigned will take the deposition of Plaintiff Century Consultants, Ltd., on **Thursday, January 13, 2005 at 1:00 p.m.** at the offices of Stark & Stark, 993 Lenox Drive, Building Two, Lawrenceville, New Jersey, before a licensed court reporter, at which time testimony shall be recorded through stenographic means regarding the following topics listed in Exhibit A hereto, pursuant to Rule 30(b)(6) of the Code of Civil Procedure.

**SPRINGFIELD PUBLIC SCHOOL
DISTRICT NO. 186, Defendant**


By:___ s/ Almon A. Manson, Jr._____

**ALMON A. MANSON, JR.**
Registration No. 1756761
**ROBERT M. SHUPENUS**
Registration No. 6238096
BROWN, HAY & STEPHENS, LLP
205 South Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL  62705-2459
Telephone (217) 544-8491

## PROOF OF SERVICE

I, the undersigned, hereby certify that on December 29, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for Plaintiff:

David A. Herman (dherman1@gifwinlaw.com)
Giffin, Winning, Cohen & Bodewes, P.C.
P.O. Box 2117
Springfield, IL 62705

Craig S. Hilliard (chilliard@stark-stark.com)
Stark & Stark
P.O. Box 5315
Princeton, NJ 08543-5315

Lance T. Jones (ltj@warpnet.net)
Law Office of Lance T. Jones
100 South Fifth Street
Springfield, IL 62703

s/Almon A. Manson, Jr.

## EXHIBIT A

A.    All facts which support or relate in any manner to the allegations in the Amended Complaint, including the nature, extent, type and results of all investigations regarding or relating in any manner to the allegations contained therein;

B.    Plaintiff's calculation and amount of damages regarding each Count of the Amended Complaint;

C.    The development of the Star_Base software that is the subject of Plaintiff's Amended Complaint, including:

    (1)    The identity of each person who took part in the development of each part of Star_Base that constitutes Plaintiff's original copyrighted work, together with the substance of their involvement;

    (2)    The identity of each person or entity from whom non-original portions of Star_Base were obtained, together with identification and substance of each such portion;

    (3)    The identity of each person who took part in obtaining copyright protection for any portion of Star_Base, together with all actions undertaken by each person;

    (4)    The factual basis for the allegation in paragraph 13 of the Amended Complaint, which states: "Over the years, Century has invested hundreds of thousands of dollars in the development of its student administration software."

D.    The identity of each person who acted on behalf of Plaintiff with respect to Defendant Springfield Public School District No. 186's procurement and/or use of Star_Base, together with the nature and extent of each person's involvement;

E.    The identity of each person who communicated with District 186 on behalf of Plaintiff in any way that relates to the allegations in the Amended Complaint, together with the date and substance of each such communication;

F.    The identity of each person who communicated with anyone other than District 186, including but not limited to The Miller Group, Inc., John G. Miller and/or The Miller Group, on behalf of Plaintiff in any way that relates to the allegations in the Amended Complaint, together with the date, substance and participants of each such communication;

G.    All measures undertaken by Plaintiff to protect the secrecy or confidentiality of all trade secrets allegedly disclosed or used by any defendant.

H.  The location and substance of all written or computerized documents and other tangible evidence relating in any manner to Plaintiff's allegations and/or damages incurred resulting from any act or omission of any defendant herein.

I.  The location and substance of all written or computerized documents and other tangible evidence relating in any manner to any investigation conducted by or on behalf of Plaintiff regarding any of the allegations contained in the Amended Complaint.

J.  All facts supporting Plaintiff's allegation in paragraph 18 of the Amended Complaint, which states: "Century thereafter learned that the School District had contracted with another company, MGI, to assist in the design of a student software package," including but not limited to the date Plaintiff learned these facts, the person or entity who disclosed these facts to Plaintiff, the method of disclosure, and all actions taken by Plaintiff to discover these facts.

K.  All facts supporting Plaintiff's allegation in paragraph 19 of the Amended Complaint, which states: "Upon information and belief, this 'new' system became a product known as 'InfoSystems 3', and as alleged below, this product infringes Century's rights in and to the Star_Base programs."

L.  All facts supporting Plaintiff's allegation in paragraph 20 of the Amended Complaint that InfoSystems 3 "is precisely the type of system Century licenses to the School District."

M.  All facts supporting Plaintiff's allegation in paragraph 20 of the Amended Complaint that:

> "Upon information and belief, the 'demonstration program; is also displayed at trade shows. This 'demonstration program' embodies and reflects elements of the Star_Base software which, as alleged throughout this Complaint, was and is an infringement of Century's copyrights. The mere display of this 'demonstration program' to the general public as a tool to advertise the availability of the InfoSystems 3 product is itself an infringing act under federal copyright laws."

N.  All facts supporting Plaintiff's allegation in paragraph 23 of the Amended Complaint that:

> "Mr. Williams mailed to Century a list of the table definitions from MGI's InfoSystems 3 product. Upon comparing these definitions with Star_Base, Century has discovered that virtually all of the definitions were identical."

O.  All facts supporting Plaintiff's allegation in paragraph 24 of the Amended Complaint that:

> "Mr Williams also mailed to Century the program listing from a portion of MGI's product – the 'student scheduler'. Once again, in comparing this to Star_Base, Century has discovered that the code used in InfoSystems 3 has verbatim references to Century's Star_Base tables."

P.    All facts supporting Plaintiff's allegation in paragraph 25 of the Amended Complaint that:

> "Upon information and belief, in the course of copying substantial portions of the copyrighted source code, MGI and Miller have not only gained access to the source code, they have physically removed copies of the programs from the licensee's premises for editing off-site."

Q.    All facts indicating the identity of any third party who learned any trade secret of Plaintiff as a result of any actions or omissions of any defendant, and/or any third party who received any competitive advantage by learning of each such trade secret, together with all damage incurred by Plaintiff as a result.

R.    All facts supporting Plaintiff's allegation in paragraph 43 of the Amended Complaint that: "Defendants' conduct was knowing and willful."

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 73**

# STARK&STARK

A PROFESSIONAL CORPORATION

CRAIG S. HILLIARD
DIRECT DIAL NUMBER
609-895-7346
DIRECT FAX NUMBER
609-895-7395
E-MAIL
chilliard@stark-stark.com

**ATTORNEYS AT LAW**

OFFICE: 993 LENOX DRIVE  LAWRENCEVILLE, NJ 08648-2389

MAILING:  PO BOX 5315  PRINCETON, NJ 08543-5315

609-896-9060 (PHONE)  609-896-0629 (FAX)

WWW.STARK-STARK.COM

January 6, 2005

## VIA TELEFAX AND REGULAR MAIL

Almon A. Manson, Jr., Esq.
Brown, Hay & Stephens
205 S. Fifth Street, Suite 700
P. O. Box 2459
Springfield, IL 62705-2459

JAN 10 2005

Re: __Century Consultants, Ltd. v. The Miller Group, et al__
     **Civil Action No. 2003-CV-3105**

Dear Mr. Manson:

Enclosed is a listing of Century's designations under Rule 30(b)(6) in response to your Rule 30(b) deposition notice.  I would appreciate it if you would provide me, at your earliest convenience, with Springfield's designations in response to my Rule 30(b) notice.

Very truly yours,

STARK & STARK
A Professional Corporation

By:_____
     CRAIG S. HILLIARD
CSH/blj
enclosures
cc:    David A. Herman, Esq.(w/enc.)
       Joseph Shearn (w/enc.)

Century - Rule 30(b)(6) designees:

A. Joseph LaMantia/Robert Magan
B. Joseph LaMantia
C. Joseph LaMantia
D. Joseph LaMantia
E. Joseph LaMantia/Robert Magan
F. Joseph LaMantia/Robert Magan
G. Joseph LaMantia
H. Joseph LaMantia
I. Joseph LaMantia
J. Robert Magan
K. Joseph LaMantia/Robert Magan
L. Joseph LaMantia/Robert Magan
M. Joseph LaMantia/Robert Magan
N. Robert Magan
O. Robert Magan
P. Robert Magan
Q. Joseph LaMantia/Robert Magan
R. Joseph LaMantia/Robert Magan

**STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 74**

Page 1

1

                    UNITED STATES DISTRICT COURT
2                   CENTRAL DISTRICT OF ILLINOIS
                    SPRINGFIELD DIVISION
3                   NO. 2003-CV-3105
4       _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
5       CENTURY CONSULTANTS, LTD.,
6                   Plaintiff,            DEPOSITION OF:
               vs.
7                                         ROBERT MAGAN
        THE MILLER GROUP, INC., JOHN G.
8       MILLER and the SPRINGFIELD
        PUBLIC SCHOOL DISTRICT NO. 186,
9
                    Defendants.           ORIGINAL
10

11      _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
12
13                  TRANSCRIPT OF PROCEEDINGS, taken by
14      and before KIM A. GHILARDI, a Notary Public, Certified
15      Shorthand Reporter of the State of New Jersey and
16      Registered Professional Reporter, taken at the offices
17      of STARK & STARK, P.C., 993 Lenox Drive,
18      Lawrenceville, New Jersey, on Friday, January 14,
19      2005, commencing at 9:20 a.m.
20
21
22                  GUY J. RENZI & ASSOCIATES
                       824 West State Street
23                  Trenton, New Jersey 08618
                 (609) 989-9199  1-800-368-7652  (TOLL FREE)
24                      www.renziassociates.com
25

Page 152

1   was and is an infringement of Century's copyrights.

2                Do you have personal knowledge regarding

3   that allegation?

4        A      I have never seen their demonstration

5   program.

6        Q      Okay.  Paragraph 23, it states that:

7   Mr. Williams mailed to Century a list of the table

8   definitions from MGI's Info System 3 product.

9                Do you know that statement to be true?

10       A      No.  I only know what Dave sent me.

11       Q      Okay.  In paragraph 24, it's alleged

12  that:  Williams also mailed Century the program

13  listing from the portion of MGI's product The Student

14  Scheduler.  Once again, in comparing this to

15  Star_Base, Century has discovered that the code used

16  in Info System 3 has verbatim references to Century's

17  Star_Base tables.

18                Do you know whether that's a true

19  statement?

20       A      No.  I only base this on what Dave had

21  sent me.

22       Q      Okay.  I am sorry that it seems like I

23  keep asking the same question but I have to.

24       A      I know.  Okay.

25       Q      Paragraph 25:  Upon information and

1    belief, in the course of copying substantial portions

2    of the copyrighted source code, MGI and Miller have

3    not only gained access to the source code, they have

4    physically removed copies of the programs from the

5    licensee's premises for editing off-site.

6              First, do you know that allegation to be

7    true?

8         A    I do not know that.

9         Q    Do you know what information and belief

10   this allegation is based upon?

11        A    It's based upon what Dave had told us.

12        Q    Is it based upon anything else?

13        A    Not to my knowledge.

14        Q    Are you aware of any third party other

15   than -- well, let me ask you this.  Are you aware of

16   anyone who has learned any trade secret of Century

17   through having access to Century's source codes at

18   District 186?

19        A    No.

20        Q    Are you aware of any willfulness on the

21   part of anyone at District 186 to use the Star_Base

22   source codes or object code for wrongful purpose?

23             MR. SCHRAMA:  Objection to form.  Calls

24   for a legal conclusion.  If you understand it, you can

25   answer it.

# STATEMENT OF UNDISPUTED MATERIAL FACT NUMBER 75

Page 1

```
 1
                    UNITED STATES DISTRICT COURT
 2                  CENTRAL DISTRICT OF ILLINOIS
                    SPRINGFIELD DIVISION
 3                  NO. 2003-CV-3105
 4       _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
 5       CENTURY CONSULTANTS, LTD.,
 6                   Plaintiff,           DEPOSITION OF:
                vs.
 7                                    JOSEPH E. LA MANTIA
         THE MILLER GROUP, INC., JOHN G.    .
 8       MILLER and the SPRINGFIELD
         PUBLIC SCHOOL DISTRICT NO. 186,
 9
                     Defendants.              COPY
10
11       _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
12
13                    TRANSCRIPT OF PROCEEDINGS, taken by
14       and before KIM A. GHILARDI, a Notary Public, Certified
15       Shorthand Reporter of the State of New Jersey and
16       Registered Professional Reporter, taken at the offices
17       of STARK & STARK, P.C., 993 Lenox Drive,
18       Lawrenceville, New Jersey, on Thursday, January 13,
19       2005, commencing at 9:08 a.m.
20
21
22                  GUY J. RENZI & ASSOCIATES
                       824 West State Street
23                   Trenton, New Jersey 08618
                (609) 989-9199  1-800-368-7652  (TOLL FREE)
24                     www.renziassociates.com
25
```

1      A      Before the time of this action.

2      Q      I think it's safe to assume that the

3   allegations in here that you claim occurred would have

4   to have occurred before you filed this Complaint?

5      A      Okay.

6      Q      Can you be more specific than that?

7      A      No, I can't.

8      Q      What information do you have that the

9   demonstration program was displayed at trade shows?

10     A      I don't have that information.

11     Q      Who does?

12     A      Honestly, I don't know.

13     Q      Who does know, if anyone?

14            MR. SCHRAMA:   Objection.  I think that

15   was asked and answered but you can answer the

16   question.

17     Q      Are you aware of anyone who knows or has

18   information that the demonstration program was

19   displayed at trade shows?

20     A      I don't recall where we got the

21   information from.

22     Q      In paragraph 25, it appears that you

23   claim that MGI and Miller copied substantial portions

24   of your copyrighted source code, correct?

25     A      Yes.

Page 96

1          Q          When you say substantial, how much do
2    you mean?
3          A          I believe they had a copy of all of our
4    source code.
5          Q          Upon what do you base that belief at the
6    time this was filed?
7          A          I don't recall if that -- I don't
8    recall.  I would only be guessing.  You may want to
9    ask Bob that tomorrow.
10         Q          Did Dave Williams, to your knowledge,
11   have access to the Info System 3 source code?
12         A          Yes.
13         Q          How do you know that?
14         A          That's the system they were running.
15         Q          Who was running that system?
16         A          Springfield School District.
17         Q          How do you know?
18         A          Well, because Don and Dave told us that.
19         Q          Is it fair to say that your knowledge is
20   limited to the extent that Don and Dave know that
21   District 186 was running Info System 3?  Let me
22   rephrase.  If Don and Dave are wrong, do you have any
23   other knowledge that would indicate that Williams had
24   access to the IS3 source code?
25         A          Well, we still have the source code